**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILLIAM HENRY HARRISON, )
)
Plaintiff, )
)
v. ) Civil Action No. 07-1543 (PLF)
)
FEDERAL BUREAU OF PRISONS, )
)
Defendant. )
)

**DEFENDANT'S MOTION TO DISMISS OR,**
**IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant, the Federal Bureau of Prisons ("BOP"), respectfully moves this Court pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing the Complaint for failure to state a claim. Alternatively, Defendant respectfully requests summary judgment in its favor, pursuant to Federal Rule of Civil Procedure 56 and Local Rules 7(h) and 56.1, on the ground that no genuine issue of material fact exists and Defendant is entitled to judgment as a matter of law.

In support of this motion, Defendant refers the Court to the attached Statement of Material Facts Not in Genuine Dispute, the Memorandum of Points and Authorities, Exhibits A, B, C, D, E and F and the Declarations of Michael Atwood, Lynnell Cox, and Vanessa Herbin-Smith and the accompanying Exhibits.

A proposed Order is attached hereto.[1]

[1]Plaintiff, is hereby advised that failure to respond to this motion may result in the district court granting the motion. See Fox v. Strickland, 837 F.2d 507, 509 (D.C. Cir. 1988). Plaintiff should also take notice that any factual assertions contained in the affidavits and other attachments in support of defendants' motion will be accepted by the Court as true unless the Plaintiff submits his own affidavits or other documentary evidence contradicting the assertions in the Defendant's attachments. See Neal v. Kelly, 963 F.2d 453, 457 (D.C. Cir. 1992).

Dated: May 29, 2008.

Respectfully submitted,

_____________________________________
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

_____________________________________
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

_____________________________________
CINDY S. OWENS , D.C. BAR # 491465
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
202-616-2257/ FAX 202-514-8780

**OF COUNSEL:**
Sarah Schuh
Alma Lopez
Bureau of Prisons
Washington, D.C.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILLIAM HENRY HARRISON,<br><br>Plaintiff,<br><br>v.<br><br>FEDERAL BUREAU OF PRISONS,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 07-1543 (PLF) |

**DEFENDANT'S STATEMENT OF MATERIAL FACTS**
**NOT IN GENUINE DISPUTE**

Pursuant to Local Rules 7(h) and 56.1, Defendant submits the following Statement of Material Facts Not in Genuine Dispute:

1. Plaintiff filed his initial Complaint alleging violation of the Freedom of Information ("FOIA") and Privacy Act (PA), his Due Process and Equal Protection rights under the Fifth Amendment, and violations of the Administrative Procedures Act (APA) on February 13, 2007. After filing his initial Complaint, the Court dismissed the claims under FOIA and PA. See Memorandum and Opinion Ordered, September 27, 2007 (Document 5). Subsequently, Plaintiff filed an Amended Complaint on November 26, 2007 (Document 9). On January 9, 2008, Plaintiff filed a Second Amended Complaint (Document 13). Both of the Amended Complaints addressed renewed FOIA claims.

2. On March 1, 2002, BOP increased the commissary mark-up formula. (Decl. Atwood ¶ 7).[2] The change was done to ensure that the commissary operated within the resources of the

[2] Citations in the form "(Decl. Atwood ¶ __)" refer to the May 28, 2008 Declaration of Michael Atwood, which is attached hereto as Exhibit G.

trust. Id.

3.      On July 6, 2004, BOP increased the price of domestic long distance calls from 20 to 23 cents. (Decl. Atwood ¶¶ 11-12).  Direct dial rates for local, long distance, and international telephone calls are set at a standard per minute flat rate for each type of service. (Decl. Atwood ¶ 11).  These rates are standard throughout BOP, regardless of the institution location.  Id.

4.      Plaintiff claims that under the Administrative Procedure Act (APA), 5 USC § 706[3] the Bureau of Prisons (BOP) "arbitrarily and unlawfully" increased commissary prices and telephone rates. (Compl. at 5; Order, Sept. 27, 2007).    Plaintiff also claims that the increased commissary prices and telephone rates violate his Due Process and Equal Protection rights under the Fifth Amendment. (Compl. at 1).

5.      This Court granted the Plaintiff's request for leave to amend the initial Complaint. Plaintiff filed an Amended Complaint, reinstating his FOIA allegations. (Am. Compl., Nov. 26, 2007).   Plaintiff filed a Second Amended Complaint adding three (3) additional FOIA claims. (Second Am. Compl., Jan. 9, 2008).  There are seven (7) total FOIA claims.

6.      Plaintiff's FOIA requests fall within two categories: 1) requests in which Plaintiff challenges the adequacy of the search for records and the information withheld, and 2) requests in which Plaintiff alleges he has received no response from BOP.

7.      The plaintiff is dissatisfied with the search for records and the information withheld in the following four (4) FOIA requests:

2006-05485    FOIA Request for Information regarding
              Incident Report #1450349 (Am. Compl. at 2-3.)

---

[3] See 5 U.S.C. §§ 553(b-d) & 706(2)(A).

2006-07827 FOIA Request for Information regarding Discipline Hearing Officer Alderman (Am. Compl. at 6).

2007-07829 FOIA Request for Information regarding his Veteran Administration Checks (Second Am. Compl. ¶ 2).

2007-07346 FOIA Request for Information regarding his Special Housing Unit Placement (Second Am. Compl. ¶ 3).

8. For FOIA request 2006-05485, upon receipt of Plaintiff's request, Defendant, the Butner Legal Center office forwarded the request to the Federal Correctional Complex, Petersburg. (Decl. Cox ¶ 8).[4] Institutional staff began their search with the Special Investigative Agent (SIA). Id. The SIA searched by retrieving the relevant incident report. Then, institutional staff contacted the individuals involved in the incident to verify if emails, phone records, or other responsive records were available. Upon completion of the institutional staff's search, nine (9) pages of responsive records were found and forwarded to the Butner Legal Center for processing. Id.

9. Of the nine (9) total responsive records found as a result of the search, Plaintiff ultimately received one (1) page in its entirety, four (4) pages with excisions and the remaining four (4) pages were withheld in their entirety. (Decl. Cox ¶¶ 9-13). Information was withheld pursuant to FOIA Exemptions (b)(2), (b)(6), (b)(7)(C) and (b)(7)(E). (Decl. Cox ¶¶ 12- 13).

10. The Butner Legal Center initially received Plaintiff's FOIA request number 2006-07827. (Decl. Cox ¶ 24). The Butner Legal Center forwarded the request to Federal Correctional

[4]Citations in the form "(Decl. Cox ¶ __)" refer to the May 29, 2008 Declaration of Lynnell Cox which is attached hereto as Exhibit H.

Complex, Petersburg, for staff to conduct a search for responsive records regarding Plaintiff's request. Id. Institutional staff began their search by searching for the requested telephone records, training records, or any other available responsive records. Id. Upon completion of the institutional staff's search, the following records were identified as responsive: one (1) page that responded to the third part of Plaintiff's request; and a recording of the phone call that responded to the first part of Plaintiff's request. Id. This information was forwarded to the Butner Legal Center for processing. Id. No documents were found to respond to the second and fourth parts of Plaintiff's FOIA requests. Id.

11.     Information withheld for FOIA request number 2006-07827 was pursuant to FOIA Exemptions (b)(6) and (b)(7)(C). (Decl. Cox ¶ 25).

12.     For FOIA request number 2007-07829, upon receipt by the BOP Central Office, the FOIA request was forwarded to the Northeast Regional Office. (Decl. Herbin-Smith ¶ 13).[5] The Northeast Regional Office then forwarded the request to USP Canaan. (Decl. Herbin-Smith ¶ 14). The institutional staff began their search by utilizing the Trust Fund Accounting and Commissary System ("TRUFACS") to retrieve a statement of Plaintiff's account. TRUFACS is a system that tracks financial data during the inmate's incarceration. Id. Then, institutional staff contacted the institution's mail room to verify if any checks were logged in that were mailed directly to the institution and forwarded to the Lock Box in Iowa with regard to the Plaintiff. Id. BOP's procedure is for all funds forwarded to inmates from family members, friends, and others to be mailed directly to the Lock Box in Iowa. Id.

---

[5]Citations in the form "(Decl. Herbin-Smith ¶ __)" refer to the May 22, 2008 Declaration of Vanessa Herbin-Smith, which is attached hereto as Exhibit I.

13. Upon completion of the institutional staff's search, thirteen (13) pages of records were found and forwarded to the Northeast Regional Office for processing. Id. Nine (9) pages were released in their entirety and four (4) pages were released with excisions pursuant to FOIA Exemptions (b)(6), (b)(7)(C) and (b)(7)(F). (Decl. Herbin-Smith ¶ 15).

14. FOIA request number 2007-07346 was received by the BOP Central Office, FOIA/PA Section, on or about May 29, 2007. (Decl. Herbin-Smith ¶ 23). This request was forwarded to the BOP's Northeast Regional Office shortly thereafter. Id. The Northeast Regional Office forwarded a request to the USP Canaan for staff to conduct a search for any responsive records regarding Plaintiff's request. (Decl. Herbin-Smith ¶ 24). Institutional staff began their search with the Special Investigative Agent (SIA). Id. The SIA searched his investigative files and Plaintiff's central file for responsive records. Id. Upon completion the SIA's search, ten (10) pages of responsive records were found and forwarded for processing. (Decl. Herbin-Smith ¶ 26).

15. Two (2) pages were released in full and eight (8) pages were released with excisions. Id. Information withheld in the eight (8) pages released to Plaintiff with excisions were pursuant to FOIA Exemption (b)(2)(low). Id.

16. The plaintiff alleges that the BOP has not responded to the following three (3) FOIA requests:

2007-10206 FOIA Request for Information regarding Tort Claim TRT-MXR-2007-01871 (Am. Compl. at 9).

2007-08547 FOIA Request for Information regarding Transfers at USP Canaan (Am. Compl. ¶ 10).

    2008-02180 FOIA Request for Information regarding copy cards at USP Canaan (Second Am. Compl. ¶ 4).

17. BOP has responded to FOIA requests 2007-10206, 2007-08547 and 2008-02180. (Decl. Decl. Herbin-Smith ¶¶ 8, 10, 11, 32).

Dated: May 29, 2008.

Respectfully submitted,

JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

CINDY S. OWENS , D.C. BAR # 491465
Assistant United States Attorney
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
202-616-2257/ FAX 202-514-8780

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILLIAM HENRY HARRISON, )
)
Plaintiff, )
)
v. ) Civil Action No. 07-1543 (PLF)
)
FEDERAL BUREAU OF PRISONS, )
)
Defendant. )
)

**MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**
**OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant Federal Bureau of Prisons ("BOP") respectfully moves to dismiss this suit, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. In the alternative, this Court should enter summary judgment in favor of Defendant pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no genuine issue as to any material fact and defendant is entitled to judgment as a matter of law.

## I. FACTUAL BACKGROUND

The chronological factual background is fully set forth in Defendant's Statement of Material Facts Not in Genuine Dispute. However, a brief description of the facts here will provide context for Defendant's Motion to Dismiss the Complaint, or in the Alternative, for Summary Judgment.

Plaintiff filed his initial Complaint alleging violation of the Freedom of Information

("FOIA") and Privacy Act (PA), his Due Process and Equal Protection rights under the Fifth Amendment, and violations of the Administrative Procedures Act (APA) on February 13, 2007. After filing his initial Complaint, the Court dismissed the claims under FOIA and PA. See Memorandum and Opinion Ordered, September 27, 2007. (Document 5). Subsequently, Plaintiff filed an Amended Complaint on November 26, 2007. (Document 9). On January 9, 2008, Plaintiff filed a Second Amended Complaint. (Document 13). Both of the Amended Complaints addressed renewed FOIA claims.

On March 1, 2002, BOP increased the commissary mark-up formula. (Decl. Atwood ¶ 7). On July 6, 2004, BOP increased the price of domestic long distance calls from 20 to 23 cents. (Decl. Atwood ¶¶ 11-12). Plaintiff claims that under the Administrative Procedure Act (APA), 5 USC § 706,[6] the Bureau of Prisons (BOP) "arbitrarily and unlawfully" increased commissary prices and telephone rates. (Compl. at 5; Order, Sept. 27, 2007). Plaintiff also claims that the increased commissary prices and telephone rates violate his Due Process and Equal Protection Rights under the Fifth Amendment. (Compl. at 1).

As set forth below, Defendant has acted with proper agency discretion to raise the commissary prices and telephone rates. Additionally, a "meaningful post-deprivation procedure" (the normal prisoner grievance process) was in place and therefore Plaintiff has failed to show how his Due Process rights were violated. Plaintiff has also failed to show how he is being treated differently than those similarly situated and thus his Equal Protection claim should be dismissed.

There are seven (7) total FOIA claims set forth in Plaintiff's Complaints. Plaintiff

[6] See 5 U.S.C. §§ 553(b-d) & 706(2)(A).

alleges that seven (7) of his requests are ripe for review pursuant to FOIA, 5 U.S.C. §§ 552(a)(4)(B) & 552(a). (Compl. at 1; Second Am. Compl. ¶ 2.) Plaintiff seeks declaratory relief that his FOIA requests be adjudicated in full. Plaintiff also seeks reasonable costs and attorney fees. (Compl. at 1; Am. Compl.; Second Am. Compl.) Plaintiff's FOIA requests fall within two categories: 1) requests in which Plaintiff challenges the adequacy of the search for records and the information withheld, and 2) requests in which Plaintiff alleges he has received no response from BOP.

Plaintiff is dissatisfied with the search for records and the information withheld in the following four (4) FOIA requests:

2006-05485 FOIA Request for Information regarding Incident Report #1450349 (Am. Compl. at 2-3.)

2006-07827 FOIA Request for Information regarding Discipline Hearing Officer Alderman (Am. Compl. at 6).

2007-07829 FOIA Request for Information regarding his Veteran Administration Checks (Second Am. Compl. ¶ 2).

2007-07346 FOIA Request for Information regarding his Special Housing Unit Placement (Second Am. Compl. ¶ 3).

Plaintiff alleges that the BOP has not responded to the following three (3) FOIA requests:

2007-10206 FOIA Request for Information regarding Tort Claim TRT-MXR-2007-01871 (Am. Compl. at 9).

2007-08547 FOIA Request for Information regarding Transfers at USP Canaan (Am. Compl. ¶ 10).

2008-02180 FOIA Request for Information regarding copy

cards at USP Canaan (Second Am. Compl. ¶ 4).

As set forth below, Defendant has responded to all seven (7) FOIA requests. Defendant has responded to the three (3) FOIA requests to which Plaintiff claims the BOP never responded. Also, Defendant has conducted reasonable searches and properly invoked the FOIA exemptions to withhold information from release in the four (4) FOIA requests where Plaintiff was dissatisfied with the responsive records that he received.

## II. STANDARD OF REVIEW

### A.    STANDARD FOR DISMISSAL UNDER 12(b)(1)

Defendant moves for dismissal of Plaintiff's original and amended complaints pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  "A motion under 12(b)(1) 'presents a threshold challenge to the court's jurisdiction.'"  Gardner v. U.S., No. CIV. A. 96-1467EGS, 1999 WL 164412, *2 (D.D.C. Jan. 29, 1999), aff'd, 213 F.3d 735 (D.C. Cir. 2000) and cert. denied, 531 U.S. 1153 (2001), quoting Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir.1987); see also 4 Wright & Miller:  Federal Prac. & Proc. § 1350 (R12) (2002 Supplement) ("...subject matter jurisdiction deals with the power of the court to hear the plaintiff's claims in the first place, and therefore imposes upon courts an affirmative obligation to ensure that they are acting within the scope of their jurisdictional power.")

A court may resolve a motion to dismiss brought pursuant to Rule 12(b)(1) in two ways. First, the court may determine the motion based solely on the complaint.  Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.D.C. 1992).  Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations of the complaint, consider affidavits and

other extrinsic information, and ultimately weigh the conflicting evidence. See id.; see also Cureton v. United States Marshal Service, 322 F. Supp. 2d 23, 2004 WL 1435124, *2 (D.D.C. June 28, 2004).

**B. STANDARD FOR DISMISSAL UNDER 12(b)(6)**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Aktieselskabet v. Fame Jeans, Inc., -- F.3d ---, 2008 WL 1932768 (D.C. Cir. Apr. 29, 2008); In re Sealed Case, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing Twombly). Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support plaintiff's claims for relief.

The court must construe the factual allegations in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. Barr v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. Kowal, 16 F.3d at 1276. Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." Id.

In Erickson v. Pardus, --- U.S. ---, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the Supreme Court noted the long established admonition that *pro se* complaints are "liberally construed," but it bears noting that its reversal of the dismissal of the complaint at issue was fully

consistent with the Twombly standard because the complaint included factual allegations describing the prison's termination of plaintiff's treatment for hepatitis. See id. at 2200.[7] Even under a liberal construction, therefore, it does not suffice for a complaint to rely on conclusory allegations or to raise only a "suspicion" of wrongdoing, Twombly, 127 S. Ct. at 1965. The complaint must give notice of the factual basis for the relief sought.

**C. STANDARD FOR SUMMARY JUDGMENT UNDER 56**

Where no genuine dispute exists as to any material fact, summary judgment is required. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. Id. at 247. "The burden on the moving party may be discharged by 'showing' – that is, point out to the [Court] – that there is an absence of evidence to support the non-moving party's case." Sweats Fashions, Inc., v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment here, the Plaintiffs (as the non-moving party) must present some objective

---

[7] Furthermore, the crux of the holding was the Circuit Court's erroneous requirements regarding pleading the particulars of the harm resulting from the conduct alleged.

> It may in the final analysis be shown that the District Court was correct to grant respondents' motion to dismiss. That is not the issue here, however. It was error for the Court of Appeals to conclude that the allegations in question, concerning *harm* caused petitioner by the termination of his medication, were too conclusory to establish for pleading purposes that petitioner had suffered "a cognizable independent harm" as a result of his removal from the hepatitis C treatment program.

Id. at 2199-2200 (emphasis added). Hence, Twombly's focus on the complaint is equally applicable to a *pro se* complaint, although the inferences drawn from the complaint's factual allegations are subject to a liberal construction.

evidence that would enable the Court to find it is entitled to relief. In Celotex Corp. V. Catrett, the Supreme court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986). In Anderson the Supreme court further explained that "the mere existence of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." Anderson, 477 U.S. at 252; see also Laningham v. Navy, 813 F. 2d 1236, 1242 (D.C. cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor).

In Celotex, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 447 U.S. at 327 (quoting Fed. R. Civ. P. 1).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment. See Cappibianca v. Commissioner, U.S. Customs Serv., 847 F. Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (citing Mscavige v. IRS, 2 F.3rd 366, 368 (11th Cir. 1993)). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. Hayden v. NSA, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), cert. denied, 446 U.S. 937 (1980); Church of Scientology v. U.S. Dept. Of Army, 611

F.2d 738, 742 (9th Cir. 1980); Trans Union LLC v. FTC, 141 F. Supp. 2d 62, 67 (D.D.C. 2001) (summary judgment in FOIA cases may be awarded solely on the basis of agency affidavits "when the affidavits describe 'the documents and the justifications for non-disclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981)). see also Public Citizen, Inc. v. Dept. of State, 100 F. Supp. 2d 10, 16 (D.D.C. 2000), aff'd in part, rev'd in part, 276 F.3d 634 (D.C. Cir. 2002).

The declarations or affidavits submitted in FOIA cases are often referred to as a Vaughn index, after the case Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert denied, 415 U.S. 977, 94 S. Ct. 1564 (1974). There is no set formula for a Vaughn index. "[I]t is well established that the critical elements of the Vaughn index lie in its function, and not in its form."   "The materials provided by the agency may take any form so long as they give the reviewing court a reasonable basis to evaluate the claim of privilege." Delany, Midgail & Young, chartered v. IRS, 826 F.2d 124, 128 (D.C. cir. 1987); see also Keys v. United States Dept. of Justice, 830 F.2d 337, 349 (D.C. Cir. 1987). When the pleadings, supplemented by the affidavits, declarations or Vaughn Index show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. Perry v. Block, 684 F.2d 121 (D.C. Cir. 1982).[8]

---

[8]In this case, Defendant has presented the Lynnell Cox and Vanessa Herbin-Smith Declarations, both of which set forth the specific details and information required by Vaughn v. Rosen, 484 F. 2d 820 (D.C. Cir. 1973).

## III. ARGUMENT

### A. THIS COURT SHOULD USE ITS DISCRETION UNDER SECTION 1915(a), TITLE 28 U.S. CODE TO DENY PLAINTIFF IN FORMA PAUPERIS STATUS BECAUSE HE HAS ABUSED THE PRIVILEGE

Section 1915(a) of Title 28 U.S. Code states that "any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor" and provides the Courts with discretion to grant in forma pauperis ("IFP") status. 28 U.S.C. § 1915(a). As the Court of Appeals for the District of Columbia clearly stated:

> Litigants have a constitutional right of access to the courts, see, e.g., Bounds v. Smith, 430 U.S. 817, 821 (1977), but that right "is neither absolute nor unconditional." In re Green, 669 F.2d 779, 785 (D.C. Cir. 1981) (per curiam). It must be counterbalanced by the traditional right of courts to manage their dockets and limit abusive filings." Cofield v. Ala. Pub. Serv. Comm'n, 936 F.2d 512, 517 (11th Cir. 1991).

Butler v. Department of Justice, 492 F.3d 440, 445 (D.C. Cir. 2007). In determining whether a Court should exercise its discretion under 28 U.S.C. § 1915(a), the Butler Court examined "the number, content, frequency, and disposition of Butler's previous filings to determine if there is a pattern of abusing the IFP privilege in his litigation history." Id. at 446.

Here, since 2002, "William Henry Harrison" has filed 17 civil lawsuits in the district courts.[9] (Exhibit A). "William Henry Harrison" filed one (1) civil lawsuit in 2002, one (1) in

---

[9]2004cv00061 (D.C. District Court), 2006cv00501 (Eastern District of Virginia), 2005ct00550 (Eastern District of North Carolina), 2007cv00570 (Middle District of Pennsylvania), 2002cv00602 (Eastern District of Texas), 2004cv00681 (D.C. District Court), 2006cv01061 (Eastern District of Virginia), 2006cv01182 (Eastern District of Virginia), 2006cv01466 (Middle District of Pennsylvania), 2007cv01543 (D.C. District Court), 2007cv01993 (Middle District of Pennsylvania), 2005cv02059 (Eastern District of New York),

2003, two (2) in 2004, three (3) in 2005, six (6) in 2006, and four (4) in 2007. Since 2004 "William Henry Harrison" has filed seven (7) appeals with the Circuit Courts of Appeals.[10] The types of cases repeatedly filed by Plaintiff include, but are not limited to, Bivens actions, FOIA and PA claims, alleged violations of Plaintiff's First, Fourth, Fifth, Eighth, and Fourteenth Amendment rights, all of which relate to his imprisonment. See e.g. 2004cv00061 (D.C. District Court); 2006cv00501 (Eastern District of Virginia); 2005ct00550 (Eastern District of North Carolina); 2006cv01182 (Eastern District of Virginia). Most all of the cases have been dismissed or dismissed with prejudice. See e.g. 2006cv00501 (Eastern District of Virginia); 2005ct00550 (Eastern District of North Carolina); 2002cv00602 (Eastern District of Texas); 2006cv01466 (Middle District of Pennsylvania); 2005cv02059 (Eastern District of New York); 2006cv02412 (Middle District of Pennsylvania). [11]

Plaintiff is relitigating the same claims here that he brought in the Eastern District of Virginia. (Exhibit D). As is evident from the number of cases, frequency, and the types of cases that Plaintiff has filed, Plaintiff is clearly a prolific filer and given the repetitive nature of his claims, Plaintiff has abused his privilege of filing IFP. For these reasons, this Court should exercise its discretion under 28 U.S.C. § 1915(a) and deny Plaintiff IFP status

---

2006cv02412 (Middle District of Pennsylvania), 2003cv02594 (D.C. District Court), 2006cv04943 (Eastern District New York), 2005cv08271 (Southern District of New York), 2006cv15248 (Southern District of New York). Note that three of these cases are open (including this case) and 14 have been closed. available at https://pacer.uspci.uscourts.gov.

[10] 06-4524 (o3cae), 04-5018 (dccae), 05-5159 (dccae), 05-5310 (dccae), 07-6423 (04cae), 07-6497 (04cae), 07-7748 (04cae). available at https://pacer.uspci.uscourts.gov.

[11] Plaintiff has had at least one of these cases dismissed as frivolous (Exhibit B) and at least one (1) dismissed in part with prejudice for failure to state a claim (Exhibit C).

**B. PLAINTIFF'S CLAIMS THAT THE INCREASE IN TELEPHONE RATES VIOLATES HIS DUE PROCESS AND EQUAL PROTECTION RIGHTS UNDER THE FIFTH AMENDMENT ARE "FRIVOLOUS" AND SHOULD BE DISMISSED OR, IN THE ALTERNATIVE, SHOULD BE BARRED PURSUANT TO THE DOCTRINE OF RES JUDICATA**

The Court may dismiss an action being prosecuted in forma pauperis that is "frivolous or malicious" See 28 U.S.C. § 1915(e)(2)(B)(i).[12] A prisoner's in forma pauperis action is "frivolous," and therefore subject to dismissal, where the complaint duplicates allegations of another pending lawsuit by that prisoner in another jurisdiction. See Pittman v. Moore, 980 F.2d 994, 994-95 (5th Cir. 1993) (stating that "in forma pauperis complaints may be dismissed as frivolous if they seek to relitigate claims that allege substantially the same facts arising from a common series of events which have already been unsuccessfully litigated by the plaintiff.") (citing Wilson v. Lynaugh, 878 F. 2d 846, 849 (5th Cir.), cert. denied, 493 U.S. 969 (1989)). "Pauper status does not entitle a plaintiff to avoid the ordinary rules of res judicata." Pittman v. Moore, 980 F. 2d at 994. A dismissal of this action as frivolous is appropriate and would be reviewable only for an abuse of discretion. Denton v. Hernandez, 112 S. Ct. 1728, 1733-34 (1992).

In the instant case, plaintiff has filed in forma pauperis. See Plaintiff's Motion for Leave to Proceed In Forma Pauperis, Aug. 30, 2007. Prior to this case, Plaintiff presented the same claims of violations of Due Process and Equal Protection rights, in Harrison v. Federal Bureau of Prisons, No. 1:06CV1182, in the Eastern District of Virginia. (Exhibit B). Both this case and the

[12] 28 U.S.C. § 1915(e)(2)(B)(i), states that for proceedings in forma pauperis, "the court shall dismiss the case at any time if the court determines that. . . (B) the action or appeal–. . .(i) is frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i).

Harrison case are based on the same set of facts.[13] Furthermore, in the Harrison case, the Court dismissed with prejudice Plaintiff's Due Process and Equal Protection claims as well as the APA claim regarding the increase in telephone rates.[14] Harrison v. Federal Bureau of Prisons, 464 F. Supp. 2d 552 (E.D. Va. 2006). Therefore, in accordance with 28 U.S.C. § 1915(e)(2)(B)(i), this Court should dismiss Plaintiff's claims that the increase in telephone rates violates Plaintiff's Due Process and Equal Protection rights because these claims were previously litigated in the Eastern District of Virginia.

Additionally, because Plaintiff has already litigated his claim in the Eastern District of Virginia, the doctrine of res judicata prevents him for relitigating the same claims in this Court. The D.C. District Court has clearly set forth the legal requirements as well as the policy basis for the doctrine of res judicata.

> "The doctrine of res judicata prevents repetitious litigation involving the same causes of action or the same issues." I.A.M. Nat'l Pension Fund v. Indus. Gear Mfg. Co., 723 F.2d 944, 946 (D.C.Cir.1983). Res judicata has two distinct aspects-claim preclusion and issue preclusion (commonly known as collateral estoppel)-that apply in different circumstances and with different consequences to the litigants. NextWave Pers. Commc'n, Inc. v. Fed. Commc'n Comm'n, 254 F.3d 130, 142 (D.C.Cir.2001) (citing id.); Novak v. World Bank, 703 F.2d 1305, 1309 (D.C.Cir.1983). Under claim preclusion , "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Drake v. Fed. Aviation Admin., 291 F.3d 59, 66 (D.C.Cir.2002) (quoting Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980)). Under issue preclusion or collateral estoppel,

---

[13]The facts at issue in both cases are that in 2004, BOP increased the telephone rate for direct dial long distance calls from 20 to 23 cents per minute. See "Atwood Decl. ¶ 7; Harrison v. Federal Bureau of Prisons, 464 F. Supp. 2d 552, 554 (E.D. Va. 2006).

[14]Note that in Harrison, the APA claim was that BOP should have promulgated the rate "after complying with the notice and comment requirements" of the APA. Harrison, 464 F. Supp. 2d at 557. In this case, Plaintiff is alleging that the telephone increase is "arbitrary and unlawful" under the APA. (Compl. at 2).

> "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C.Cir.1992) (quoting Allen, 449 U.S. at 94, 101 S.Ct. 411). In short, "claim preclusion forecloses all that which might have been litigated previously," while issue preclusion "prevents the relitigation of any issue that was raised and decided in a prior action." I.A.M. Nat'l Pension Fund, 723 F.2d at 949; Novak, 703 F.2d at 1309. In this way, res judicata helps "conserve judicial resources, avoid inconsistent results, engender respect for judgments of predictable and certain effect, and [ ] prevent serial forum-shopping and piecemeal litigation." Hardison v. Alexander, 655 F.2d 1281, 1288 (D.C.Cir.1981); see also Allen, 449 U.S. at 94, 101 S.Ct. 411.

Sieverding v. American Bar Ass'n, 439 F. Supp. 2d 120, 123 (July 20, 2006) (Urbina J.). As previously stated, Plaintiff should be barred from bringing the Due Process and Equal Protection right claims in this Court because the Harrison Court has already decided on the merits of the claim.

If the Court chooses not to dismiss Plaintiff's Due Process and Equal Protection rights claims under 28 U.S.C. § 1915(e)(2)(B)(i) or the doctrine of res judicata, Defendant has provided additional defenses below which show that this Court should dismiss the Plaintiff's Constitutional claims.

## C. PLAINTIFF HAS NEITHER SHOWN THAT THE COMMISSARY AND/OR TELEPHONE RATE INCREASES VIOLATE HIS DUE PROCESS AND/OR EQUAL PROTECTION RIGHTS

In Plaintiff's initial Complaint, he alleges that the increase in commissary prices and the telephone rates violates his Due Process and Equal Protection rights. However, Plaintiff does not allege any harm or further specify how the rate increases deprive him of these constitutional rights. In examining the underlying administrative record, Plaintiff alleges that:

> The Due Process violation is in the taking of property without due process of law. Persons in the "'free' society are paying sometimes between .03 and .05 [cents] . . .

> for long distance service. Inmates, who have already been deprived of their precious liberty, are now being forced to pay for B.O.P. activities that have nothing to do with inmate programs, and now are being required to pay for services that they do not benefit from, and are actually disguised as needed for Inmate Trust Fund expenditures and rising costs. The prices inmates pay for items in the commissary are already unlawful, and in violation of the profit-margin the B.O.P. is permitted to earn. The claim that an increase in long-distance rates, and only for inmates who live within the conterminous States, is needed due to rising costs for inmate programs cannot be substantiated. I do not wish to pay these higher prices, and I certainly do not want to pay the bill for other inmates who only make local, Mexican, Canadian, and/or International calls. I do not even agree with the .20 [cent] . . . perminute [sic] rate. It is unlawful, and puts money into individuals' pockets in the B.O.P., is not a fair practice in business, and is actually in violation of civil and criminal laws.

(Exhibit E at page 002). Plaintiff goes on to state that "[m]y Due Process and Equal Protection rights are being violated by my having to pay when other inmates similarly situated do not have to pay the increase." (Exhibit E at page 003). For the following reasons these claims should be dismissed because Plaintiff fails to state a claim.

1. The increase in telephone rates does not violate Plaintiff's Due Process rights

"To satisfy a claim for a procedural due process violation, plaintiff must first allege a harm to a protectible interest in 'life, liberty, or property.'" Harrison, 464 F. Supp. 2d at 556 (quoting Hewitt v. Helms, 459 U.S. 460 (1983)).

Plaintiff has not specified a protectible interest in "life, liberty, or property." But, assuming that there is a Constitutionally protected interest here, Plaintiff has failed to show that BOP did not provide adequate procedures to address those dissatisfied with the telephone charges. "In considering a due process claim, we look to the private interest, the governmental interest, and the value of the available procedure in safeguarding against an erroneous deprivation." Tillman v. Lebanon County Correctional Facility, 221 F.3d 410. 421 (M.D. Pa.

May 10, 2000) (citing Reynolds v. Wagner, 128 F.3d 166 (3d Cir. 1997)). As the Harrison court stated "in certain circumstances, due process will require pre-deprivation notice and a hearing, but where it is impractical to provide a meaningful hearing prior to an alleged deprivation, due process is satisfied when some meaningful post-deprivation procedure exists to assess the propriety of the state's action." 464 F. Supp. 2d at 556 (citing Waters v. Bass, 304 F. Supp. 2d 802, 811 (E.D. Va. 2004); Parrat v. Taylor, 451 U.S. 527, 538 (1981).

Here, as in Harrison, the "meaningful post-deprivation procedure" is satisfied by the normal prison grievance process. Plaintiff, used the normal prison grievance process in this case. Plaintiff filed an "Administrative Remedy Attempt at Informal Resolution" ("BP8") on August 12, 2004, addressing the increase in telephone rates. He subsequently filed "Requests for Administrative Remedy" on August 13, 2004, August 28, 2004 and October 23, 2004. (Exhibit E at pages 001, 003, 005, 007). For his grievance regarding the commissary prices, Plaintiff filed a BP8 on April 15, 2007. He subsequently filed "Requests for Administrative Remedy" on September 7, 2007, September 27, 2007 and November 14, 2007 (Exhibit F at pages 001, 002, 004, 006).

Because Plaintiff was provided a "meaningful post-deprivation procedure" (and Plaintiff participated in that procedure), Plaintiff has failed to state a claim upon which relief may be granted and therefore the claim that the increase in the telephone rate violates his Due Process rights should be dismissed for failure to state a claim.

2. The increase in the telephone rates does not violate Plaintiff's Equal Protection rights

In the underlying administrative record, Plaintiff alleges that "[m]y Due Process and

Equal Protection rights are being violated by my having to pay when other inmates similarly situated do not have to pay the increase. We are all convicted, federal inmates. I should not have to pay an increase while local, Canadian, Mexican, and international-calling inmates do not." (Exhibit E at page 003).

The Equal Protection Clause of the U.S. Constitution protects against arbitrary classifications by state actors. U.S. Const. Amend. XIV § 1. "While the Equal Protection Clause protects prisoners from discriminatory treatment by prison officials, prisoners are not considered a suspect class." Harrison 464 F. Supp. 2d at 557 (citing Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997). As a result, the reasonableness standard applies and "plaintiff must show '(i) that he has been treated differently from others with whom he is similarly situated and (ii) that the unequal treatment was a result of purposeful discrimination.'" Id. (citing Waters v. Bass, 304 L.Ed. 2d 675 (1983).

As in Harrison, Plaintiff is again alleging that he is paying higher rates when local and international long distance inmate callers do not. However, Plaintiff has failed to show that he is being charged a different rate than other prisoners making the same kind of domestic long distance calls. The telephone rates are the same throughout BOP and do not fluctuate between different institutions. (Decl. Atwood ¶ 11). Furthermore, the rates for local and international calls have changed over time as well. (Decl. Atwood ¶ 12).

Plaintiff's claim concerning the increase in domestic long distance telephone rates fails because there is no showing that Plaintiff is being treated differently than those prisoners (in his institution and all others operated by BOP) making domestic long distance calls. This court should dismiss for failure to state a claim.

3. The increase in commissary prices does not violate Plaintiff's Due Process and or Equal Protection rights

Plaintiff alleges that the increase in commissary prices violates his Due Process and Equal Protection rights. (Compl. at 1, Exhibits E and F). However, inmates have no federal constitutional right to purchase items from a commissary. See Tokar v. Armontrout, 97 F.3d 1078, 1083 (8th Cir. 1996) ("we note that we know of no constitutional right of access to a prison gift or snack shop."); Hopkins v. Keepfe Commissary Network Sales, No. 07-745, 2007 WL 2080480, at *5 (W.D. Pa. July 12, 2007). Plaintiff therefore has no right to prevent the increase in pricing. Hopkins, 2007 WL 2080480, at *5 (citing French v. Butterworth, 614 F. 2d 23, 25 (1st Cir. 1980)); McCall v. Keepfe Supply Co., 71 F. App'x 779, 780 (10th Cir. 2003) (stating that an inmate's claim that prison commissary charges "outrageous" prices for goods purchased through the prison commissary failed to state a constitutional claim).

Furthermore, in Prows v. United States Department of Justice, 1991 WL 111459 at *3 (June 13, 1991), Prows, a prisoner in Colorado, challenged BOP's authority to mark up prices in commissaries 25% above the wholesale price. Judge Oberdorfer stated in his opinion that

> Congress did not, however, place any limitation upon the manner in which the Bureau of Prisons priced goods in the commissaries: The only substantive requirement placed upon the expenditure of funds under the prison commissary trust fund is that they may only be "disbursed in compliance with the terms of the trust." Act of June 26, 1934 § 10(a). Finally, Prows alleges that the commissaries allow wealthy inmates to enjoy more goods and work at less demanding jobs than their indigent counterparts. See id. ¶¶ 54-56. Ostensibly, by offering the same prices and work opportunities to poor prisoners as to rich ones, the defendants de facto discriminate against the poor prisoners. The constitutional guarantee of equal protection does not, however, "require absolute equality or precisely equal advantages," San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 24 (1973) (footnote omitted), and wealth discrimination alone does not require strict scrutiny. See id. at 29. Thus, the commissaries' pricing scheme need only have a rational basis, which the practice of offering the

same prices and work opportunities to all prisoners certainly has.

As in Prows, the commissary pricing scheme is applied to all prison facilities operated by BOP and therefore satisfies the requisite rational basis standard. (Decl. Atwood ¶ 8).

Therefore, the increase in commissary prices alleged by the Plaintiff does not violate his Due Process and/or Equal Protection rights and these claims should be dismissed for failure to state a claim.

**D. COMMISSARY PRICING AND TELEPHONE RATE INCREASES ARE NOT ARBITRARY AND UNLAWFUL UNDER THE ADMINISTRATIVE PROCEDURES ACT**

Plaintiff alleges that BOP's increase in commissary prices and telephone rates is arbitrary and unlawful under the Administrative Procedures Act (APA). 5 U.S.C. §§ 553, 706; (Compl. at 1-2);[15] Memo. Opinion & Order, Sept. 28, 2007. Plaintiff requests injunctive relief through a temporary restraining order and judicial review of agency action. (Compl. at 2.)

1. BOP acted well within its own broad unreviewable discretion in raising the commissary prices and telephone rates and therefore is not acting in violation of the Administrative Procedures Act

It is well settled that the APA requires that agency action be upheld unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706 (2)(A). The arbitrary standard is highly deferential and presumes the validity of agency action. Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). In making this determination, the Court need only be "satisfied that the agency examined the relevant data and established a 'rational connection between the facts found and the

[15] Note that in Plaintiff's initial Complaint filed on August 30, 2007 the page two (2) of the Complaint is marked as page "5" as filed in the Electronic Case Filing System (ECF).

choice made.'" Id.; Kisser v. Cisneros, 14 F.3d 615, 619 (D.D.C. 1994); AT&T Corp. v. FCC, 220 F.3d 607, 616 (D.D.C. 2000); Southern Co. Services, Inc. v. FCC, 313 F. 3d 574, 579-80 (D.C. Cir. 2002).

The APA applies to some BOP actions, Ramer v. Saxbe, 522 F.2d 695, 697 (D.C. Cir. 1975), though Courts generally defer to the BOP's considerable judgment and expertise in penal matters. See Bell v. Wolfish, 441 U.S. 520, 547 (1979). "[D]ecisions made by prison officials regarding prison administration are entitled to significant deference." Shue v. Herring, 2006 U.S. Dist. LEXIS 73400, at *17018 (M.D.N.C. Jan. 12, 2006) (citing Bell v. Wolfish, 441 U.S. 520, 547 (1979)).

Courts do not review agency action if (1) prohibited by statute or (2) agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a). Congress has stated that BOP shall "(1) have charge of the management and regulation of all Federal penal and correctional institutions; (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged or convicted of offenses against the United States . . ." 18 U.S.C. § 4042. "This statute addresses only the general responsibilities of the BOP; thus, '[t]he absence of specific guidelines of appropriate conduct by BOP officials in administering these duties [ ] leaves judgment or choice to BOP officials.' Indeed, the total absence of specific guidelines indicates that the BOP has "broad unreviewable discretion" in fulfilling its responsibilities." Harrison, 464 F. Supp. 2d 552, 558 (quoting Scrima v. Hasty, 1998 WL 661478, at *3 (S.D.N.Y. 1998); (citing Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520 (1979)); Crooker v. Morris, 1996 WL 608553, at *6, (D.N.J. 1996).

This statute provides authority for BOP to manage the commissaries and establish

telephone rates. See Harrison, 464 F. Supp. 2d at 557-58. Because this statute provides BOP officials with "broad unreviewable discretionary authority" then the increase in both telephone rates and commissary prices do not violate the APA. See Wolfish v. Levi, 573 F.2d 118, (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520 (1979).

Even if this Court were to decide that Section 4042 of Title 19 U.S. Code did not provide BOP with "broad unreviewable discretionary authority," BOP acted properly in raising both commissary pricing and telephone rates given its duty to manage the inmate trust fund.

2. BOP properly exercised its authority to manage the inmate trust fund

a. Commissary Pricing

Plaintiff alleges that the increase in the commissary pricing is an arbitrary and unlawful action in violation of the APA.

The BOP has promulgated an internal policy, consistent with 31 U.S.C. § 1321,[16] to establish a selling price formula for items sold at BOP commissaries. (Decl. Atwood ¶¶ 4-7 and Ex. I). BOP has also published implementing regulations at 28 C.F.R. § 0.95 (b).

Program Statement 4500.05 outlines how prices are set in the commissary. (Decl. Atwood ¶ 4). First, cost price of individual items is established automatically in the Trust Fund Accounting and Commissary System (TRUFACS). (Decl. Atwood ¶ 5). Second, cost price is computed into the selling price using a set mark-up formula. (Decl. Atwood ¶ 6).

Periodic mark-ups are necessary to ensure that the commissary operates within the

---

[16] 31 U.S.C. § 1321 (b)(1) states that funds received by the United States as trustees (from a detailed list of sources in §1321(a), including funds of federal prisoners, §1321(a)(21)), shall be deposited in an appropriate trust fund account in Treasury.

resources of the inmate trust fund.[17] (Decl. Atwood ¶ 7). The Bureau increased the prices of general items in the commissary by roughly 5% using a new mark-up formula effective March 1, 2002. (Decl. Atwood ¶ 7.) The change in formula increased commissary markups from roughly 25% to 30%, a 5% increase. Id.

As demonstrated above, the BOP has set commissary pricing consistent with its unambiguous statutory mandate to run prison commissaries and operate them within the budgetary constraints of the ITF.

Furthermore, as previously discussed, this challenge regarding the constitutional validity of the BOP's mark up of commissary items must fail, as there are no limitations upon the manner in which the BOP prices goods in the commissaries. See Prows, 1991 WL 111459.

b. Telephone Rates

Plaintiff alleges that the increase in the telephone rates is an arbitrary and unlawful action in violation of the APA. However, the BOP's decision to increase telephone rates occurred after careful consideration and pursuant to statutory authority.

Pursuant to statutory authority, the BOP entrusted the Chief of the Trust Fund Branch with the responsibility to determine telephone rates. BOP Program Statement 4500.05. (Decl. Atwood ¶ 2.) Congress also provided that the BOP shall "(1) have charge of the management and regulation of all Federal penal and correctional institutions; [and] (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged or

---

[17] Congress, by an Act of June 26, 1934 established the inmate trust fund. See Pub.L. No. 473,§ 20(a), 73d Cong., 2d Sess., June 26, 1934, 48 Stat. 1224, 1233 (1934) (currently codified at 31 U.S.C. § 1321(a)(21)). The telephone system is currently operated under the same inmate trust fund.

convicted of offenses against the United States..." 18 U.S.C. § 4042(a)(1); (Decl. Atwood ¶ 10). Pursuant to this broad statutory authority, the BOP has promulgated an internal policy implementing telephone guidelines for inmates in federal prisons.

Inmate Telephone System ("ITS") rates are established to encourage financial responsibility, family ties, and to ensure the Trust Fund Program remains financially solvent." (Decl. Atwood ¶ 11) On July 6, 2004, the BOP increased the cost of direct dial long distance calls from 20 to 23 cents per minute in order to maintain the system operating within the Inmate Trust Fund budget. (Decl. Atwood ¶ 12.) The BOP periodically reviews and revises telephone rates in order to maintain the self-sustaining nature of the ITS. (Decl. Atwood ¶ 12.)

As demonstrated above, the BOP has set telephone rates consistent with its unambiguous statutory mandate to operate the prison system.

3. The Court lacks subject matter jurisdiction for 5 U.S.C. § 553 claim

The Plaintiff attempts to invoke the Court's jurisdiction to pursue his claims under the APA, 5 U.S.C. § 553. (Compl. at 1.). The text of the complaint seeks injunctive relief from an "arbitrary and unlawful increase in commissary prices and its unlawful profits..." (Compl. at 5.) Further, the Judge's Order addressing the initial complaint invokes jurisdiction under § 702 to pursue this claim. But Plaintiff does not make an argument regarding notice and comment in any of his pleadings. Furthermore, Plaintiff has already litigated this claim in Harrison, 464 F. Supp. 2d 552, and should be barred from relitigating this claim as previously discussed.

4. The Plaintiff fails to meet the stringent standards for injunctive relief

The statute governing prospective relief[18] in the Prison Litigation Reform Act (PLRA), codified at 18 U.S.C § 3626(a)(1), puts substantial limitations on the issuance of injunctive relief. Specifically, the Act provides, prospective relief in any civil action with respect to 'prison conditions'(defined by the Supreme Court in Porter v. Nussle, 534 US 516 (2002), as "any aspect of prison life") shall extend no further than necessary to correct the violation of the federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right." 18 U.S.C. § 3626(a)(1).

The court must make particularized findings of the federal right violated and the needs-narrowness-intrusiveness requirements under the Act. This mandatory requirement must be more than mimicking the language of the statute, and is discussed in Cason v. Seckinger, 231 F.3d 777 (11th Cir. 2000); see also Johnson v. Breeden, 280 F.3d 1308 (11th Cir. 2002). The statute further states, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." The Court in Thompson v. Gomez, 993 F.Supp. 749, 754-55 (N.D.Cal.1997), rev'd on other grounds, Gilmore v. People of the State of California, 220 F.3d 987, 1005 (9th Cir. 2002) stated:

> The PLRA's prospective relief provisions unambiguously confine the power of federal courts to circumstances where prospective relief is necessary to correct specific violations of federal rights, and then to use only the least intrusive means necessary to correct such federal violations. For purposes of the PLRA's prospective relief provisions, 'federal rights' are limited to those rights created by federal law. The legislative reports on the bill reflect these Congressional intentions:

[18] The statute defines prospective relief as "all relief other than compensatory monetary damages." 18 U.S.C. § 3626(g)(7).

> 'By requiring courts to grant or approve relief constituting the least intrusive means by curing an actual violation of a federal right, the provision stops judges from imposing remedies intended to effect an overall modernization of local prison systems or provide an overall improvement in prison conditions. The provision limits remedies to those necessary to remedy the proven violation of federal rights. The dictates of the provision are not a departure from current jurisprudence concerning injunctive relief [which provides that] ... injunctive relief must be no broader than necessary to remedy the constitutional violation.'

H.R.Rep. No. 21, 104th Cong., 1st Sess., pt. 2, p. 34 (1995) (citations and quotations omitted).

Plaintiff is not entitled to injunctive relief because no federal right was violated. There is no federal right to low prices in prison commissaries. Another Court has ruled that "an inmate has no constitutionally protected right to purchase food or other items as cheaply as possible through the prison commissary." Bagwell v. Brewington-Carr, 2000 WL 1239960, 2-3 (D. Del. 2000). Even though the BOP had previously charged lower rates, "prisoners are [not] entitled to a specific rate for their telephone calls." Harrison, 464 F. Supp.2d at 556 (E.D. Va. 2006). Because the BOP acted within its statutory grant of discretion when increasing commissary pricing and telephone rates, summary judgment is appropriate in this case.

**E. FREEDOM OF INFORMATION ACT CLAIMS**

To prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records. United States Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142 (1989); United We Stand America, Inc. v. IRS, 359 F.3d 595, 598 (D.C. Cir. 2004). A suit is only authorized under the FOIA against Federal agencies and injunctive relief is only available to remedy an agency's improper withholding of information. Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150 (1980); see also 5 U.S.C. § 552(a)(4)(B) & (f)(1).

Summary judgment is appropriate here because the BOP has responded to all FOIA

requests at issue and has either released records in full or properly asserted FOIA exemptions to withhold information.  (See generally Decl. Cox and Decl. Herbin-Smith).

 1. 2006-05485--FOIA request for information regarding incident report #1450349

 Plaintiff alleges that BOP conducted an inadequate search and that it failed to release responsive records for FOIA request 2006-05485.  (Amended Compl.¶ 4, November 26, 2007).

 a.  Adequacy of the search

 In Leal v. Department of Homeland Security, this Court cogently outlined Defendant's responsibility in searching for responsive records under FOIA:

> An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.' " Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 325 (D.C.Cir.1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C.Cir.1990)); Campbell v. United States Dep't of Justice, 164 F.3d 20, 27 (D.C.Cir.1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C.Cir.1994). To meet its burden, the agency may submit*108 affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. Perry v. Block, 684 F.2d 121, 126 (D.C.Cir.1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. Id. at 127. If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt v. Dep't of State, 897 F.2d at 542.

519 F.Supp.2d 105 (D.D.C., Nov. 8, 2007) (Friedman, J.).

 Here, upon receipt of Plaintiff's request, BOP's Butner Legal Center forwarded the request to the Federal Correctional Complex, Petersburg.  (Decl. Cox ¶ 8).  Institutional staff began their search with the Special Investigative Agent (SIA).  Id.  The SIA searched by retrieving the relevant incident report.  Then, institutional staff contacted the individuals involved

in the incident to verify if emails, phone records, or other responsive records were available. Upon completion of the institutional staff's search, nine (9) pages of responsive records were found and forwarded to the Butner Legal Center for processing. Id. The institution's search method was reasonably calculated to uncover all relevant documents regarding plaintiff's request because the SIA and individuals involved were those most likely to possess responsive records. Those individuals were asked to produce all responsive records to the request. Therefore, Defendant has fulfilled its obligation to conduct a reasonable search to uncover all responsive documents.

b. The Appeal and FOIA Exemptions Asserted

Plaintiff appealed to the Office of Information and Privacy ("OIP") BOP's decision to release one (1) page in its entirety and withhold eight (8) pages in full. (Decl. Cox ¶¶ 9-10). OIP released portions of four (4) pages in a letter dated November 16, 2006. (Decl. Cox ¶ 11.) Of the nine (9) total responsive records found as a result of the search, Plaintiff ultimately received one (1) page in its entirety, four (4) pages with excisions and the remaining four (4) pages were withheld in their entirety. Once the appeal was processed, information was withheld pursuant to FOIA Exemptions (b)(2), (b)(6), (b)(7)(C) and (b)(7)(E). (Decl. Cox ¶¶ 12-13). What follows is a detailed discussion of these exemptions.

**Exemption (b)(2) (high)**

Section 552(b)(2) of Title 5 of the U.S. Code exempts from disclosure records "related solely to the internal personnel rules and practices of an agency." This Court has set forth the requirements of the Exemption (b)(2) and stated:

To fall within Exemption 2, the material withheld must be "used for predominantly

> internal purposes." Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C.Cir.1992) (quoting Crooker v. Bureau of Alcohol, Tobacco & Firearms, 670 F.2d 1051, 1073 (D.C.Cir.1981) ( en banc )). If the threshold test of predominant internality is met, an agency may withhold the material "by proving that either (1) disclosure may risk circumvention of agency regulation, or (2) the material relates to trivial administrative matters of no genuine public interest." Schwaner v. Dep't of the Air Force, 898 F.2d 793, 794 (D.C.Cir.1990) (internal quotation marks and citations omitted). Predominantly internal records the disclosure of which would risk circumvention of agency statutes or regulations are protected by the so-called "high 2" exemption. Schiller v. NLRB, 964 F.2d at 1207. Predominantly internal records that deal with trivial administrative matters fall under the "low 2" exemption. Id.

Long v. U.S. Dept. of Justice, 450 F. Supp. 2d 42, 54 (D.D.C. Sept. 8, 2006) (Friedman, J.). In this case, Defendant invoked the "high (b)(2)" exemption to withhold return emails, fax numbers, and telephone numbers. (Decl. Cox ¶ 15). This "high 2" information consists of return emails, fax numbers, and telephone numbers which if disclosed, could lead to harassment or undermine the job function of the investigator. Due to his position, the information is particularly sensitive. Id.

**Exemption (b)(6) and Exemption (b)(7)(C)**

Section 552(b)(6) of Title 5 of the U.S. Code exempts from disclosure personnel and medical files and similar files the release of which would constitute a clearly unwarranted invasion of personal privacy. This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains. The United States Supreme Court in Washington Post Co., 456 U.S. 595 at 601-02, stated in reliance on legislative history of the FOIA that the phrase "personnel and medical and similar files" was to be broadly interpreted. Once the threshold requirement is met, Exemption (b)(6) requires a balancing of the public's right to know against an individual's right to privacy to determine whether disclosure of the records at issue would constitute a clearly unwarranted invasion of a person's privacy. U.S. Dep't

of the Air Force v. Rose, 425 U.S. 352 (1976).

Section 552(b)(7) of Title 5 of the U.S. Code protects records compiled for law enforcement purposes whenever disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); see also Manchester v. F.B.I. 2005 WL 3275802, *4 (D.D.C., Aug. 9, 2005). This Court has stated that:

> Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure. United States Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773-75, 109 S.Ct. 1468, 1481-83, 103 L.Ed.2d 774 (1989); SafeCard Services Inc. v. Securities and Exchange Comm'n, 926 F.2d 1197, 1205-06 (D.C.Cir.1991). The disclosure of the names of private individuals mentioned in law enforcement files would serve a significant public interest only where "there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity" and that the information sought "is necessary in order to confirm or refute that evidence." Davis v. United States Dep't of Justice, 968 F.2d 1276, 1282 (D.C.Cir.1992) (quoting SafeCard Services, 926 F.2d at 1205-06).

Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F. Supp. 469, 499 (D.D.C., 1997) (Friedman, J.).

For this FOIA request, information withheld under FOIA Exemptions (b)(6) and (b)(7)(C) consisted of third party names, titles, signatures, relationships, and telephone numbers found in the one (1) page investigative report and the one (1) page call record. (Decl. Cox ¶¶ 17, 19). The recipient's name on an email was also withheld pursuant to (b)(7)(C). (Decl. Cox ¶ 19). Disclosure of this information would be an unwarranted invasion of personal privacy. Furthermore, Plaintiff has presented no public interest for the disclosure of this information, therefore, Defendant is justified in withholding the names, titles, signatures, relationships and

telephone numbers pursuant to FOIA Exemptions (b)(6) and (b)(7)(C).

**Exemption (b)(7)(E)**

Section 552(b)(7)(E) of Title 5 of the U.S. Code provides for the withholding of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines of law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. 552(b)(7)(E); Brunetti v. F.B.I., 357 F. Supp. 2d 97, 108 (D.D.C. 2004). As articulated by this Court, the requirements for invoking Exemption (b)(7)(E) are as follows:

> . . . the Court must find that: (1) the information was "compiled for law enforcement purposes," and (2) release of the information "could reasonably be expected to risk circumvention of the law." FBI v. Abramson, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982); see Coleman v. FBI, 13 F.Supp.2d 75, 83 (D.D.C.1998). Exemption 7(E) applies only to "investigative techniques and procedures generally unknown to the public." Malloy v. U.S. Department of Justice, 457 F.Supp. 543, 545 (D.D.C.1978) (citing Joint Congressional Committee Report).

Blanton v. U.S. Dept. of Justice, 63 F. Supp. 2d 35, 49 (D.D.C. Aug. 30, 1999) (Friedman, J.).

Here, four (4) pages were withheld in their entirety under FOIA Exemption (b)(7)(E) which consist of one (1) page of an investigative report, one (1) page of banking information, one (1) page of an intra staff email and one (1) page of an investigative memo. (Decl. Cox ¶ 21). This information consists of law enforcement techniques used during the course of an investigation and if disclosed would reveal telephone and other monitoring methods that would

jeopardize prison security. Id. Defendant lawfully withheld this information pursuant to FOIA Exemption (b)(7)(E).

The FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such a record after deletion of the portions which are exempt." See Billington v. U.S. Dept. of Justice, 233 F.3d 586 (D.C. Cir. 2000). All information withheld in the four pages (the investigative report, banking information, intra staff email and investigative memo) was not reasonably segregable because it was so intertwined with protected material that segregation was not possible and its release would reveal the underlying protected material. (Decl. Cox ¶ 14). Therefore, Defendant was justified in withholding the four (4) pages in their entirety.

2.    2006-07827--FOIA request for information regarding discipline hearing of Officer Alderman

By a letter dated May 27, 2006, Plaintiff requested (1) a copy of the telephone call placed to 804-687-9302 on March 14, 2006; (2) the transcript of the call; (3) documents of training and certification of Counselor Alderman to be a Disciplinary Hearing Officer; (4) information on why Counselor Alderman was the DHO on May 17, 2006. (Decl. Cox ¶ 22).

The BOP detailed in a letter dated June 19, 2006, that after conducting its search, one (1) redacted page responsive to Plaintiff's request was being produced and that the record of the phone conversation (requested in part two (2) of the request) was being withheld in its entirety pursuant to (b)(6) and (b)(7)(C). (Decl. Cox ¶ 25).

a.  Adequacy of the search

As previously stated, Defendant has the responsibility to conduct a "reasonable search"

for responsive records. This Court has clearly articulated the standard:

> An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.' " Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 325 (D.C.Cir.1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C.Cir.1990)); Campbell v. United States Dep't of Justice, 164 F.3d 20, 27 (D.C.Cir.1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C.Cir.1994). To meet its burden, the agency may submit*108 affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. Perry v. Block, 684 F.2d 121, 126 (D.C.Cir.1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. Id. at 127. If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt v. Dep't of State, 897 F.2d at 542.

Leal v. Department of Homeland Security, 519 F.Supp.2d 105, 107 (D.D.C., Nov. 8, 2007) (Friedman, J.).

In this case, The Butner Legal Center initially received Plaintiff's FOIA request. (Decl. Cox ¶ 23). The Butner Legal Center forwarded the request to Federal Correctional Complex, Petersburg, for staff to conduct a search for responsive records regarding Plaintiff's request. (Decl. Cox ¶ 24). Institutional staff began their search by searching for the requested telephone records, training records, or any other available responsive records. Id. Upon completion of the institutional staff's search, the following records were identified as responsive: one (1) page that responded to the third part of Plaintiff's request; and a recording, captured electronically, of the phone call that responded to the first part of Plaintiff's request. Id. This information was forwarded to the Butner Legal Center for processing. Id. No documents were found to respond to the second and fourth parts of Plaintiff's FOIA requests. The institution's search method was

reasonably calculated to uncover all relevant documents regarding Plaintiff's request because those individuals that were contacted to produce the telephone records, training records or any other available responsive records were the ones most likely to possess the records. Therefore, BOP's search was reasonably calculated to uncover all responsive records.

b. FOIA Exemptions asserted

**Exemption (b)(6) and Exemption (b)(7)(C)**

Section 552(b)(6) of Title 5 of the U.S. Code exempts from disclosure personnel and medical files and similar files the release of which would constitute a clearly unwarranted invasion of personal privacy. This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains. The United States Supreme Court in United States v. Washington Post Co., 456 U.S. 595 (1982) stated in reliance on legislative history of the FOIA that the phrase "personnel and medical and similar files" was to be broadly interpreted. Once the threshold requirement is met, Exemption (b)(6) requires a balancing of the public's right to know against an individual's right to privacy to determine whether disclosure of the records at issue would constitute a clearly unwarranted invasion of a person's privacy. U.S. Dep't of the Air Force v. Rose, 425 U.S. 352 (1976). When no public interest exists, the personal information should be protected. The D.C. Circuit has stated that "something, even a modest privacy interest, outweighs nothing every time." Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. cir. 1989); see also Int'l Bhd. Of Elec. Workers Local No. 5 v. HUD, 852 F.2d 87, 89 (3d cir. 1988) (perceiving no public interest in disclosure of employees' social security numbers).

Section 552(b)(7) of Title 5 of the U.S. Code protects records compiled for law

enforcement purposes whenever disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C); see also Manchester v. F.B.I. 2005 WL 3275802, *4 (D.D.C., Aug. 9, 2005). As previously stated, this Court has recognized that:

> Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure. United States Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773-75, 109 S.Ct. 1468, 1481-83, 103 L.Ed.2d 774 (1989); SafeCard Services Inc. v. Securities and Exchange Comm'n, 926 F.2d 1197, 1205-06 (D.C.Cir.1991). The disclosure of the names of private individuals mentioned in law enforcement files would serve a significant public interest only where "there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity" and that the information sought "is necessary in order to confirm or refute that evidence." Davis v. United States Dep't of Justice, 968 F.2d 1276, 1282 (D.C.Cir.1992) (quoting SafeCard Services, 926 F.2d at 1205-06).

Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F. Supp. 469, 499 (Sept. 27, 1997) (Friedman, J.).

In this particular case, both Exemptions (b)(6) and (b)(7)(C) were used to withhold a phone record in its entirety. (Decl. Cox ¶ 25). The phone record included information that would identify a third party involved in the conversation. Plaintiff has provided no public interest for why the information should be disclosed and as articulated by the D.C. Circuit Court of Appeals, "something, even a modest privacy interest, outweighs nothing every time." Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989). Therefore, BOP has properly withheld the phone record in this instance.

Segments of information, if disclosed, must have some meaning. Nat'l Sec. Archive

Fund, Inc. V. CIA, 402 F. Supp. 2d 211, 220-21 (D.D.C. 2005) (concluding that no reasonably segregable information exists, because "the non-exempt information would produce only incomplete, fragmented, unintelligible sentences composed of isolated, meaningless words"); Givner v. Executive Office for U.S. Attorneys, No. 99-3454, slip op. At 17-18 (D.D.C. Mar. 1, 2001) (deciding that agencies may withhold nonexempt information if it amounts to "essentially meaningless words and phrases" (quoting Neufield v. IRS, 646 F.2d 661, 663 (D.C.Cir. 1981)).

Here, the portions of the phone record that did not directly identify the third party, was not reasonably segregable because it was so intertwined with protected material that segregation was not possible and/or its release would have revealed the underlying withheld information. Because the information remaining would be isolated and meaningless words, BOP is not required to segregate the exempt portions from the nonexempt portions and does not need to release the phone record.

3. 2007-07829--FOIA request for information regarding his Veteran Administration checks

By a letter received by BOP on May 29, 2007, the Plaintiff requested documentation relating to his Veterans Administration Checks. (Second Am. Compl. ¶ 2; Declaration of Vanessa Herbin-Smith ¶¶ 12-13). By a letter dated August 7, 2007, the BOP notified Plaintiff that after conducting its search, thirteen (13) pages of records were found and processed. Four (4) of those pages would be released with excisions and nine (9) pages of records were released in their entirety . (Decl. Herbin-Smith ¶¶ 14-15). Plaintiff appealed BOP's decision to OIP on or about August 14, 2007. (Decl. Herbin-Smith ¶ 16). By a letter dated December 21, 2007, OIP affirmed BOP's decisions. (Decl. Herbin-Smith ¶ 17).

a. Adequacy of the search

As previously discussed, Defendant has the responsibility to conduct a "reasonable search" for responsive records. Again, this Court has clearly and concisely articulated the standard:

> An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.' " Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 325 (D.C.Cir.1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C.Cir.1990)); Campbell v. United States Dep't of Justice, 164 F.3d 20, 27 (D.C.Cir.1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C.Cir.1994). To meet its burden, the agency may submit*108 affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. Perry v. Block, 684 F.2d 121, 126 (D.C.Cir.1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA. Id. at 127. If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt v. Dep't of State, 897 F.2d at 542.

Leal v. Department of Homeland Security, 519 F.Supp.2d 105, 107 (D.D.C., Nov. 8, 2007) (Friedman, J.).

In the instant case, upon receipt by the BOP Central Office, the FOIA request was forwarded to the Northeast Regional Office. (Decl. Herbin-Smith ¶¶ 13-14). The Northeast Regional Office then forwarded the request to USP Canaan, the place most likely to have information regarding Plaintiff's Veteran's Administration disability checks. (Decl. Herbin-Smith ¶ 14). The institutional staff began their search by utilizing the Trust Fund Accounting and Commissary System ("TRUFACS") to retrieve a statement of Plaintiff's account. TRUFACS is a system that tracks financial data during the inmate's incarceration. Id. Then,

institutional staff contacted the institution's mail room to verify if any checks were logged in that were mailed directly to the institution and forwarded to the Lock Box in Iowa with regard to the Plaintiff. Id. BOP's procedure is for all funds forwarded to inmates from family members, friends, and others to be mailed directly to the Lock Box in Iowa. Id. Upon completion of the institutional staff's search, thirteen (13) pages of records were found and forwarded to the Northeast Regional Office for processing. Id. Plaintiff was provided nine (9) pages in their entirety and four (4) pages with excisions. (Decl. Herbin-Smith ¶ 15). The institution's search method was reasonably calculated to uncover all relevant documents regarding Plaintiff's request because TRUFACS and the institution's mail room were the two (2) locations where responsive records were most likely to be located. (Decl. Herbin-Smith ¶ 14). Therefore, Defendant has fulfilled its obligation to conduct an adequate and reasonable search.

b. FOIA exemptions asserted

**Exemption (b)(6) and Exemption (b)(7)(C)**

Section 552(b)(6) of Title 5 of the U.S. Code exempts from disclosure personnel and medical files and similar files the release of which would constitute a clearly unwarranted invasion of personal privacy. This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains. The United States Supreme Court in United States v. Washington Post Co., 456 U.S. 595 (1982) stated in reliance on legislative history of the FOIA that the phrase "personnel and medical and similar files" was to be broadly interpreted. Once the threshold requirement is met, Exemption (b)(6) requires a balancing of the public's right to know against an individual's right to privacy to determine whether

disclosure of the records at issue would constitute a clearly unwarranted invasion of a person's privacy.  U.S. Dep't of the Air Force v. Rose, 425 U.S. 352 (1976).  When no public interest exists, the personal information should be protected.  The D.C. Circuit has stated that "something, even a modest privacy interest, outweighs nothing every time."  Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989); see also Int'l Bhd. Of Elec. Workers Local No. 5 v. HUD, 852 F.2d 87, 89 (3d Cir. 1988) (perceiving no public interest in disclosure of employees' social security numbers).

Section 552(b)(7) of Title 5 of the U.S. Code protects records compiled for law enforcement purposes whenever disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C); see also Manchester v. F.B.I. 2005 WL 3275802, *4 (D.D.C., Aug. 9, 2005).  As mentioned earlier, this Court has stated that:

> Exemption 7(C) recognizes that the stigma of being associated with any law enforcement investigation affords broad privacy rights to those who are connected in any way with such an investigation unless a significant public interest exists for disclosure. United States Dep't of Justice v. Reporters Committee for Freedom of the Press, 489 U.S. 749, 773-75, 109 S.Ct. 1468, 1481-83, 103 L.Ed.2d 774 (1989); SafeCard Services Inc. v. Securities and Exchange Comm'n, 926 F.2d 1197, 1205-06 (D.C.Cir.1991). The disclosure of the names of private individuals mentioned in law enforcement files would serve a significant public interest only where "there is compelling evidence that the agency denying the FOIA request is engaged in illegal activity" and that the information sought "is necessary in order to confirm or refute that evidence." Davis v. United States Dep't of Justice, 968 F.2d 1276, 1282 (D.C.Cir.1992) (quoting SafeCard Services, 926 F.2d at 1205-06).

Smith v. Bureau of Alcohol, Tobacco and Firearms, 977 F. Supp. 469, 499 (Sept. 27, 1997) (Friedman, J.).

In this case, information withheld under both Exemptions (b)(6) and (b)(7)(C) consists of name, address, account numbers and other personally identifiable information of third parties that if disclosed would constitute an unwarranted invasion of an individual's personal privacy. (Decl. Herbin-Smith ¶ 21). Further, Plaintiff has not provided any public interest that would override the privacy interest in the name, address, account numbers and other personally identifiable information.

**Exemption (b)(7)(F)**

Section 552(b)(7)(F) of Title 5 of the U.S. Code exempts from mandatory disclosure "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to endanger the life or physical safety of any individual. 5 U.S.C. § 552(b)(7)(F). This exemption protects the "names and identifying information of . . . federal employees, and third persons who may be unknown" to the requester in connection with particular law enforcement matters." Hidalgo v. Bureau of Prisons, No. 00-1229, slip op. at 4 (D.D.C. June 6, 2001) (withholding information about inmate-plaintiff's "separatees"), summary affirmance granted, No. 01-5257 (D.C. Cir. Aug. 29, 2002); Willis v. FBI, No. 99-CV-73481, slip op. at 20-21 (E.D. Mich. July 11, 2000) (magistrate's recommendation) (protecting names and identifying information of federal employees and third parties).

In this instance, BOP protected the names and identifying information of third parties and the release of the names would threaten the safety of the individuals. (Decl. Herbin-Smith ¶ 21). Because the safety of an individual would be threatened, BOP properly withheld under FOIA Exemption (b)(7)(F).

4. 2007-07346--FOIA Request for Information regarding his Special Housing Unit

Placement

By a letter received by BOP on May 29, 2007, the Plaintiff requested documentation relating to his Special Housing Unit Placement. (Second Am. Compl. ¶ 3; Decl. Herbin-Smith ¶ 23.) On or about July 3, 2007, the Plaintiff filed an appeal to the Department of Justice Office of Information and Privacy (OIP), assigned OIP No. 07-1940. (Decl. Herbin-Smith ¶ 25) In a letter dated August 24, 2007, OIP denied the plaintiff's appeal indicating the appeal was not ripe until after there had been an adverse determination by the component. (Decl. Herbin-Smith ¶ 27). By a letter dated July 24, 2007, BOP notified Plaintiff that after conducting its search, ten (10) pages of records were found and received for processing and that eight (8) of those pages would be released with excisions and two (2) would be released in full. (Decl. Herbin-Smith, ¶ 26).

a. Adequacy of the search

As previously discussed, Defendant has the responsibility to conduct a "reasonable search" for responsive records. Again, this Court has clearly and concisely articulated the standard:

> An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.' " Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 325 (D.C.Cir.1999) (quoting Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C.Cir.1990)); Campbell v. United States Dep't of Justice, 164 F.3d 20, 27 (D.C.Cir.1998) (FOIA requires agency to conduct search using methods reasonably expected to produce requested information). The agency bears the burden of showing that its search was calculated to uncover all relevant documents. Steinberg v. United States Dep't of Justice, 23 F.3d 548, 551 (D.C.Cir.1994). To meet its burden, the agency may submit*108 affidavits or declarations that explain in reasonable detail the scope and method of the agency's search. Perry v. Block, 684 F.2d 121, 126 (D.C.Cir.1982). In the absence of contrary evidence, such affidavits or declarations are sufficient to

> demonstrate an agency's compliance with the FOIA. Id. at 127. If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." Truitt v. Dep't of State, 897 F.2d at 542.

Leal v. Department of Homeland Security, 519 F.Supp.2d 105, 107 (D.D.C., Nov. 8, 2007) (Friedman, J.).

In this instance, Plaintiff submitted this request that was received by the BOP Central Office, FOIA/PA Section, on or about May 29, 2007. (Decl. Herbin-Smith ¶ 23). This request was forwarded to the BOP's Northeast Regional Office shortly thereafter. Id. The Northeast Regional Office forwarded a request to the USP Canaan for staff to conduct a search for any responsive records regarding Plaintiff's request. (Decl. Herbin-Smith ¶ 24) Institutional staff began their search with the Special Investigative Agent (SIA). Id. The SIA searched his investigative files and Plaintiff's central file for responsive records. Id. Upon completion the SIA's search, ten (10) pages of responsive records were found and forwarded to the Northeast Regional Office for processing. (Decl. Herbin-Smith ¶ 24).

The institution's search method was reasonably calculated to uncover all relevant documents regarding Plaintiff's request because the SIA's investigative files and Plaintiff's central file were the places most likely to contain responsive records. (Decl. Herbin-Smith ¶ 24). By searching in these particular places (that were most likely to contain responsive records), BOP conducted a reasonable search for the requested records.

b. FOIA Exemption asserted

**Exemption (b)(2) (low)**

Section 552(b)(2) of Title 5 of the U.S. Code exempts from mandatory disclosure

matters that are ". . . related solely to the internal personnel rules and practices of an agency." Exemption (b)(2) encompasses two distinct categories of information: (a) internal matters of a relatively trivial nature, sometimes referred to as "low 2" information, and (b) more substantial internal matters the disclosure of which would risk circumvention of agency regulations or statutes, sometimes referred to as "high 2" information. 5 U.S.C. § 552(b)(2).

Predominately internal records that deal with trivial administrative matters fall under the “low 2" exemption. Long v. U.S. Dept. Of Justice, 450 F. Supp.2d 42, 54 (D.D.C. 2006); Judicial Watch, Inc. v. U.S. Dept. Of Commerce, 337 F. Supp.2d 146, 165 (D.D.C. 2004) (noting that Exemption 2 applies to trivial internal matters, which is often referred to as “low 2" information).

In this case, the eight (8) pages released with excisions consisted of Special Housing Unit ("SHU") review records. (Decl. Herbin-Smith ¶ 30). The excisions were limited to an internal fax number, information related solely to the internal matters of a relatively trivial nature and therefore falls within the protection of Exemption (b)(2) low.

In the following three (3) FOIA requests discussed below, Plaintiff has only challenged whether BOP responded to his requests. Plaintiff has neither challenged the adequacy of the search nor the information that was withheld.

5. 2007-10206--FOIA Request for Information regarding Tort Claim TRT-MXR-2007-01871

Plaintiff alleges that he has not received a response from BOP in regard to FOIA request 2007-10206. (Decl. Herbin-Smith ¶ 6). In a letter received by BOP on August 28, 2007, the Plaintiff requested documentation relating to Tort Claim TRT-MXR-2007-01871. (Second Am.

Compl. ¶ 9; Decl. Herbin-Smith ¶ 6). In a letter dated February 11, 2008, the BOP notified Plaintiff that seven (7) pages of records were received for review and that three (3) of those pages would be released with excisions while four (4) pages were being withheld in their entirety. (Decl. Herbin-Smith ¶ 8). Therefore, the BOP has satisfied its obligations under the FOIA by providing appellant with the requested responsive documents excluding those withheld under the applicable FOIA exemptions.

6. 2007-08547--FOIA Request for Information regarding Transfers at USP Canaan

Plaintiff alleges that he did not receive a response from BOP in regard to his FOIA request 2007-08547. (Decl. Herbin-Smith ¶ 9). In a letter received by BOP on July 30, 2007, the Plaintiff requested documentation relating to transfers at USP Canaan. (Am. Compl. ¶ 10; Decl. Herbin-Smith ¶ 10). In a letter dated February 14, 2008, the BOP released materials to the plaintiff. (Decl. Herbin-Smith ¶ 11). Therefore, the BOP has satisfied its obligations under the FOIA by providing Plaintiff with all responsive documents excluding those exempted.

7. 2008-02180--FOIA Request for Information regarding copy cards at USP Canaan

Plaintiff alleges that he did not receive a response from BOP in regard to his FOIA request 2008-02180. (Decl. Herbin-Smith ¶ 31). In a letter received by BOP on November 14, 2007, the Plaintiff requested documentation relating to copy cards at USP Canaan. (Second Am. Compl. ¶ 4; Decl. Herbin-Smith ¶ 31-32). In a letter dated March 12, 2008, the BOP notified the Plaintiff that seven (7) pages of records were received for review and that six (6) of those pages would be released with excisions. (Decl. Herbin-Smith ¶ 33). Therefore, the BOP has satisfied its obligations under the FOIA by providing Plaintiff with all responsive documents

excluding those exempted.

As these three FOIA requests have been completed by BOP, the Plaintiff's claims are moot. In a FOIA action, the courts have jurisdiction only when an agency has improperly withheld agency records. 5 U.S.C. § 552(a)(4)(B). "[I]t is well established that under the FOIA, 'once the records are produced the substance of the controversy disappears and becomes moot, since disclosure which the suit seeks has already been made.'" Trueblood v. U.S. Dept. of the Treasury, 943 F. Supp. 64, 67 (D.D.C. 1996) (quoting Crooker v. United States State Dept., 628 F.2d 9, 10 (D.C. Cir. 1980)); see also Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982). Likewise, because all responsive releasable information requested in the three (3) FOIA requests have been provided to the Plaintiff, these three (3) claims should be dismissed as moot because there is not a justiciable case or controversy. See Matter of Wade, 969 F.2d 241, 248 (7th Cir. 1992) ("In FOIA cases, mootness occurs when requested documents have already been produced.").

As all responsive releasable records have been provided to the Plaintiff, the allegations regarding these three (3) FOIA claims are moot and should be dismissed.

**IV. CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's Due Process, Equal Protection and APA claims for failure to state a claim. Plaintiff has not only relitigated these issues but provides no basis upon which relief may be granted. Finally, the Court should find that Defendant adequately searched for records responsive to Plaintiff's seven (7) FOIA requests and properly withheld information pursuant to FOIA Exemptions (b)(2), (b)(6), (b)(7)(C), (b)(7)(E) and (b)(7)(F). On these bases, the Court should grant summary judgment in

Defendant's favor and dismiss this case with prejudice.

Dated May 29, 2008

Respectfully submitted,

________________________________
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

________________________________
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

________________________________
CINDY S. OWENS
Assistant United States Attorney, D.C. BAR # 491465
United States Attorney's Office
555 4th Street, N.W.
Washington, D.C. 20530
202-616-2257/ FAX 202-514-8780

**OF COUNSEL:**
Sarah Schuh
Alma Lopez
Bureau of Prisons
Washington, D.C.

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 29th day of May, 2008, a copy of the foregoing was served by First-Class mail, postage prepaid to:

WILLIAM HENRY HARRISON
R# 07725-078
CANAAN U.S.P.
Waymart, PA 18472

and

WILLIAM HENRY HARRISON[19]
R# 07725-078
FCI Fort Dix
Federal Correctional Institution
P.O. Box 2000
Fort Dix, NJ 08640

/s/
Cindy S. Owens, D.C. BAR #491465
Assistant United States Attorney
555 Fourth St., N.W.
Room E4112
Washington, D.C. 20530
(202) 616-2257
cindy.owens@usdoj.gov

[19] Although Plaintiff has on file with the Court his Waymart, PA address, Defendant was informed that Plaintiff was transferred to the Fort Dix, NJ address. Defendant is mailing copies of this motion to both addresses.

# EXHIBIT A

Civil Name Search Results
19 Total Case matches for selection HARRISON, WILLIAM HENRY for ALL COURTS
Wed May 28 13:47:47 2008

| Name | Court | Case No. | Filed |
|---|---|---|---|
| HARRISON, WILLIAM HENRY<br>HARRISON v. LAPPIN et al | dcdce | 1:2004cv00061 | 01/14/2004 |
| HARRISON, WILLIAM HENRY<br>Harrison v. Bp Exploration Inc, et al | txedce | 1:1989cv00262 | 04/04/1989 |
| HARRISON, WILLIAM HENRY<br>McCarthy, et al v. Barnett Banks Inc., et al | flmdce | 8:1988cv00311 | 03/07/1988 |
| HARRISON, WILLIAM HENRY<br>Harrison v. Adams et al | vaedce | 1:2006cv00501 | 05/01/2006 |
| HARRISON, WILLIAM HENRY<br>Harrison v. Herbel, et al | ncedce | 5:2005ct00550 | 08/03/2005 |
| HARRISON, WILLIAM HENRY<br>Harrison v. Lindsay et al | pamdce | 3:2007cv00570 | 03/26/2007 |
| HARRISON, WILLIAM HENRY<br>Harrison v. Smith, et al | txedce | 6:2002cv00602 | 12/17/2002 |
| HARRISON, WILLIAM HENRY<br>HARRISON v. LAPPIN et al | dcdce | 1:2004cv00681 | 04/27/2004 |
| HARRISON, WILLIAM HENRY<br>Harrison v. Watts et al | vaedce | 1:2006cv01061 | 09/18/2006 |
| HARRISON, WILLIAM HENRY<br>Harrison v. Federal Bureau Of Prisons et al | vaedce | 1:2006cv01182 | 10/18/2006 |
| HARRISON, WILLIAM HENRY<br>Harrison v. Lindsay | pamdce | 3:2006cv01466 | 06/07/2007 |
| HARRISON, WILLIAM HENRY<br>HARRISON v. FEDERAL BUREAU OF PRISONS | dcdce | 1:2007cv01543 | 08/30/2007 |
| HARRISON, WILLIAM HENRY<br>Harrison v. Holt et al | pamdce | 3:2007cv01993 | 10/31/2007 |
| HARRISON, WILLIAM HENRY<br>Harrison v. Lutheran Medical Center et al | nyedce | 1:2005cv02059 | 09/30/2005 |
| HARRISON, WILLIAM HENRY<br>Harrison v. Federal Bureau of Prisons et al | pamdce | 3:2006cv02412 | 12/18/2006 |
| HARRISON, WILLIAM HENRY<br>HARRISON v. LAPPIN et al | dcdce | 1:2003cv02594 | 12/22/2003 |
| HARRISON, WILLIAM HENRY<br>Harrison v. People of the State of New York | nyedce | 1:2006cv04943 | 09/08/2006 |
| HARRISON, WILLIAM HENRY<br>Harrison et al v. Harlem Hospital et al | nysdce | 1:2005cv08271 | 09/26/2005 |
| HARRISON, WILLIAM HENRY<br>Harrison v. People of the State of New York | nysdce | 1:2006cv15248 | 12/18/2006 |

Exhibit A

# EXHIBIT B

Exhibit B

EOD JUL 09 '03

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS
JUL - 8 2003
DAVID J. MALAND, CLERK
BY ____________

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

WILLIAM HENRY HARRISON §

v. § CIVIL ACTION NO. 6:02cv602

J.B. SMITH, ET AL. §

NUNC PRO TUNC ORDER

The Order of Dismissal in this case, entered on June 9, 2003, is hereby AMENDED, *nunc pro tunc*, to delete the paragraph revoking the Plaintiff William Harrison's *in forma pauperis* status. The Final Judgment in this case, entered June 9, 2003, is hereby AMENDED, *nunc pro tunc*, to read as follows:

> The above-styled civil action having come before the Court for consideration, and a decision having been duly rendered, it is hereby
>
> ORDERED and ADJUDGED that no relief is granted to the Plaintiff and that the above-styled civil rights lawsuit is hereby DISMISSED with prejudice as frivolous.

SIGNED this 8th day of July, 2003.

William M. Steger
WILLIAM M. STEGER
UNITED STATES DISTRICT JUDGE

28

Exhibit B

# EXHIBIT C

Exhibit C

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| **William H. Harrison,** <br> **Plaintiff,** | ) <br> ) <br> ) | |
| **v.** | ) | **1:06cv1182 (TSE/TRJ)** |
| **Federal Bureau of Prisons, et al.,** <br> **Defendants.** | ) <br> ) <br> ) | |

ORDER

William Henry Harrison, a federal inmate formerly housed in Virginia and proceeding pro se, has filed a civil action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) and various federal statutes, challenging an increase of three cents in the long-distance telephone rate, from twenty cents per minute to twenty-three cents per minute, at Federal Bureau of Prisons ("BOP") institutions. He claims that the rate increase violated his (1) First Amendment rights; (2) Fifth Amendment right to due process; (3) Fifth Amendment right to equal protection; (4) the Administrative Procedure Act, 5 U.S.C. § 553; (5) the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq.; and (6) the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

In particular, plaintiff alleges that in late 2004, the long-distance telephone rate increased for domestic calls only. Unhappy about the increase, plaintiff submitted a complaint through the prison grievance process arguing that the "unilateral and arbitrary" three cent increase violated his constitutional rights. In response to his complaints, prison officials informed plaintiff that the rate change was a valid and reasonable increase in telephone charges. On October 16, 2006, plaintiff, dissatisfied with this response, filed the instant complaint.

I.

Well-settled principles furnish the legal lense through which plaintiff's claims must be viewed and assessed. Plaintiff has submitted an application to proceed in forma pauperis, thus, his claims are reviewable pursuant to 28 U.S.C. § 1915A, which requires early screening and dismissal of claims that are frivolous, malicious, or fail to state a claim upon which relief can be granted. Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

II.

A. Constitutional Claims

______1. First Amendment

Plaintiff claims defendants violated his First Amendment rights by increasing the long-distance telephone rates in federal correctional centers. To be sure, inmates have First Amendment rights notwithstanding their incarceration, but these rights are necessarily circumscribed because of the legitimate penological and administrative interests of the prison system. See Vester v. Rogers, 795 F.2d 1179, 1182 (4th Cir. 1986) ("Although a prisoner does not shed his first amendment rights at the prison portals, it is equally true that lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights."). Thus, in the First Amendment context "prisoners have no *per se* constitutional right to use a telephone." United States v. Footman, 215 F.3d 145, 155 (1st

Exhibit C

Cir. 2000).[1] Instead, "a prisoner's right to telephone access, if any, is subject to rational limitation based upon legitimate security and administrative interests of the penal institution." Arney v. Simmons, 26 F. Supp. 2d 1288, 1293 (D. Kan. 1998) (citing Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994)). To that end, "the exact nature of the telephone service to be provided to inmates is generally to be determined by prison administrators." Evjene v. Hawsey, 1994 U.S. Dist. LEXIS 14526, at *7-8 (D. Ala. 1994). And, "decisions made by prison officials regarding prison administration are entitled to significant deference." Shue v. Herring, 2006 U.S. Dist. LEXIS 73400, at *17-18 (M.D.N.C. 2006) (citing Bell v. Wolfish, 441 U.S. 520, 547 (1979)). As such, "absent extraordinary circumstances, the courts may not second-guess prison administrators, nor should federal courts immerse themselves in the management of state prisons." Id.

These principles make pellucidly clear that "prisoners are [not] entitled to a specific rate for their telephone calls." Johnson v. California, 207 F.3d 650, 656 (9th Cir. 2000). Thus, by no stretch of the imagination does a three cent increase in the telephone rate implicate the First Amendment.[2]

---

[1]See Valdez v. Rosenbaum, 302 F.3d 1039 (9th Cir. 2002) (holding that there is no First Amendment right to telephone access, instead there is a First Amendment right to communicate with persons outside of prison walls, and "[u]se of a telephone provides a *means* of exercising this right); Washington v. Reno, 35 F.3d 1093, 1100 (6th Cir. 1994) (holding that "an inmate has no right to unlimited telephone use").

[2]Other courts have similarly dismissed First Amendment claims where plaintiff challenged the telephone rate charged by a correctional facility. See e.g., Orr v. Dawson, 2006 U.S. Dist. LEXIS 68943, at *23-24 (D. Idaho 2006) (dismissing plaintiff's claim that defendants engaged in price gouging on the telephone service provided to inmates because "there is no authority for the proposition that prisoners are entitled to a specific rate for their telephonic calls") (citing Johnson, 207 F.3d at 656, overruled on other grounds, 534 U.S. 499); Woods v. Carey, 2005 U.S. Dist. LEXIS 32927, at *4-5 (E.D. Cal. 2005) (dismissing plaintiff's claim that prison conspired with telephone company to overcharge prisoners for long distance telephone calls) (citing Johnson, 207 F.3d at 656); Fulton v. MCI Worldcom, Inc., 2006 U.S. Dist. LEXIS 32037, at *5 (E.D. Cal. 2006) (recommending dismissal because the "[t]he First Amendment does not require that prisoners have their choice of telephone services or that they be given a specified rate for their telephone calls").

To hold otherwise would be to trivialize, and therefore undermine, a fundamental right. Accordingly, where, as here, plaintiff complains solely of a three cent increase in the telephone rate charged, dismissal is appropriate.

2. Due Process

Liberally construed, plaintiff argues that his Fifth Amendment rights have been violated because monies were removed from his prison inmate account to satisfy his telephone charges, without due process. To state a claim for a procedural due process violation, plaintiff must first allege a harm to a protectible interest in "life, liberty, or property." Hewitt v. Helms, 459 U.S. 460, 466 (1983). Plaintiff has done so here because prisoners have a property interest in the funds held in their prison accounts. Waters v. Bass, 304 F. Supp. 2d 802, 811 (E.D. Va. 2004). Therefore, the questions is whether the BOP provided constitutionally adequate procedures when it withdrew money from plaintiff's prison trust account to satisfy his telephone usage charges.

In answering this question, it is important to note that "due process is flexible and calls for such procedural protections as the particular situation demands in order to minimize the risk of error." Id. In certain circumstances, due process will require pre-deprivation notice and a hearing, but where it is impractical to provide a meaningful hearing prior to an alleged deprivation, due process is satisfied when some meaningful post-deprivation procedure exists to assess the propriety of the state's action. Id.; Parratt v. Taylor, 451 U.S. 527, 538 (1981). Thus, in Tillman v. Lebanon, 221 F.3d 410 (3d Cir. 2000), the Third Circuit held it was impractical to require prisons to provide pre-deprivation proceedings where the prison withdrew ten dollars per day from a prisoner's account

---

Accord Smith v. Bradley, 1995 U.S. App. LEXIS 9759, at *9 (6th Cir. 1995) (holding that "merely replacing a collect-call telephone system with a direct-dial system does not alone implicate inmates' First Amendment rights").

to pay for the costs of room and board because the withdrawal involved "routine matters of accounting," with a low risk of error. Id. at 421-22. Furthermore, Tillman held that due process is fully satisfied where post-deprivation procedures are available through the normal prison grievance system. Id. Likewise, in Waters, the court held that due process was satisfied where the prison grievance process was available to evaluate plaintiff's challenge to the withdrawal from his account of a daily room and board fee of one dollar. 304 F. Supp. 2d at 811. Thus, where, as here, the correctional facility routinely collects fees, or otherwise performs ministerial accounting tasks, procedural due process is satisfied by the availability of a post-deprivation proceeding, namely, the normal prison grievance process. Thus, plaintiff's procedural due process rights have not been violated.[3]

3. Equal Protection

Next, plaintiff argues that the increased telephone rate, which applies only to domestic long-distance telephone calls, but not to local or foreign telephone calls, violates his equal protection rights under the Fifth Amendment. The Equal Protection Clause protects against arbitrary classifications by state actors. See U.S. Const. amend. XIV § 1. Nevertheless, a classification need only be rationally related to a legitimate state interest "unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion or alienage . . . ." City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976). While the Equal Protection Clause

[3]In addition, plaintiff alleges defendants violated his "administrative due process rights" in failing to respond to all of the claims and issues raised in his administrative grievances. This claim fails at the threshold because prisoners have no constitutional right to participate in prison grievance procedures. See Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure").

protects prisoners from discriminatory treatment by prison officials, prisoners are not considered a suspect class. Roller v. Gunn, 107 F.3d 227, 233 (4th Cir. 1997). Therefore, prison regulations that classify prisoners need only meet a reasonableness test. See Washington v. Harper, 494 U.S. 210, 223 (1990); Waters, 304 F. Supp. 2d at 810 n.15. Accordingly, a plaintiff must show "(i) that he has been treated differently from others with whom he is similarly situated and (ii) that the unequal treatment was a result of purposeful discrimination." Waters, 304 F. Supp. 2d at 810.

Plaintiff's complaint fails to allege facts sufficient to demonstrate either showing. Plaintiff alleges that the telephone rate increase applies to long-distance calls in the United States, but not to local calls or foreign calls. While this may indicate that the telephone calls are classified differently, there is no indication that plaintiff has been treated differently from other inmates seeking to make domestic long-distance phone calls. See id. (dismissing equal protection claim where all inmates had to pay the daily room and board fee). Moreover, nothing in plaintiff's complaint suggests that prison officials imposed differing telephone rates for domestic and international long-distance because of purposeful discrimination. Thus, claim 3 must be dismissed.

B. Administrative Procedure Act

Plaintiff claims that the long-distance telephone rate increase violates the APA because the BOP did not promulgate the rate after complying with the notice and comment requirements of 5 U.S.C. § 553. While the Fourth Circuit has not addressed the issue, numerous circuits have either held or assumed that the BOP is an "agency" subject to the APA's rulemaking requirements. See White v. Henman, 977 F.2d 292, 293 (7th Cir. 1992); Ramer v. Saxbe, 522 F.2d 695, 697 (D.C. Cir 1975); Venegas v. Henman, 126 F.3d 760, 763 (5th Cir. 1997). See also Cross v. Gutierrez, 2005 U.S. Dist. LEXIS 43188, at *6-7 (N.D.W.V. 2005). Thus, assuming, without deciding, that

the BOP is an agency subject to the APA, the question is whether the APA provides for judicial review of the BOP's rate increase.

In general, the APA provides for judicial review of agency action. *See* 5 U.S.C. § 702. Judicial review is unavailable, however, if (1) prohibited by statute or (2) agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a). This second exception, applicable here, requires dismissal when there is "no law to apply." Lunney v. United States, 319 F.3d 550, 558 (2d Cir. 2003) (quoting Webster v. Doe, 486 U.S. 592, 600 (1988); Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410 (1971)). In this case, Congress has provided that the BOP shall "(1) have charge of the management and regulation of all Federal penal and correctional institutions; [and] (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged or convicted of offenses against the United States . . .". 18 U.S.C. § 4042.[4] This statute addresses only the general responsibilities of the BOP; thus, "[t]he absence of specific guidelines of appropriate conduct by BOP officials in administering these duties [] leaves judgment or choice to BOP officials." *Scrima v. Hasty*, 1998 U.S. Dist. LEXIS 15050, at *8 (S.D.N.Y. 1998). Indeed, the total absence of specific guidelines indicates that the BOP has "broad unreviewable discretion" in fulfilling its responsibilities. See Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520 (1979); Crooker v. Morris, 1996 U.S. Dist. LEXIS 15833, at *24-25 (D. N.J. 1996) ("[I]t is well-settled that the BOP generally has wide discretion to implement the [] provisions in § 4042(a)).[5] Therefore, the APA precludes judicial

---

[4]Pursuant to this statutory authority, the BOP entrusted the Chief of the Trust Fund Branch with the responsibility to determine telephone costs. BOP Program Statement 4500.04.

[5]See also Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976) (finding that federal prison officials have "full discretion" to control prisoner classification and determine eligibility for rehabilitative

review where, as here, the BOP has broad discretion to provide "suitable" quarters and care for inmates, which includes the provision of telephone services. See Wolfish, 573 F.3d at 125 (holding that the APA precludes judicial review of the BOP's discretionary decision to reduce the number of telephone calls permitted to prisoners). Accordingly, claim 4 must be dismissed.

C. Federal Tort Claims Act

In claim 5, plaintiff alleges defendants violated the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 et seq., by increasing the long-distance telephone rate in federal prisons. The FTCA provides that the United State's sovereign immunity is waived for suits resulting from injuries "caused by the negligent or wrongful act or omission of any employee of the Government . . . under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Importantly, Congress has limited the reach of the FTCA by providing that § 1346(b) does not apply to "any claims based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation . . . or based upon the exercise or performance . . . [of] a discretionary function or duty . . ." 18 U.S.C. § 2680(a). The purpose of this discretionary function exception is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." United

---

programs"); Caudle v. United States, 1995 U.S. App. LEXIS 34701, at *1 (7th Cir. 1995) (holding that the manner in which the BOP fulfills its duty under § 4042(a)(2) is discretion); Walker v. Hughes, 558 F.2d 1247, 1252 (6th Cir. 1977) ("Federal statutory law gives federal prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons, subjection to significant and adverse effects on parole dates, and deprivation of privileges."); Ramey v. Hawk, 730 F. Supp. 1366, 1372 (E.D.N.C. 1989) ("When a mode or method chosen by the BOP to effectuate a policy is challenged, the court generally defers to the judgment of the BOP.").

States v. Gaubert, 499 U.S. 315, 323 (1991).

Given these settled principles, it is quite clear that plaintiff has failed to state a claim under the FTCA. First, and most importantly, plaintiff has not alleged that he was the victim of any tort under the governing laws of the Commonwealth of Virginia. Because plaintiff has failed to allege a cognizable state law tort claim, his FTCA claim must fail. See FDIC v. Meyer, 510 U.S. 471, 477-78 (1994) (holding that to state a claim under the FTCA, plaintiff must allege a state law tort claim, not a deprivation of a federal constitutional right). Moreover, even assuming plaintiff had properly alleged a state law tort claim, plaintiff's claim is nonetheless barred by the discretionary function exception. This is so because, as explained above, the BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim. Thus, claim 5 must be dismissed.

**III.**

Finally, plaintiff alleges that the FOIA Section of the BOP has failed to respond to his August 2004 request for records. The Freedom of Information Act confers jurisdiction over a complaint on "the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia." 5 U.S.C. § 552(a)(4)(B). It does not appear that jurisdiction lies in this district because plaintiff states he is currently incarcerated in the Middle District of Pennsylvania and does not allege where the agency records sought are located in this district. Therefore, this remaining claim will be transferred to the United States District Court for the Middle District of Pennsylvania.

Accordingly, it is hereby

ORDERED that claims 1, 2, 3, 4, and 5 be DISMISSED WITH PREJUDICE for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

ORDERED that plaintiff's request to proceed in forma pauperis be and is GRANTED; and it is further

ORDERED that the remaining claim in this action is TRANSFERRED to the United States District Court for the Middle District of Pennsylvania. The Clerk of this Court is directed to transfer all pleadings and pending motions filed in this case and a copy of the docket sheet to the Clerk of the United States District Court for the Middle District of Pennsylvania; and it is further

ORDERED that plaintiff direct all future pleadings in this case to the Clerk's Office for the United States District Court for the Middle District of Pennsylvania.

The Clerk is directed to send a copy of this Order to plaintiff.

Entered this 14th day of December 2006.

/s/
United States District Judge
Alexandria, Virginia

# EXHIBIT D

**William H. HARRISON, Plaintiff,**

v.

**FEDERAL BUREAU OF PRISONS, et al., Defendants.**

**No. 1:06CV1182 (TSE/TRJ).**

United States District Court, E.D. Virginia. Alexandria Division.

Dec. 14, 2006.

**Background:** Federal inmate brought action against Bureau of Prisons (BOP) and prison officials under *Bivens* and various federal statutes, challenging an increase in the long-distance telephone rate.

**Holdings:** On review pursuant to statute providing for judicial screening of prisoner complaints, the District Court, Ellis, J., held that:

(1) telephone rate increase did not implicate inmate's First Amendment rights;

(2) inmate's procedural due process rights were not violated;

(3) inmate failed to state an equal protection violation;

(4) BOP's increase in telephone rates was not subject to judicial review;

(5) inmate failed to state a claim under the Federal Tort Claims Act (FTCA); and

(6) inmate's Freedom of Information Act (FOIA) claim would be transferred to the Middle District of Pennsylvania.

Ordered accordingly.

**1. Federal Civil Procedure ⚷2734**

Federal inmate's *Bivens* action against Bureau of Prisons (BOP) and prison officials, challenging an increase in the long-distance telephone rate, was subject to early screening pursuant to Prison Litigation Reform Act (PLRA), where inmate submitted an application to proceed in forma pauperis. 28 U.S.C.A. § 1915A.

**2. Constitutional Law ⚷90.1(1.3)**

Prisoners have no per se First Amendment right to use a telephone. U.S.C.A. Const.Amend. 1.

**3. Constitutional Law ⚷90.1(1.3)**

A prisoner's First Amendment right to telephone access, if any, is subject to rational limitation based upon legitimate security and administrative interests of the penal institution. U.S.C.A. Const.Amend. 1.

**4. Prisons ⚷4(2.1)**

Decisions made by prison officials regarding prison administration are entitled to significant deference.

**5. Prisons ⚷4(3)**

Absent extraordinary circumstances, the courts may not second-guess prison administrators, nor should federal courts immerse themselves in the management of state prisons.

**6. Prisons ⚷4(6)**

Prisoners are not entitled to a specific rate for their telephone calls.

**7. Constitutional Law ⚷90.1(1.3)**

**Prisons ⚷4(6)**

Three cent increase in the long-distance telephone rate charged to federal inmate did not implicate inmate's First Amendment rights. U.S.C.A. Const. Amend. 1.

**8. Constitutional Law ⚷255(1), 278(1)**

To state a claim for a procedural due process violation, plaintiff must first allege a harm to a protectible interest in life, liberty, or property. U.S.C.A. Const. Amend. 5.

**9. Constitutional Law ⚷277(1)**

Prisoners have a due process property interest in the funds held in their prison accounts. U.S.C.A. Const.Amend. 5.

Exhibit D

**10. Constitutional Law ⚖251.1, 251.5**

Due process is flexible and calls for such procedural protections as the particular situation demands in order to minimize the risk of error. U.S.C.A. Const.Amend. 5.

**11. Constitutional Law ⚖251.6**

Where it is impractical to provide a meaningful hearing prior to an alleged deprivation, due process is satisfied when some meaningful post-deprivation procedure exists to assess the propriety of the state's action. U.S.C.A. Const.Amend. 5.

**12. Constitutional Law ⚖272(2)**
**Convicts ⚖3**

Federal inmate's procedural due process rights were not violated when monies were removed from his prison inmate account to satisfy his telephone charges, where post-deprivation proceeding of the normal prison grievance process was available. U.S.C.A. Const.Amend. 5.

**13. Constitutional Law ⚖213.1(2)**

For equal protection purposes, a classification need only be rationally related to a legitimate state interest unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion or alienage. U.S.C.A. Const.Amend. 14.

**14. Constitutional Law ⚖250.3(2)**

While the Equal Protection Clause protects prisoners from discriminatory treatment by prison officials, prisoners are not considered a suspect class. U.S.C.A. Const.Amend. 14.

**15. Constitutional Law ⚖250.3(2)**

Prison regulations that classify prisoners need only meet a reasonableness test to satisfy equal protection. U.S.C.A. Const.Amend. 14.

**16. Constitutional Law ⚖211(1)**

To establish an equal protection violation, a plaintiff must show that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was a result of purposeful discrimination. U.S.C.A. Const.Amend. 14.

**17. Constitutional Law ⚖250.3(2)**
**Prisons ⚖4(6)**

Federal inmate's complaint challenging an increase in the rate charged for domestic long-distance telephone calls, but not to local or foreign telephone calls, failed to state an equal protection violation; inmate did not allege that he was treated differently from other inmates seeking to make domestic long-distance phone calls, nor did he allege that prison officials imposed differing telephone rates for domestic and international long-distance because of purposeful discrimination. U.S.C.A. Const.Amend. 14.

**18. Prisons ⚖4(6)**

Administrative Procedure Act (APA) precluded judicial review of Bureau of Prisons' (BOP) increase in telephone rates charged to prisoners; BOP had broad discretion to provide suitable quarters and care for inmates, which included the provision of telephone services. 5 U.S.C.A. § 701(a); 18 U.S.C.A. § 4042.

**19. United States ⚖78(12)**

Purpose of the discretionary function exception to the United States' waiver of sovereign immunity under the Federal Tort Claims Act (FTCA) is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. 28 U.S.C.A. §§ 1346(b), 2680(a).

**20. United States ⚖78(5.1)**

Federal inmate's allegations that Bureau of Prisons (BOP) violated the Federal Tort Claims Act (FTCA) by increasing the long-distance telephone rate in federal prisons failed to state a claim under the

Exhibit D

FTCA; inmate did not allege that he was the victim of any state law tort. 28 U.S.C.A. §§ 1346, 2671 et seq.

**21. United States ⚖78(12)**

Even if federal inmate, who alleged that Bureau of Prisons (BOP) violated the Federal Tort Claims Act (FTCA) by increasing the long-distance telephone rate in federal prisons, had properly alleged a state law tort claim, as required to bring an action under the FTCA, inmate's claim was barred by the discretionary function exception; BOP's provision of telephone services was committed to its discretion. 28 U.S.C.A. §§ 1346(b), 2680(a).

**22. Records ⚖63**

Federal inmate's Freedom of Information Act (FOIA) claim against Bureau of Prisons (BOP) would be transferred to the Middle District of Pennsylvania, where inmate was incarcerated; inmate did not allege where the agency records sought were located within Eastern District of Virginia, where suit was brought. 5 U.S.C.A. § 552(a)(4)(B).

---

William Henry Harrison, Waymart, PA, pro se.

*ORDER*

ELLIS, District Judge.

William Henry Harrison, a federal inmate formerly housed in Virginia and proceeding *pro se*, has filed a civil action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and various federal statutes, challenging an increase of three cents in the long-distance telephone rate, from twenty cents per minute to twenty-three cents per minute, at Federal Bureau of Prisons ("BOP") institutions. He claims that the rate increase violated his (1) First Amendment rights; (2) Fifth Amendment right to due process; (3) Fifth Amendment right to equal protection; (4) the Administrative Procedure Act, 5 U.S.C. § 553; (5) the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.*; and (6) the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.

In particular, plaintiff alleges that in late 2004, the long-distance telephone rate increased for domestic calls only. Unhappy about the increase, plaintiff submitted a complaint through the prison grievance process arguing that the "unilateral and arbitrary" three cent increase violated his constitutional rights. In response to his complaints, prison officials informed plaintiff that the rate change was a valid and reasonable increase in telephone charges. On October 16, 2006, plaintiff, dissatisfied with this response, filed the instant complaint.

I.

**[1]** Well-settled principles furnish the legal lense through which plaintiff's claims must be viewed and assessed. Plaintiff has submitted an application to proceed *in forma pauperis*, thus, his claims are reviewable pursuant to 28 U.S.C. § 1915A, which requires early screening and dismissal of claims that are frivolous, malicious, or fail to state a claim upon which relief can be granted. Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker*, 9 F.Supp.2d 641, 642 (E.D.Va.1998). Thus, the alleged facts are presumed true, and the complaint should be dismissed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

II.

A. *Constitutional Claims*

1. *First Amendment*

[2–5] Plaintiff claims defendants violated his First Amendment rights by increasing the long-distance telephone rates in federal correctional centers. To be sure, inmates have First Amendment rights notwithstanding their incarceration, but these rights are necessarily circumscribed because of the legitimate penological and administrative interests of the prison system. *See Vester v. Rogers*, 795 F.2d 1179, 1182 (4th Cir.1986) ("Although a prisoner does not shed his first amendment rights at the prison portals, it is equally true that lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights."). Thus, in the First Amendment context "prisoners have no *per se* constitutional right to use a telephone." *United States v. Footman*, 215 F.3d 145, 155 (1st Cir.2000).[1] Instead, "a prisoner's right to telephone access, if any, is subject to rational limitation based upon legitimate security and administrative interests of the penal institution." *Arney v. Simmons*, 26 F.Supp.2d 1288, 1293 (D.Kan.1998) (citing *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir.1994)). To that end, "the exact nature of the telephone service to be provided to inmates is generally to be determined by prison administrators." *Evjene v. Hawsey*, 1994 U.S. Dist. LEXIS 14526, at *7–8 (D.Ala.1994). And, "decisions made by prison officials regarding prison administration are entitled to significant deference." *Shue v. Herring*, 2006 U.S. Dist. LEXIS 73400, at *17–18 (M.D.N.C. 2006) (citing *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). As such, "absent extraordinary circumstances, the courts may not second-guess prison administrators, nor should federal courts immerse themselves in the management of state prisons." *Id.*

[6, 7] These principles make pellucidly clear that "prisoners are [not] entitled to a specific rate for their telephone calls." *Johnson v. California*, 207 F.3d 650, 656 (9th Cir.2000). Thus, by no stretch of the imagination does a three cent increase in the telephone rate implicate the First Amendment.[2] To hold otherwise would be to trivialize, and therefore undermine, a fundamental right. Accordingly, where, as here, plaintiff complains solely of a three

1. *See Valdez v. Rosenbaum*, 302 F.3d 1039 (9th Cir.2002) (holding that there is no First Amendment right to telephone access, instead there is a First Amendment right to communicate with persons outside of prison walls, and "[u]se of a telephone provides a *means* of exercising this right"); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir.1994) (holding that "an inmate has no right to unlimited telephone use").

2. Other courts have similarly dismissed First Amendment claims where plaintiff challenged the telephone rate charged by a correctional facility. *See e.g., Orr v. Dawson*, 2006 U.S. Dist. LEXIS 68943, at *23–24 (D.Idaho 2006) (dismissing plaintiff's claim that defendants engaged in price gouging on the telephone service provided to inmates because "there is no authority for the proposition that prisoners are entitled to a specific rate for their telephonic calls") (citing *Johnson*, 207 F.3d at 656, *overruled on other grounds*, 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949); *Woods v. Carey*, 2005 WL 3436366, at *2, 2005 U.S. Dist. LEXIS 32927, at *4–5 (E.D.Cal.2005) (dismissing plaintiff's claim that prison conspired with telephone company to overcharge prisoners for long distance telephone calls) (citing *Johnson*, 207 F.3d at 656); *Fulton v. MCI Worldcom, Inc.*, 2006 U.S. Dist. LEXIS 32037, at *5 (E.D.Cal.2006) (recommending dismissal because the "[t]he First Amendment does not require that prisoners have their choice of telephone services or that they be given a specified rate for their telephone calls"). *Accord Smith v. Bradley*, 1995 WL 241996, at *3–4, 1995 U.S.App. LEXIS 9759, at *9 (6th Cir.1995) (holding that "merely replacing a collect-call telephone system with a direct-dial system does not alone implicate inmates' First Amendment rights").

cent increase in the telephone rate charged, dismissal is appropriate.

2. *Due Process*

[8, 9] Liberally construed, plaintiff argues that his Fifth Amendment rights have been violated because monies were removed from his prison inmate account to satisfy his telephone charges, without due process. To state a claim for a procedural due process violation, plaintiff must first allege a harm to a protectible interest in "life, liberty, or property." *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Plaintiff has done so here because prisoners have a property interest in the funds held in their prison accounts. *Waters v. Bass,* 304 F.Supp.2d 802, 811 (E.D.Va.2004). Therefore, the questions is whether the BOP provided constitutionally adequate procedures when it withdrew money from plaintiff's prison trust account to satisfy his telephone usage charges.

[10–12] In answering this question, it is important to note that "due process is flexible and calls for such procedural protections as the particular situation demands in order to minimize the risk of error." *Id.* In certain circumstances, due process will require pre-deprivation notice and a hearing, but where it is impractical to provide a meaningful hearing prior to an alleged deprivation, due process is satisfied when some meaningful post-deprivation procedure exists to assess the propriety of the state's action. *Id.; Parratt v. Taylor,* 451 U.S. 527, 538, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). Thus, in *Tillman v. Lebanon,* 221 F.3d 410 (3d Cir.2000), the Third Circuit held it was impractical to require prisons to provide pre-deprivation proceedings where the prison withdrew ten dollars per day from a prisoner's account to pay for the costs of room and board because the withdrawal involved "routine matters of accounting," with a low risk of error. *Id.* at 421–22. Furthermore, *Tillman* held that due process is fully satisfied where post-deprivation procedures are available through the normal prison grievance system. *Id.* Likewise, in *Waters,* the court held that due process was satisfied where the prison grievance process was available to evaluate plaintiff's challenge to the withdrawal from his account of a daily room and board fee of one dollar. 304 F.Supp.2d at 811. Thus, where, as here, the correctional facility routinely collects fees, or otherwise performs ministerial accounting tasks, procedural due process is satisfied by the availability of a post-deprivation proceeding, namely, the normal prison grievance process. Thus, plaintiff's procedural due process rights have not been violated.[3]

3. *Equal Protection*

[13–16] Next, plaintiff argues that the increased telephone rate, which applies only to domestic long-distance telephone calls, but not to local or foreign telephone calls, violates his equal protection rights under the Fifth Amendment. The Equal Protection Clause protects against arbitrary classifications by state actors. *See* U.S. Const. amend. XIV § 1. Nevertheless, a classification need only be rationally related to a legitimate state interest "unless a classification trammels fundamental personal rights or is drawn upon inherent-

3. In addition, plaintiff alleges defendants violated his "administrative due process rights" in failing to respond to all of the claims and issues raised in his administrative grievances. This claim fails at the threshold because prisoners have no constitutional right to participate in prison grievance procedures. *See* *Adams v. Rice,* 40 F.3d 72, 75 (4th Cir.1994) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure").

Exhibit D

ly suspect distinctions such as race, religion or alienage ...." *City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). While the Equal Protection Clause protects prisoners from discriminatory treatment by prison officials, prisoners are not considered a suspect class. *Roller v. Gunn*, 107 F.3d 227, 233 (4th Cir.1997). Therefore, prison regulations that classify prisoners need only meet a reasonableness test. *See Washington v. Harper*, 494 U.S. 210, 223, 110 S.Ct. 1028, 108 L.Ed.2d 178 (1990); *Waters*, 304 F.Supp.2d at 810 n. 15. Accordingly, a plaintiff must show "(i) that he has been treated differently from others with whom he is similarly situated and (ii) that the unequal treatment was a result of purposeful discrimination." *Waters*, 304 F.Supp.2d at 810.

[17] Plaintiff's complaint fails to allege facts sufficient to demonstrate either showing. Plaintiff alleges that the telephone rate increase applies to long-distance calls in the United States, but not to local calls or foreign calls. While this may indicate that the telephone calls are classified differently, there is no indication that plaintiff has been treated differently from other inmates seeking to make domestic long-distance phone calls. *See id.* (dismissing equal protection claim where all inmates had to pay the daily room and board fee). Moreover, nothing in plaintiff's complaint suggests that prison officials imposed differing telephone rates for domestic and international long-distance because of purposeful discrimination. Thus, claim 3 must be dismissed.

B. *Administrative Procedure Act*

Plaintiff claims that the long-distance telephone rate increase violates the APA because the BOP did not promulgate the rate after complying with the notice and comment requirements of 5 U.S.C. § 553. While the Fourth Circuit has not addressed the issue, numerous circuits have either held or assumed that the BOP is an "agency" subject to the APA's rulemaking requirements. *See White v. Henman*, 977 F.2d 292, 293 (7th Cir.1992); *Ramer v. Saxbe*, 522 F.2d 695, 697 (D.C.Cir.1975); *Venegas v. Henman*, 126 F.3d 760, 763 (5th Cir.1997). *See also Cross v. Gutierrez*, 2005 WL 1330526, at *2–3, 2005 U.S. Dist. LEXIS 43188, at *6–7 (N.D.W.V. 2005). Thus, assuming, without deciding, that the BOP is an agency subject to the APA, the question is whether the APA provides for judicial review of the BOP's rate increase.

[18] In general, the APA provides for judicial review of agency action. *See* 5 U.S.C. § 702. Judicial review is unavailable, however, if (1) prohibited by statute or (2) agency action is "committed to agency discretion by law." 5 U.S.C. § 701(a). This second exception, applicable here, requires dismissal when there is "no law to apply." *Lunney v. United States*, 319 F.3d 550, 558 (2d Cir.2003) (quoting *Webster v. Doe*, 486 U.S. 592, 600, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971)). In this case, Congress has provided that the BOP shall "(1) have charge of the management and regulation of all Federal penal and correctional institutions; [and] (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged or convicted of offenses against the United States ...". 18 U.S.C. § 4042.[4] This statute addresses only the general responsibilities of the BOP; thus, "[t]he absence of specific

4. Pursuant to this statutory authority, the BOP entrusted the Chief of the Trust Fund Branch with the responsibility to determine telephone costs. BOP Program Statement 4500.04.

Exhibit D

guidelines of appropriate conduct by BOP officials in administering these duties [ ] leaves judgment or choice to BOP officials." *Scrima v. Hasty,* 1998 WL 661478, at *3, 1998 U.S. Dist. LEXIS 15050, at *8 (S.D.N.Y.1998). Indeed, the total absence of specific guidelines indicates that the BOP has "broad unreviewable discretion" in fulfilling its responsibilities. *See Wolfish v. Levi,* 573 F.2d 118, 125 (2d Cir.1978), *rev'd on other grounds, Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *Crooker v. Morris,* 1996 WL 608553, at *6, 1996 U.S. Dist. LEXIS 15833, at *24–25 (D.N.J.1996) ("[I]t is well-settled that the BOP generally has wide discretion to implement the [ ] provisions in § 4042(a)").[5] Therefore, the APA precludes judicial review where, as here, the BOP has broad discretion to provide "suitable" quarters and care for inmates, which includes the provision of telephone services. *See Wolfish,* 573 F.2d at 125 (holding that the APA precludes judicial review of the BOP's discretionary decision to reduce the number of telephone calls permitted to prisoners). Accordingly, claim 4 must be dismissed.

C. *Federal Tort Claims Act*

**[19]** In claim 5, plaintiff alleges defendants violated the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.,* by increasing the long-distance telephone rate in federal prisons. The FTCA provides that the United State's sovereign immunity is waived for suits resulting from injuries "caused by the negligent or wrongful act or omission of any employee of the Government ... under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Importantly, Congress has limited the reach of the FTCA by providing that § 1346(b) does not apply to "any claims based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation ... or based upon the exercise or performance ... [of] a discretionary function or duty ..." 28 U.S.C. § 2680(a). The purpose of this discretionary function exception is "to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. Gaubert,* 499 U.S. 315, 323, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

**[20, 21]** Given these settled principles, it is quite clear that plaintiff has failed to state a claim under the FTCA. First, and most importantly, plaintiff has not alleged that he was the victim of any tort under the governing laws of the Commonwealth of Virginia. Because plaintiff has failed to allege a cognizable state law tort claim, his FTCA claim must fail. *See FDIC v. Meyer,* 510 U.S. 471, 477–78, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (holding that to state a claim under the FTCA, plaintiff must al-

5. *See also Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976) (finding that federal prison officials have "full discretion" to control prisoner classification and determine "eligibility for rehabilitative programs"); *Caudle v. United States,* 1995 U.S.App. LEXIS 34701, at *1 (7th Cir.1995) (holding that the manner in which the BOP fulfills its duty under § 4042(a)(2) is discretion); *Walker v. Hughes,* 558 F.2d 1247, 1252 (6th Cir.1977) ("Federal statutory law gives federal prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons, subjection to significant and adverse effects on parole dates, and deprivation of privileges."); *Ramey v. Hawk,* 730 F.Supp. 1366, 1372 (E.D.N.C.1989) ("When a mode or method chosen by the BOP to effectuate a policy is challenged, the court generally defers to the judgment of the BOP.").

lege a state law tort claim, not a deprivation of a federal constitutional right). Moreover, even assuming plaintiff had properly alleged a state law tort claim, plaintiff's claim is nonetheless barred by the discretionary function exception. This is so because, as explained above, the BOP's provision of telephone services is a matter committed to its discretion that will not be second-guessed through an FTCA claim. Thus, claim 5 must be dismissed.

III.

[22] Finally, plaintiff alleges that the FOIA Section of the BOP has failed to respond to his August 2004 request for records. The Freedom of Information Act confers jurisdiction over a complaint on "the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia." 5 U.S.C. § 552(a)(4)(B). It does not appear that jurisdiction lies in this district because plaintiff states he is currently incarcerated in the Middle District of Pennsylvania and does not allege where the agency records sought are located in this district. Therefore, this remaining claim will be transferred to the United States District Court for the Middle District of Pennsylvania.

Accordingly, it is hereby

ORDERED that claims 1, 2, 3, 4, and 5 be DISMISSED WITH PREJUDICE for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1); and it is further

ORDERED that plaintiff's request to proceed *in forma pauperis* be and is GRANTED; and it is further

ORDERED that the remaining claim in this action is TRANSFERRED to the United States District Court for the Middle District of Pennsylvania. The Clerk of this Court is directed to transfer all pleadings and pending motions filed in this case and a copy of the docket sheet to the Clerk of the United States District Court for the Middle District of Pennsylvania; and it is further

ORDERED that plaintiff direct all future pleadings in this case to the Clerk's Office for the United States District Court for the Middle District of Pennsylvania.

**Hope CAMPBELL, et al., etc., Plaintiffs,**

**v.**

**ETHEX CORPORATION, et al., Defendants.**

**No. 1:05CV00096.**

United States District Court, W.D. Virginia, Abingdon Division.

Dec. 11, 2006.

**Background:** Co-administrators of a patient's estate brought a products liability suit against the manufacturer and seller of a prescription wound healing ointment, which allegedly eroded the patient's popliteal artery, causing her death. Following settlement of the case, the parties moved for reconsideration of an oral denial of their request that the settlement documents be sealed from public disclosure.

**Holding:** The District Court, Jones, Chief District Judge, held that the presumption against sealing was overcome.

Ordered accordingly.

**1. Records ⚷32**

Presumption against sealing judicial records can be rebutted if countervailing

# EXHIBIT E

001

PBT-1330.13
Jr 31, 2000

FEDERAL CORRECTIONAL INSTITUTION
PETERSBURG, VIRGINIA
ADMINISTRATIVE REMEDY ATTEMPT AT INFORMAL RESOLUTION

Program Statement 1330.13, Administrative Remedy Procedures for Inmates, requires an Inmate, In most cases,, to make an attempt at Informal resolution prior to filling a for administrative remedy. An Inmate with a complaint should complete the first three sections below and submit the form to his correctional counselor.

1. WILLIAM HENRY HARRISON 8-5-04 | 07725-078 | B-SOUTH
Name & Date | Reg. No. | Housing Unit

2. NATURE OF THE COMPLAINT (state briefly what the problem is and what you have done to resolve problem: I consider the .03 (3¢) increase per minute telehone charge for my long distance calls to be a violation of my Constitutional ights under the Due Process and Equal Protection Clauses, where I am made to ay for the alleged Inmate Trust Fund needs, and local, Mexican, Canadien, nd International callers are not required to. I do not agree to shoulder see attachment)

3. WHAT RESOLUTION DO YOU WANT?: I want the rate returned to .20 20¢) per minute, I want to be reimbursed for the additional funds taken from y account that amounted to more than .20 (20¢) per minute, and I want a copy f an accounting of how Inmate Trust Funds are spent in order to see how the .O.P. is justifying this so-called need for an increase. (see attached)

TO BE COMPLETED BY STAFF

THERE IS NO PROBLEM WHICH CANNOT BE INFORMALLY RESOLVED

4. EFFORTS MADE BY STAFF TO RESOLVE PROBLEM (Include discussion of policy or problem with Inmate, contact with staff, etc.) Long Distance has been changed. It is a Bureau wide change to .23¢. This insures that you still receive program such as Recreation, Food Service, Education, etc.

5. COUNSELOR'S COMMENTS (Was problem Informally resolved, If not why?): No! Given BP-9

[signature] 8-12-04
Correctional Counselor/Date

UNIT MANAGER REVIEW (If problem not Informally resolved by counselor, did you discuss problem with Inmate in effort to resolve): ______ YES ✓ NO

IF ANSWER YES (Was problem resolved?): ______ YES ______ NO

acting [signature] 8-12-04
Unit Manager/Date

Date Informal received from Inmate: ______ Date BP-9 Issued to Inmate: 8-12-04

Exhibit E

(Continuation sheet for ?-8½, long-distance rate crease --
WILLIAM HENRY HARRISON - 07725-078 - B-South - 8/5/04)

(¶ 2 Cont'd) the total responsibility for this increase, where other inmates who are local, make to calls to Mexico, Canada, or other inter-nattional locations, are not required to pay an increase. This is classis violation of Equal Protection. The Due Process violation is in the taking of property without due process of law. Persons in the "free" society are paying sometimes between .03 and .05 (3¢ and 5¢) for long distance service. Inmates, who have already been deprived of their precious liberty, are now being forced to pay for B.O.P. activities that have nothing to do with inmate programs, and now are being required to pay for services that they do not benefit from, and are actually disguised as needed for Inmate Trust Fund expenditures and rising costs. The prices inmates pay for items in the commissary are already unlawful, and in violation of the profit-margin the B.O.P. is permitted to earn. The claim that an increase in long-distance rates, and only for inmates who live within the conterminous States, is needed due to rising costs for inmate programs cannot be substantiated. I do not wish to pay these higher prices, and I certainly do not want to pay the bill for other inmates who only make local, Mexican, Canadian, and/or International calls. I do not even agree with the .20 (20¢) perminute rate. It is unlawful, and puts money into individuals' pockets in the B.O.P., is not a fair practice in business, and is actually in violation of civil and criminal laws.

(¶ 3 Cont'd) I want a full accounting of the B.O.P.'s expenditures, and particularly with respect to the Inmate Trust Fund and Inmate Programs, for the years 2001-2002, 2002-2003, and 2003-2004, pursuant to the Freedom Of Information Act (5 U.S.C. § 552, et seq.), Article I, Section 9, cl. 7, of the United States Constitution, and the dictates of <u>Office of Personnel Management v. Richmond</u>, 496 US 414; <u>Core Concepts of Florida, Inc. v. U.S.</u>, 327 F.3d 1331; and <u>U.S. v. Richardson</u>, 418 US 166. I want my money that has been taken in excess of .20 (20¢) per minute, for now, placed by into my account, and I do not want more than .20 (20¢) per minute to be charged against my Inmate Telephone Account in the future.

003

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: HARRISON ,WILLIAM HENRY. | 07725-078 | B-SOUTH | PET (MED) |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST** I totally disagree with the response to my BP-8½ and I hereby incorporate by reference into this BP-9 everything stated in the BP-8½ and make it a part hereof. Contrary to teh response in the BP-8½, the BOP has a budget for Food Service, and is not reliant on telephone profits in order to feed inmates. Besides there is nothing great, outstanding, or extraordinary about the menus in the dining hall that would require any additional monies from inmates. Inmates' family members who pay taxes are already paying for these things, among other things in the BOP. My BP-8½ was not completely responded to, and I was not provide with the documentation sought therein concerning expenditures. My Due Process and Equal Protection rights are being violated by my having to pay when other inmates similarly situated do not have to pay the increase. We are all convicted, federal inmates. I should not have to pay an increase while local, Canadian, Mexican, and international-calling inmates do not.

8-13-04
DATE

SIGNATURE OF REQUESTER

**Part B- RESPONSE**

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

SECOND COPY: RETURN TO INMATE

CASE NUMBER:

CASE NUMBER: 348102-F1

**Part C- RECEIPT**

Return to:

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT:

8/17/04
DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)
APRIL 1982

USP LVN Exhibit E

Response to Request for Administrative Remedy
Remedy ID: 348103-F1

This is in response to your Request for Administrative Remedy, #348103-F1, receipted in this office on August 18, 2004. You complain the telephone rates for local calls are unjustified and inmates do not benefit. You request, under the Freedom of Information Act, a full accounting of the BOP's expenditures particularly with response to the Inmate Trust Fund.

Your complaint has been investigated and it has been determined that the Trust Fund benefits are inmate performance pay, drug rehabilitation programs, recreation/education (leisure time activities), institution commissaries, Inmate Telephone System, and microwaves. All inmates at FCC Petersburg have an opportunity to benefit from these programs. Additionally, the increase to 23 cents is the same for all Bureau of Prison facilities.

Your request for documents under the Freedom of Information Act should be directed to the following address:

Bureau of Prisons
ATTN: FOI/PA Section
320 First Street, N.W.
Washington, DC. 20534

Therefore, your complaint that the rate increase is unjustified and inmates do not benefit is unfounded.

If you are dissatisfied with this response, you may appeal to the Regional Director, Bureau of Prisons, Mid-Atlantic Regional Office, 10010 Junction Drive, Suite 100-N, Annapolis Junction, MD 20701. Your appeal must be received in the Regional Office within 20 calendar days of this response.

9-21-04
Date

VaNessa P. Adams, Warden

005

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administ. ve Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-DIR-9 including any attachments must be submitted with this appeal.

From: HARRISON, WILLIAM HENRY — 07725-078 — B-SOUTH — PET. (MED)

LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

**Part A—REASON FOR APPEAL** I totally disagree with the response to the BP-9, # 348103-F1, and hereby incorporate into the BP-10 everything stated in the ~~xxxxxxx~~ BP-8½, and BP-9, and make them a part hereof. The BP-9 is totally unresponsive to my claims and allegations. I never claimed that telephone rates for local calls was unjustified. My claim was, and is, that I am being made to shoulder the cost for all inmates allegedly benefitting from the increase, yet all inmates are not made to pay an increase. That is classic Equal Protection violation. Furthermore, to allege that inmates are benefitting from these increases by way of recreation/education(liesure time activities), commissiary, ITS, and microwaves is a farce and a fraud. Commissary and ITS pay for themselves, with enormous profits, I might add, that inmates never see or benefit from. It is also very comical to say that recreation is a benefit that would substantiate these horrific increases and profits, where bocci balls are not replaced or new, nor is there any indication that enormous amounts of money is spent on basketballs, chess and other board games, and the like. Drug rehabilitation is comical where you have a drug addict (cigarette smoking [nicotine addict]) allegeldy trying to counsel inmates on the dangers of addiction, and no enormous amount of funds are used for this farcical program.

8-28-04

DATE — SIGNATURE OF REQUESTER

**Part B—RESPONSE**

RECEIVED SEP 1 2004 BUREAU OF PRISONS MARO REGIONAL COUNSEL

DATE — REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE — CASE NUMBER: ______

**Part C—RECEIPT** — CASE NUMBER: ______

Return to: ______ LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT: ______

______ — SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13) APRIL 1982

Exhibit

Administrative Remedy Regional Appeal
Part B - Response

Dated Filed: September 1, 2004

Remedy ID #: 348103-R1

You are appealing FCI Petersburg's response to your request for administrative remedy. Specifically, you allege that you are being made to shoulder the cost for all inmates allegedly benefitting from the increase on the direct dial long distance rates, yet all inmates are not made to pay an increase. You further allege that inmates benefitting from the increase is a farce and a fraud. You want to be reimbursed for the additional rate and to be provided a copy of how inmate Trust Fund is spent.

Our review reveals that the rate increase is correct and in accordance with Program Statement 4500.04, Trust Fund/Warehouse/Laundry Manual, Chapter 4555 paragraph 2, Inmate Telephone System Sales Operations and applies to all inmates making direct dial long distance calls. The increase is needed to assure that adequate financial resources are available for the inmate Trust Fund Program given rising program costs. To obtain the Trust Fund information, you may file a Freedom of Information Act Request. To obtain monetary damages you may file a TORT claim. Both of these should be filed with FCC Butner's Consolidated Legal Center.

Your appeal of the Warden's response is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, D.C. 20534. Your appeal must be received in the General Counsel's Office within thirty (30) days from the date of this response.

OCT 01 2004
Date

Mickey Dacol for
K. M. White
Regional Director
Mid-Atlantic Regional Office

Exhibit E

007

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: HARRISON WILLIAM HENRY — 07725-078 — B-SOUTH — PET. (MED.)
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

**Part A—REASON FOR APPEAL** I disagree with the response to my BP-10, #348103-R1, and hereby incorporate into this BP-11 everything stated in my BP-10, BP-9, BP-8½, [illegible] and make them a part hereof. The BP-10 response, where it claims that the increase applies to all inmates making direct dial long distance calls, is contrary to and inconsistent with the very wording of the Memorandum, which stated that there would be no increase for calls to Mexico, Canada, and other locations outside of the conterminous United States. My equal protection rights have been violated, as well as my due process rights, and my rights under the Administrative Procedures Act. Regulations to enact this increase were not promulgated in the Federal Register or published in the Code of Federal Regulations, as is required by law. Neither was not public, who pays for these increases [B.O.P. pay wages do not allow for making 300 minutes of phone calls per month; it is the funds that inmate-family members send them that pays for just about everything], notified prior to the increase taking affect as the Administrative Procedure Act requires. The increase was unlawful on its face, and it particularly singles out inmates who live in other States to pay for the so-called benefits of inmates who do not have to pay the increase. This is classic Equal Protection and Due Process violations of my rights.

10-23-04
DATE

SIGNATURE OF REQUESTER

**Part B—RESPONSE**

DATE

GENERAL COUNSEL

FIRST COPY: WASHINGTON FILE COPY

CASE NUMBER: 348103-A1

**Part C—RECEIPT**

CASE NUMBER: ______

Return to: ______
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT: ______

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN

BP-231(13)
APRIL 1982

Exhibit E

**Administrative Remedy No. 348103-A1**
**Part B - Response**

You contend the increase in the per minute charge for inmate telephone calls was not warranted and is unfair. You request that the per minute rate be lowered to its previous level and that you be refunded the amount paid toward these increased rates.

Our review of this matter reveals that both the Warden and the Regional Director have adequately addressed your concerns. Program Statement 4500.04, Trust Fund/Warehouse/Laundry Manual, provides that "direct dial ITS-II telephone charges to inmates are to be established to encourage financial responsibility, family ties, and to ensure the ITS-II program remains financially solvent. The Chief, Trust Fund Branch with the Executive Staff's concurrence, is to establish telephone costs." To accomplish these objectives, the per minute rate for direct-dial long distance calls was recently raised to 23 cents. This increase was proposed and approved in accordance with Bureau of Prisons' policy.

You may request copies of Bureau of Prisons' records by writing to the Freedom of Information/Privacy Act Office, Federal Bureau of Prisons, 320 First St., N.W., Washington, D.C. 20534.

Monetary compensation is not available via the Administrative Remedy process. You must submit a claim pursuant to the appropriate mechanism, such as the Federal Tort Claims Act, if you seek monetary compensation.

Your appeal is denied.

January 11, 2005
Date

Harrell Watts, Administrator
National Inmate Appeals

Exhibit E

# EXHIBIT F

001

November 10, 2004
Attachment A

## ATTEMPT AT INFORMAL RESOLUTION
(Request for Administrative Remedy)

*The Federal Bureau of Prisons Program Statement 1330.13, Administrative Remedy Program, dated December 22,1995, requires that inmates attempt to informally present their complaint to staff and allow staff to attempt to informally resolve any issue prior to the inmate filing a Request for Administrative Remedy, BP.229(13). If informal resolution is unable to be accomplished, the inmate will be given a BP.229(13)form.*

8-21-07

TO BE COMPLETED BY INMATE

INMATE'S NAME: William Henry Harrison REG. NO. 07725-078 UNIT: B-2

1.Complaint (be specific. If related to UDC appeal, specify relevant section of Inmate Discipline Policy): I am entitled to accurate responses to my cop-out from this institution. I should not have to seek it from General Counsel's office. I also do not have access to P.S. 4500. Finally, I am not asking for what the general authorized profit is under the Program Statement, I want to know what USP Canaan's "specific" profit is.

2.What resolution is requested/expected: I want responses to my cop-out from this institution, and I want the complete information, I am entitled to know and have it provided by USP Canaan.

TO BE COMPLETED BY STAFF

3.Summary of Investigation: [illegible handwriting]

4.What actions were taken to resolve this matter informally: I spoke with the [illegible] supervisor.

5.Explain reasons for no resolution: this inmate does not wish to informally resolve this issue.

Date & Time Issued: 8/2?/07 3:70pm Correctional Counselor: F. Gamboa[illegible]
Date & Time Returned: 8/23/07 3:00pm Correctional Counselor: F. Gamboa
Date & Time Investigation Completed and BP229(13) issued: 8/28/07 2:00pm

Camp Administrator/Unit Manager Signature: [signature] 8/28/07

*Distribution:(1) If complaint is informally resolved, forward the original, signed and dated by the inmate, to the Unit Counselor for filing.*
*(2) If complaint is not informally resolved, forward the original (attached to BP-229(13) form) to the Warden's Office.*

On ____________, this issue was informally resolved.

____________________ Inmate Signature/Date

rec'd 8/28/07 from Mr. Dunstone

Exhibit F

---

BP-S148.055 INMATE REQUEST TO STAFF CDFRM
SEP 98
U.S. DEPARTMENT OF JUSTICE FEDERAL BUREAU OF PRISONS

| | |
|---|---|
| TO: (Name and Title of Staff Member) COMMISSARY SUPERVISOR | DATE: 8-14-07 |
| FROM: William Henry Harrison | REGISTER NO.: 07725-078 |
| WORK ASSIGNMENT: ORD | UNIT: B-2 |

SUBJECT: (Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request. I want to know how many copy cards does USP Canaan purchase at any given time, and how much does USP Canaan pay for a particular bulk-purchase of law library copy cards? I also want to know what percentage the profit is USP Canaan making on each card by selling them to inmates at $6.5? per cards.

(Do not write below this line)

DISPOSITION:

You can request this information through F.O.I.A and the percentage you can find in P.S. 4500.05 which does list the mark-up of an item.

| Signature Staff Member | Date |
|---|---|
| [signature] | 4-15-07 |

Record Copy - File; Copy - Inmate
(This form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-S148.070 APR 94

FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER

**SECTION 6**

rec'd 8/20/07 from Counselor Gamboa

002

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: HARRISON, WILLIAM HENRY (LAST NAME, FIRST, MIDDLE INITIAL) 07725-078 (REG. NO.) B-2 (UNIT) USP CANAAN (INSTITUTION)

**Part A- INMATE REQUEST** My request was absolutely clear, and I need not be any more specific than I have been. Nor do you need to know any specific so-called concern and how it relates to the BOP's aspect of my confinement other than the fact that I purchase items from the commisary and am entitled to know the information I requested. This is nothing more than a continuous abuse of process and authority, as well as incompetence. I want to know what the specific profits are that are being made here at USP Canaan from the law-library copy cards. Just as I asked for, I want to know how much USP Canaan pay for copy cards that they purchase; how many they purchase at any one time; what the price-per-card is for the purchases USP Canaan makes; and how much profit per card they are making based on those prices. I have incorporated by reference into this BP-9; everything already stated in the BP-8½ and cop-out, and I make them a part hereof in their entirety. Additionally, I cannot read anything in the BP-8½ response other than "policy is in law lib." in § 3, "Summary of Investigation", of the BP-8½; everything else is illegible. In any event, P.S. Statement 4500 **IS NOT** in the law library. As I said, I smell corruption and cover-up. All things will come to light.
WORD IS BOND!!!

9-7-07
DATE

SIGNATURE OF REQUESTER

**Part B- RESPONSE**

SEP 07 2007
RECEIVED
re-submitted

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 465485-F1F2

CASE NUMBER: 465485-F1F2

**Part C- RECEIPT**

Return to: LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT:

DATE

RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN

BP-229(13)
APRIL 1982

003

U. S. Department of Justice
Federal Bureau of Prisons
***USP, Canaan, Pennsylvania***

***Request for Administrative Remedy, Part B - Response***

***Name*: HARRISON, William**
***Reg. No.*: 07725-078**
***Admin. Remedy No.*: 465485-F2**

This is in response to your Request for Administrative Remedy, received on September 7, 2007. In this request you claim you were not given account information of specific profits made from the Law Library copy cards.

You will need to request this information through the Freedom of Information Act (FOIA).

Central Office, Office of General Counsel,
Freedom of Information (FOI) Section
320 First Street NW
Washington DC 20534.

The percentage allowed to mark up items to sell in the commissary can be found in P.S. 4500.05, Trust Fund/ Deposit Fund Manual, Chapter 3, Page 15.

This response is for informational purposes only. In the event you are not satisfied with the response and wish to appeal, you may do so within 20 calender days of the date of this response by submitting a BP-230 (10) to the Regional Director, Federal Bureau of Prisons, Northeast Regional Office, U.S. Custom House 2nd and Chestnut Street, Philadelphia, PA, 19106.

[signature]
Ronnie R. Holt, Warden

9/26/07
Date

rec'd 9/27/07
(found on my bed)

Exhibit F

004

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Adminis .tive Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: HARRISON, WILLIAM HENRY — 07725-078 — B-2 — USP CANAAN
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

Part A - REASON FOR APPEAL I disagree with the response to BP-9 # 465485, and I incorporate by reference into this BP-10 everything stated in my previous filings and make them a part in their entirety. ① I am entitled to have USP Canaan give me the specific information requested, and have all requests answered completely pursuant to P.S. 1330.13, 13(c) [Responses], ② I did not ask for "general" provisions about what profit is allowed, I asked for USP Canaan's exact actual profits. ③ P.S. 4500 is not available in the law library to inmates, so citing it, without my having access violates Due Process.

9-27-07
DATE

SIGNATURE OF REQUESTER

Part B - RESPONSE

DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 465485-R1

Part C - RECEIPT

CASE NUMBER: ____________

Return to: ____________
LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT: ____________

DATE

SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)

Exhibit F

**HARRISON, William**
Reg. No. 07725-078
Appeal No. 465485-R1
Page One

**PART B - RESPONSE**

You appeal the decision of the Warden at USP Canaan regarding profits received by the institution from the sale of copies in the Law Library. You state you have the right to this information and to have your request answered pursuant to Program Statement 1330.13, Administrative Remedy Program. You also state Program Statement 4500.05, Trust Fund/Deposit Fund Manual is not available in the Law Library at USP Canaan and should not be referenced.

Program Statement 4500.05, Trust Fund/Deposit Fund Manual states, "selling price of each item ordered and sold in the commissary is automatically calculated based on the cost and mark-up selected in TRUFACS. The mark-up selected shall be based on the following:

| | |
|---|---|
| 0 % | Stamps, Religious Items, Education courses |
| 5 % | SPOs(special purpose items)purchased at retail cost |
| 30% | Standard & SPO's purchased at non-retail cost |
| Pre-printed | Sales price printed on packaging" |

Trust Fund Profits are used for the benefit of all inmates. Any questions regarding appropriate uses of Trust Fund profits shall be directed to the Chief, Trust Fund Branch. In addition, a copy of the above program statement does not have to be placed in the Law Library. You may request a copy from your unit team or the Trust Fund Supervisor via an Inmate Request to Staff. You are correct that you have the right to request information concerning the profits received at USP Canaan from the sale of copies. However, the administrative remedy program is not the proper avenue to request this information. You may request the information from the Chief, Trust Fund Branch or from the Freedom of Information/Privacy Act Unit in the Office of General Counsel at the address below. Accordingly, your appeal is denied.

If you are dissatisfied with this response, you may appeal to the General Counsel, Federal Bureau of Prisons. Your appeal must be received in the Administrative Remedy Section, Office of General Counsel, Federal Bureau of Prisons, 320 First Street, N.W., Washington, D.C. 20534, within 30 calendar days of the date of this response.

Date: November 1, 2007

D. SCOTT DODRILL
Regional Director

rec'd 11/7/07 Counselor Gambone

Exhibit F

006

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: HARRISON, WILLIAM HENRY (LAST NAME, FIRST, MIDDLE INITIAL) 07725-078 (REG. NO.) B-2 (UNIT) USP CANAAN (INSTITUTION)

**Part A - REASON FOR APPEAL** I incorporate everything from prior filings into this BP-11, #465485-R1, and make them a part in their entirety. The BP-10 response's citation to P.S. 4500.05 is not good enough to satisfy due process, for I must be able to read it and use it for myself. If it is not readily available to me, then the BOP cannot use it to decide administrative filings. I should not have to request a copy from Unit Team, it should be available in the law library. And when I have sought access to it before, it was never provided; only referred to. The profits being made at USP Canaan must be provided as information at USP Canaan. I should not have to seek local information from the National Office.

11-7-07
DATE

SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

NOV 14 2007

Administrative Remedy Section
Federal Bureau of Prisons

DATE

GENERAL COUNSEL

FIRST COPY: WASHINGTON FILE COPY

CASE NUMBER: 465485-A1

**Part C - RECEIPT**

CASE NUMBER: ____

Return to: ____ LAST NAME, FIRST, MIDDLE INITIAL ____ REG. NO. ____ UNIT ____ INSTITUTION

SUBJECT: ____

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

**Administrative Remedy No. 465485-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal in which you request specific information pertaining to the costs and profits associated with the sale of copy card by the commissary. You contend Program Statement 4500.05, Trust Fund/Deposit Fund Manual, cannot be used as justification for actions taken because it is not available for inmate review in the law library.

Copier service is provided by an outside contractor and a special copy card, sold in the Commissary, is used to purchase copy services. The card's cost is negotiated with the contractor and marked-up as a regular inventory item in TRUFACS.

Program Statement 4500.05 does not contain regulatory language, and is not derived from rules codified in the Code of Federal Regulations. It merely represents local internal program procedures. As such, staff are not required to place a copy in the law library. As stated in Program Statement 1315.07, Inmate Legal Activities, the Warden has the option of availing a copy of any program statement of significant interest to the inmate population provided it is not restricted. This being entirely his discretion, we are neither compelled, nor inclined to mandate the inclusion of Program Statement 4500.05 in the library. In addition, considering the lack of issues in this regard, we concur with the Warden's decision.

Lastly, the Warden and Regional Director both advised you requests for information are more appropriately handled through a Freedom of Information/Privacy Act request. You must submit such requests in writing and addressed to the Bureau of Prisons, 320 First Street, NW, Washington, D.C. 20534. Both the face of the letter and envelope should be clearly marked, "Freedom of Information Request."

We concur with the responses provided. Accordingly, your appeal is denied.

January 29, 2008
Date

Harrell Watts, Administrator
National Inmate Appeals

Exhibit F

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILLIAM HENRY HARRISON,

Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

Defendant.

Civil No.: 07-1543 (PLF)

**DECLARATION OF MICHAEL ATWOOD**

I, Michael Atwood, hereby declare and state the following:

1. I am currently employed by the Federal Bureau of Prisons of the United States Department of Justice as Chief of the Trust Fund Branch. My business office is located at the Central Office in Washington, D.C. I have held this position since June 1991. Prior to that time, I served as Supervisor of Computer Specialists beginning in May 1989.

2. As the Chief of the Trust Fund Branch, I have primary responsibility for management and oversight of the Inmate Commissary Fund and the programs operated from the Commissary Fund, including the Inmate Telephone System (ITS). Program Statement (PS) 4500.05, Trust Fund/Deposit Fund Manual (Jan. 22, 2007).

3. The statements in this declaration are based upon my personal knowledge, belief and experience, and upon information made available to me in the course of my official duties.

**Commissary Pricing**

4. Pursuant to 31 U.S.C. § 1321, the BOP operates and manages prison commissaries. Program Statement 4500.05, Trust Fund/Deposit Fund Manual, Chapter 3, outlines the procedures for determining the selling price of items in the Commissary. See www.bop.gov for a complete copy of the policy.

5. The cost price is the cost of one single sellable unit, defined as the smallest individual unit sold in the commissary. First, the cost price of individual items is established automatically in the Trust Fund Accounting and Commissary System (TRUFACS) when the initial Receiving Report is generated. PS 4500.05, Ch. 3, pg. 15 (Exhibit I).

6. Second, after the cost price is determined, the selling price is set by marking up the cost price in accordance with the following mark-up formula:

| | |
|---|---|
| 0% | Stamps, religious items, Education course/resource requirements |
| 5% | Special Purpose Orders (SPOs) purchased at retail cost |
| 30% | Standard/SPOs purchased at non-retail cost |
| Pre-Printed | Sales price printed on packaging |
| Non-Physical | The selling price of items not physically maintained in inventory (i.e., photo vouchers) shall be manually entered as appropriate. |

PS 4500.05, Ch. 3, pgs. 15-16 (Ex. I).

7. BOP executive staff increased the commissary mark-up formula effective March 1, 2002, to ensure the commissary operated within the resources of the trust. The change was

achieved by increasing the mark-up formula for standard commissary items by roughly 5%, changing the mark-up formula from 25% to 30%. This change is reflected in the Change Notice (June 22, 2004) (Ex. II) to Program Statement 4500.04, Trust Fund/Warehouse/Laundry Manual (Dec. 15, 1995) and Program Statement 4500.04, Chapter 4523 (Ex. III), which implemented the Executive Staff's decision increase the mark-up on Commissary items.

8. Program Statement 4500.04 was rescinded by the January 22, 2007, Program Statement 4500.05, Trust Fund/Deposit Fund Manual (Ex. IV), but the mark-up formula remains the same under the new policy. The same selling price formula applies to all BOP institutions. Each institution distributes lists of Commissary items and their selling prices. PS 4500.05, Ch. 3, pgs. 17 (Ex. I).

9. The selling price of an item may change due to increase in the cost price or due to changes in the mark-up formula. The mark-up formula has remained the same since March 1, 2002. However, the selling price of commissary items continues to fluctuate due to factors outside the control of the BOP. For example, just as in the private market, the cost price of items in the commissary increases due to factors such as transportation

charges. Therefore, commissary prices have continued to change due to increasing cost price, not due to a change in the mark-up formula.

**Telephone Rates**

10. Pursuant to 18 U.S.C. § 4042(a)(1) and 28 C.F.R. § 540.100(a), the BOP is authorized to implement and manage an Inmate Telephone System (ITS) in federal prisons. Program Statement 4500.05, Trust Fund/Deposit Fund Manual, Chapter 6, outlines the procedures for determining the ITS rates.

11. With the Executive Staff's concurrence, I establish telephone rates. Id. at 2 (Ex. V). ITS rates are established "to encourage financial responsibility, family ties, and to ensure the Trust Fund Program remains financially solvent." Id. Direct dial calls differ from collect calls. The Warden may allow a collect call to be made for good cause. PS 5364.08, Inmate Telephone Regulations (Jan. 24, 2008) (Ex. VI). Inmates place most calls through direct dial, where the call is billed to the inmate by a set rate. Direct dial rates for local, long distance, and international telephone calls are set at a standard per minute flat rate for each type of service. PS 4500.05, Ch. 6, pg. 2 (Ex. V). These rates are standard throughout the Bureau, regardless of institution location. Id.

12. The Executive Staff and I periodically review and revise telephone rates in order to maintain the self-sustaining

nature of the ITS. Since July 6, 2004, the direct dial per minute rates have been set as follows:

Direct Dial - Local Calls $0.06
Direct Dial - Long Distance $0.23
Direct Dial - Canada $0.35
Direct Dial - Mexico $0.55
Direct Dial - International $0.99

The direct dial rates for local, long distance, Mexico, and Canada calls were all increased on March 1, 2003. The direct dial long distance rate was increased on July 6, 2004, from 20 to 23 cents per minute. Throughout these changes, the direct dial international rate remained at 99 cents.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 29th day of May, 2008 in Washington, D.C.

[signature]
Michael Atwood
Bureau of Prisons Trust Fund Branch

# Exhibit I

- Lighters or lighting paraphernalia, gas- or liquid-fueled or fueled by flammable material.
- Products in aerosol containers.
- Products containing chlorine as an active ingredient.
- Computer/calculator devices that allow programming or password protection of information.
- Magazines.
- All items with a unit cost of $100 or more unless approved, in writing, by the Warden. This authority may not be re-delegated below the level of Acting Warden.
- Radios capable of picking up shortwave, UHF, VHF, and television bands.
- Combination radio/tape players, recorder/tape players, recorders, compact disc players, video games, computer games, or portable televisions.

**3.5 PRICING.** The selling price of each item sold in the Commissary is calculated automatically in TRUFACS based on the actual cost and mark-up of the item. The following procedures for determining the selling price of items in the Commissary must be used.

a. **Cost Price.** The cost of an item will be established in TRUFACS when the initial Receiving Report is generated. The cost is based on a **sellable unit** which is defined as the smallest individual unit sold in the Commissary.

b. **Mark-up and Selling Price Computation.** The mark-up for the selling price of each item ordered and sold in the Commissary is automatically calculated based on the cost and mark-up selected in TRUFACS. The mark-up selected shall be based on the following:

| | |
|---|---|
| 0% | Stamps, religious items, Education course/resource requirements |
| 5% | SPOs purchased at retail cost |
| 30% | Standard/SPOs purchased at non-retail cost |
| Pre-Printed | Sales price printed on packaging |

Non-Physical — The selling price of items not physically maintained in inventory (i.e., photo vouchers) shall be manually entered as appropriate.

Generally, the Federal Government does not pay taxes (State, local, or Federal) on purchases. However, when payment of taxes is required, these steps must be followed:

- Divide the total tax charge(s) by the number of sellable units taxed.
- Add the tax per sellable unit to the cost price of the lowest sellable unit.
- Use this amount as the cost price for receiving purposes.

Occasionally, the selling price, rounded to the next highest nickel, may exceed the manufacturer's printed selling price. Then, the selling price must be set at the manufacturer's pre-printed price, even though it may be in odd cents. In those instances when the calculated selling price is less than the manufacturer's printed selling price, the calculated selling price shall be used. Pre-printed applies only to pre-printed, packaged, "across the counter" sales items (potato chips, pretzels, etc.). It does not apply to catalog prices such as those used for Special Purpose Order items (e.g., leather companies' catalogs).

c. **Selling Price Special Purpose Orders.** When it is necessary to purchase special purpose items at retail cost, standard mark-up may not be used. **Retail cost** is defined as the cost at which the general public can purchase an item. The selling price must be computed by adding a five percent "handling charge" or markup and adding any shipping charges.

d. **Coupons/Tokens.** Coupons or tokens sold through the Commissary and used to purchase items or services must, without exception, be marked-up in the same manner as ordinarily stocked items.

e. **Selling Price With No Mark-up.** There may be no mark-up added to the cost and no rounding to the next $0.05 of the following items:

- Postage.
- Discharge clothing (special-purpose clothing).
- Self-improvement textbooks.

- Correspondence courses.
- Tools and materials for educational/vocational training.
- Law books or other legal materials.
- Eyeglasses.
- Religious articles.
- Smoking Cessation Program materials.

f. **Selling Price Change Trust Fund Merchandise.** Old and new stock may not be maintained at different selling prices. Once new merchandise is received at a price other than the current selling price, (either higher or lower) the selling price will change for all identical items in stock.

**Example:** 17 units selling for $.35 each are in the Commissary; 120 units of the identical item are received. The new shipment of 120 units cost $.20 each. The computed selling price is $.26 each and requires rounding to $.30 each. In addition, the selling price of the 17 units on hand will decrease to $.30.

g. **Trust Fund Price Lists.** Institutions must distribute lists of Commissary items and their selling prices to help inmates prepare shopping lists in advance.

h. **Refunds/Exchanges.** Sales are considered final after the inmate accepts the item(s), signs the sales receipt, and leaves the Commissary area.

i. **Warranties.** Inmates may have damaged warrantied items repaired/replaced by the vendor, but the items must be forwarded to an outside address at the inmates' expense. Items may not be returned to the institution.

j. **Manufacture/Retail Coupons.** Coupons may not be honored at the Commissary.

k. **Rebates.** Institutions are not encouraged to solicit cash rebates for merchandise purchases but to seek the best price available at the time of purchase. If a cash rebate is received at the institution, the funds must be deposited in the Trust Fund appropriation (15X8408) using sub-object code 2670.

l. **Samples.** All non-food product samples received from a vendor must be returned to the vendor or destroyed as deemed appropriate after any evaluation has been completed. Any food

# Exhibit II



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change Notice

**OPI:** ADM/TFB
**DIRECTIVE AFFECTED:** 4500.04
**CHANGE NOTICE NUMBER:** 8
**DATE:** 6/22/2004

1. **PURPOSE AND SCOPE.** To update Program Statement 4500.04, Trust Fund/Warehouse/Laundry Manual.

2. **SUMMARY OF CHANGES.** This CN implements the Executive Staff's recent decision to:

- increase the mark-up on Commissary items; and
- increase the inmate spending limit.

The necessary policy revisions are as follows:

a. Chapter 4523 was revised to implement the Commissary mark-up increase.

b. Chapter 4526 was revised to increase the inmate spending limit.

c. Chapter 4554 was revised to increase the inmate telephone rates Bureau-wide.

3. **TABLE OF CHANGES**

| **Remove** | **Insert** |
|---|---|
| Chapter 4523 | Chapter 4523 |
| Chapter 4524, Attachment A, Pg 1 | |
| Chapter 4526 | Chapter 4526 |
| Chapter 4554 | Chapter 4554 |

Changes are indicated by an asterisk (*) before and after added or deleted information.

4. **ACTION.** File this Change Notice in front of PS 4500.04, the Trust Fund\Warehouse\Laundry Manual.

/s/
Harley G. Lappin
Director

# Exhibit III

## Chapter 4523 - Pricing

* 1. PURPOSE AND SCOPE. Effective March 1, 2002, the following procedures for determining the selling price of items in the Commissary must be used. *

2. COST PRICE COMPUTATION. The cost price is determined by completing the following steps:

- Divide the cost per case (box, package, etc.) by the number of sellable units in the case, extended to two decimal places. Sellable unit is defined as the smallest individual unit sold in the Commissary.

- The cost price shall include transportation charges, except for Special Purpose Order items.

- The cost price does not ordinarily include taxes (State, local, or Federal).

* 3. SELLING PRICE COMPUTATION, COMMISSARY ITEMS (EXCLUDING TOBACCO PRODUCTS). The selling price for products other than those containing tobacco is determined by completing the steps below:

- With the calculator set to two decimal places, multiply the cost price for each sellable unit by 1.30.

- Round the result to the next highest nickel.

**Example:**

| Unit Cost Price (Extended 2 Decimals) | Computed Selling Price (Cost Multiplied by 1.30) | Rounded to Next Nickel | Mfr's Printed Price | Established Unit Selling Price |
|---|---|---|---|---|
| $ .98 | $1.27 | $1.30 | None | $1.30 |
| 1.16 | 1.51 | 1.55 | None | 1.55 |
| .29 | .38 | .40 | None | .40 |

Generally, the Federal Government does not pay taxes (State, local, or Federal) on purchases. However, when payment of taxes is required, these steps must be followed:

- Complete the first step above.

highest nickel, is then multiplied by 10 (the number of sellable units in the carton) to determine the carton's selling price.

4. SELLING PRICE COMPUTATION, TOBACCO PRODUCTS. The selling price for items containing tobacco (cigarettes, cigars, and smokeless tobacco) is determined by completing the steps below:

- With the calculator set to two decimal places, multiply the cost price for each sellable unit by 1.40 (see above note concerning sellable units).
- Round the result to the next highest nickel.

**Example:**

| Unit Cost Price (Extended 2 Decimals) | Computed Selling Price (Cost Multiplied by 1.40) | Rounded to Next Nickel | Established Unit Selling Price |
|---|---|---|---|
| $2.60 | $3.64 | $3.65 | $3.65 |
| 1.95 | 2.73 | 2.75 | 2.75 |
| 2.39 | 3.35 | 3.35 | 3.35 |

5. SELLING PRICE COMPUTATION, SPECIAL PURPOSE ORDERS. When establishing a selling price for Special Purpose Orders, these steps must be followed:

- With the calculator set to two decimal places, multiply the total cost price for the Special Purpose Order by 1.30.
- Add transportation charges.
- Round the results to the next highest nickel.

**Example:**

| SPO Total Price | Computed Selling Price (Cost Multiplied by 1.30) | Trans-portation Charge | Rounded to Next Nickel | Established Unit Selling Price |
|---|---|---|---|---|
| $5.98 | $7.77 | $1.23 | $9.00 | $9.00 |

When it is necessary to purchase special purpose items at retail cost, normal pricing procedures may not be used. **Retail cost** is defined as the cost at which the general public can purchase an item. The selling price must be computed by adding a five percent "handling charge" to the cost price, adding any shipping charges, and rounding the resulting figure to the next highest nickel.

| Retail Cost Price | 5 Percent Handling Charge | Computed Selling Price Retail Cost Plus 5 Percent | Trans-portation Charge | Rounded To Next Nickel | Established Unit Selling Price |
|---|---|---|---|---|---|
| $5.98 | $ .30 | $6.28 | $1.23 | $7.55 | $7.55 |

6. TICKETS/TOKENS. Tickets or tokens sold through the Commissary and used to purchase items or services must, without exception, be marked-up in the same manner as ordinarily stocked items (see Paragraph 3).

7. SELLING PRICE WITH NO MARK-UP. There may be no mark-up added to the cost and no rounding to the next $0.05 of the following items:

- Coins.
- Postage, except where coin-operated vending machines are installed and the denominations sold preclude change return.
- Discharge clothing (special-purpose clothing).
- Self-improvement textbooks.
- Correspondence courses.
- Tools and materials for educational/vocational training.
- Law books or other legal materials.
- Eyeglasses.
- Religious articles.
- Smoking Cessation Program materials.

8. SELLING PRICE ADJUSTMENT, TRUST FUND MERCHANDISE. When a new shipment's selling price, established per Paragraph 3, results in a different price from the existing unsold stock (either increase or decrease), a price adjustment must be computed automatically on the FPPOS System during the receiving function. Old and new stock may not be maintained at different selling prices.

The technician reporting directly to the Trust Fund Supervisor must maintain the current prices of inventory items in the FPPOS System. This includes the comparison of item costs and selling prices entered into the FPPOS System from the Receiving Report, and an occasional review of the "Daily Sales By Item" Report to ensure that proper markups are being computed.

**Example:** 17 units selling for $.35 each are in the Commissary; 120 units of like items are received. The new shipment of 120 units cost $.30 each. The computed selling price is $.39 each and requires rounding to $.40 each.

Adjustments for the Commissary inventory's selling price are determined as follows:

**Example:**

| | | |
|---|---|---|
| Commissary inventory at New Selling Price (17 @ .40) | $6.80 | |
| Commissary inventory at Old Selling Price (17 @ .35) | $5.95 | |
| Commissary inventory selling price adjustment | | $ .85 Increase |

Selling price changes must be recorded, as they occur, into the FPPOS Inventory Control Account - Price Adjustments (Maj. 650 - Min. 220 and Maj. 750 - Min. 000). The total for this entry may be obtained from the FPPOS Receiving Report.

Selling price changes are no longer recorded in FMIS.

9. TRUST FUND PRICE LISTS. Institutions must prepare and distribute lists of Commissary items and their selling prices to help inmates prepare shopping lists in advance.

10. REFUNDS/EXCHANGES. Sales are considered final after the inmate accepts the item(s), signs the sales receipt, and leaves the Commissary area.

11. COUPONS. Coupons may not be honored at the Commissary.

12. REBATES. Institutions are not encouraged to solicit cash rebates for merchandise purchases but must seek the best price available at the time of purchase. If a cash rebate is received at the institution, the funds must be deposited in the Trust Fund appropriation (15X8408) using sub-object code 2670.

13. SAMPLES. All non-food product samples received from a vendor must be returned to the vendor or destroyed as deemed appropriate. Any food samples considered for sale in the Commissary may only be sampled by staff formally designated by the Warden. A sample is any item not currently sold in the Commissary.

14. PROMOTION/QUANTITY DISCOUNTS. If additional items identical to those ordered are received with the order as part of a promotion or quantity discount, these items must be received via a Receiving Report (BP-104) and the cost per item must be computed using the total quantity received. The selling price must be computed on the resulting cost price and any price adjustments processed as described in Paragraph 7.

If promotion or discounted items are received after the original order receiving report has been processed, a donated receiving report must be prepared using the latest cost price and selling price for that item. The donated receiver is to be entered into FPPOS and FMIS in the same manner as other Commissary Receiving Reports. *

# Exhibit IV



**U.S. Department of Justice**
Federal Bureau of Prisons

# Program Statement

**OPI:** ADM/TFB
**NUMBER:** P4500.05
**DATE:** 1/22/2007
**SUBJECT:** Trust Fund/Deposit Fund Manual

1. **PURPOSE AND SCOPE.** To provide inmates an opportunity to purchase articles or services not issued or delivered as basic care by the institution or of a different quality. A new Trust Fund/Deposit Fund Manual is required due to the implementation of the Trust Fund Accounting and Commissary System (TRUFACS) and the transfer of Deposit Fund policy responsibility from the Finance Branch to the Trust Fund Branch.

2. **PROGRAM OBJECTIVES.** The expected results of this program are:

a. Efficient and reliable Commissary, Telephone, and Laundry services will be made available to inmates.

b. The Trust Fund operation will be managed to ensure an efficient, cost effective, self-supporting program.

c. Merchandise, supplies, foods and equipment will be received, securely stored and effectively distributed to facilitate continuous institution operations.

d. Inmates' funds (Deposit Fund) will be accurately and efficiently maintained while they are incarcerated.

3. **DIRECTIVES AFFECTED**

a. **Directives Rescinded**

P2011.06 Financial Responsibility Program, Inmate Processing Payments (9/17/97)
P2014.01 Inmate Account Transfer Module (10/31/97)
P4500.04 Trust Fund/Warehouse/Laundry Manual (12/15/95)

# Exhibit V

c. **Staff Use of the ITS.** Staff members may not make official or personal calls via the ITS. Trust Fund staff may make telephone calls on the ITS as outlined in Section 5.g for system testing and trouble resolution only.

**6.2 TELEPHONE SERVICES.** The Trust Fund Branch procures all ITS telephone services (local, collect, long distance, and international) through a national Federal Telecommunications Systems (FTS) contract.

**6.3 EQUIPMENT AND SUPPLIES**

a. **Supplemental ITS Equipment.** Requests for additional equipment for operating the ITS shall be forwarded from the Warden through the Region to the Chief, Trust Fund Branch for approval.

b. **Operating Supplies.** Funds are provided in the annual ITS budget to purchase supplies (i.e., paper, office supplies). Procedures for procuring these items are found in Chapter 2.

c. **Personal Property.** Requests for purchasing personal property related to, but not a part of, the ITS (i.e., file cabinets, typewriters) shall be processed in accordance with procedures outlined in Chapter 2.

**6.4 ITS RATES**

a. **Direct Dial Rates.** Direct dial ITS telephone rates shall be established to encourage financial responsibility, family ties, and to ensure the Trust Fund Program remains financially solvent. The Chief, Trust Fund Branch, with the Executive Staff's concurrence, shall establish telephone rates. The Executive Staff shall approve any significant modifications to direct dial rates (other than those required by routine cost variances).

- Telephone rates for local, long distance, and international telephone calls shall be set at a standard per minute flat rate for each type of service. These rates are standard throughout the Bureau regardless of institution location.

- Each Warden shall ensure that information concerning the direct dial rates for telephone calls is maintained on file in the institution (e.g., law library, inmate library, units).

# Exhibit VI

**§540.105 Expenses of Inmate Telephone Use.**

**a. An inmate is responsible for the expenses of inmate telephone use. Such expenses may include a fee for replacement of an inmate's telephone access code that is used in an institution which has implemented debit billing for inmate calls. Each inmate is responsible for staying aware of his or her account balance through the automated process provided by the system. Third party billing and electronic transfer of a call to a third party are prohibited.**

**b. The Warden shall provide at least one collect call each month for an inmate who is without funds. An inmate without funds is defined as an inmate who has not had a trust fund account balance of $6.00 for the past 30 days. The Warden may increase the number of collect calls based upon local institution conditions (e.g., institution population, staff resources, and usage demand). To prevent abuses of this provision (e.g., inmate shows a pattern of depleting his or her commissary funds prior to placing collect calls), the Warden may impose restrictions on the provisions of this paragraph b.**

**c. The Warden may direct the government to bear the expense of inmate telephone use or allow a call to be made collect under compelling circumstances such as when an inmate has lost contact with his family or has a family emergency.**

13. **TELEPHONE RESTRICTIONS IMPOSED BY THE WARDEN.** Inmates may be subject to telephone restrictions imposed by the Warden to protect the safety, security, and good order of the institution, as well as to protect the public. Telephone restrictions imposed under the authority of this section are separate and apart from telephone restrictions imposed by the UDC or DHO following formal and completed inmate discipline proceedings.

Inmates with telephone restrictions are still entitled to place at least one telephone call per month, unless also under a sanction of telephone restriction the UDC or DHO imposed.

a. **Authorized Circumstances.** Inmates may be subject to telephone restrictions under this section in the following two circumstances:

# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILLIAM HENRY HARRISON, :
:
Plaintiff , : Civil No.: 07-1543 (PLF)
v. :
:
:
FEDERAL BUREAU OF PRISONS, :
:
Defendant. :
:

**DECLARATION OF LYNNELL COX**

I, LYNNELL COX, do hereby declare as follows:

1. I am employed by the United States Department of Justice, Federal Bureau of Prisons ("BOP"), as a Paralegal Specialist, at the Federal Correctional Complex in Butner, North Carolina. I have held this position since June 8, 1998.

2. In the performance of my duties, I gather, review, and release information requested from the Bureau of Prisons via the Freedom of Information Act (FOIA). I have access to FOIA/PA files located in the Bureau of Prisons. I am familiar with, and received training on, the policies and procedures regarding the processing and release of information under FOIA/PA.

3. FOIA is a statute governing the release of government records. In general, FOIA provides that any person has a right, enforceable in court, to obtain access to federal agency records, except to the extent that such records (or portions of them) are

Exhibit H

protected from public disclosure by one of nine (9) exemptions or by one of three (3) special law enforcement record exclusions.

4. BOP is a law enforcement agency. The definition of "law enforcement officer" includes "an employee of the [BOP] or Federal Prisons Industries, Incorporated." 5 U.S.C. § 8401 (17)(D)(I). Furthermore, BOP is tasked with the law enforcement mission of protecting inmates, staff, and the community. See 18 U.S.C. §§ 3050, 4042. The BOP processes all requests for records by individuals (or entities) pertaining to themselves (as in this case) under FOIA in order to provide the requester the maximum disclosure authorized by law. The Attorney General has promulgated rules exempting records from the Privacy Act's (PA) access provision as authorized by 5 U.S.C. § 552a(j)(2), which appears at 28 C.F.R. § 16.81. Subsection (j)(2) exempts from mandatory disclosure records maintained by an agency or component thereof, which involve as its principal function any activity pertaining to the enforcement of criminal law.

5. I have read the Amended Complaint (filed Nov. 26, 2007) and understand that Federal Inmate William Henry Harrison, register number 07725-078, alleges that the BOP has not released adequate information in two (2) FOIA requests. Records maintained in this office reflect Plaintiff Harrison submitted the two named requests discussed below to the BOP, Butner Legal Center, FOIA/PA Section. The requests were assigned numbers

**2006-05485 and 2006-07827.**

**FOIA Request No. 2006-05485**

6. Plaintiff alleges in paragraph four (4) of the Amended Complaint (filed Nov. 26, 2007) that an inadequate search resulted in an inadequate response to his FOIA request for the following information: 1) all documents relating to disciplinary incident report number 1450349; 2) computer/ telephone records indicating calls made to SIS Tech H. Simmons from Counselor Wheeler or the reverse, for March 29-30, 2006; 3) emails or communication between SIS Tech H. Simmons and Counselor Wheeler, for March 29-30, 2006; 4) records indicating when and why SIS Tech H. Simmons chose to investigate and listen to Harrison's telephone conversation on March 14, 2006 and screen the telephone calls on March 30, 2006; 5) records indicating why SIS Tech. H. Simmons checked Harrison's financial account on March 30, 2006.

7. Official records in this office reflect that on or about April 14 and May 31, 2006, Plaintiff's request was received at Butner Legal Center in Butner, North Carolina because Plaintiff mailed his request twice. The request was assigned Request Number **2006-05485.** A true and correct copy of this request is attached hereto as **Exhibit I.**

8. The Butner Legal Center forwarded a request to Federal Correctional Complex, Petersburg, for staff to conduct a search for responsive records regarding Plaintiff's request.

Institutional staff began their search with the Special Investigative Agent (SIA). The SIA searched by retrieving the relevant incident report. Then institutional staff contacted the individuals involved in the incident to verify if emails, phone records, or other records were available. Upon completion of the institutional staff's search, nine (9) pages of records were found and forwarded to the Butner Legal Center for processing. The institution's search method was reasonably calculated to uncover all relevant documents regarding plaintiff's request because the SIA and individuals involved were those most likely to possess responsive records.

9. By letter dated June 6, 2006, Butner Legal Center responded that nine (9) pages of responsive records were received for review and that one (1) page would be released in its entirety and eight (8) pages would be withheld in their entirety. Plaintiff was advised of the following statutory basis for withholding the documents: 5 U.S.C. 552(b)(6), 5 U.S.C. 552(b)(7)( C), 5 U.S.C. 552(b)(7)(E). A true and correct copy of this response letter is attached hereto as **Exhibit II.**

**The Appeal and Explanation of FOIA Exemptions Asserted**

10. On or about June 13, 2006, the Plaintiff filed an appeal to the Department of Justice Office of Information and Privacy (OIP). A true and correct copy of this letter is attached hereto as **Exhibit III.**

11. The OIP received Plaintiff's appeal of BOP's response on June 28, 2006 and assigned it number 06-2402. In a letter dated November 18, 2006, the OIP responded to Plaintiff, affirming four (4) pages withheld by BOP and releasing to Plaintiff portions of four (4) pages previously withheld by BOP.

12. Attached to the letter, OIP released four (4) pages, consisting of one (1) page of an investigative report, one (1) page of banking information, one (1) page of a call record, and one (1) page of an intra staff email, previously withheld by BOP in full under FOIA Exemptions b(5), b(6), b(7)( C), and (b)(7)(E). In OIP's appeal decision, they did not apply the (b)(5) exemption and added the high 2 exemption.[1] Three (3) of the four (4) pages were released with excisions and one page was released in full. Two (2) pages, the investigative report and the call record, were released with excisions pursuant to (b)(7)( C), exempting third party names, titles, signatures, relationships, and telephone numbers, to protect third party information that would constitute an unwarranted invasion of personal privacy and could reasonably be expected to endanger the life or physical safety of any person. One (1) page, the intra staff email, was released with excisions consisting of the recipient name, pursuant to (b)(7)( C), and the signature block

[1] Although OIP did not mention the high 2 exemption in the letter to Plaintiff, the exemption is clearly noted as an exemption on the email from Hubert L. Simmons to staff.

of the email, including email addresses, fax numbers, and telephone numbers, excised pursuant to (b)(2)(high). One (1) of the four (4) pages, the banking information, was released in its entirety.

13. In the letter, OIP indicated that the BOP properly withheld certain information, consisting of banking information, a copy of a postal money order and envelope, an investigative memo, and visitor information data, under the following FOIA exemptions: (b)(6), (b)(7)( C), and (b)(7)(E). A true and correct copy of this response letter is attached hereto as **Exhibit IV**.

14. What follows is the detailed description of the information withheld that will explain the protected material. All information withheld was exempt from disclosure pursuant to a FOIA exemption or was not reasonably segregable because it was so intertwined with protected material that segregation was not possible or its release would have revealed the underlying protected material. All documents which relate to plaintiff's requests were processed to achieve maximum disclosure consistent with the provisions of the FOIA.

15. Section 552(b)(2) of Title 5 of the U.S. Code exempts from mandatory disclosure matters that are "…related solely to the internal personnel rules and practices of an agency." Exemption (b)(2) encompasses two distinct categories of

information: (a) internal matters of a relatively trivial nature, sometimes referred to as "low 2" information, and (b) more substantial internal matters the disclosure of which would risk circumvention of a legal requirement, sometimes referred to as "high 2" information. With respect to "high 2" information, the intent of exemption (b)(2) is that disclosure should not benefit those attempting to violate the law and avoid detection. The use of Exemption (b)(2) in this case involves "high 2" information. The "high 2" information withheld pursuant to Exemption (b)(2) is predominantly internal and does not impact, in any substantive manner, upon plaintiff. This "high 2" information consists of return emails, fax numbers, and telephone numbers which if disclosed, could lead to harassment or undermine the job function of the investigator. Due to his position, the information is particularly sensitive.

16. Section 552(b)(6) of Title 5 of the U.S. Code exempts from disclosure personnel, medical, and similar files, the release of which would constitute a clearly unwarranted invasion of personal privacy. This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains. The phrase "personnel and medical and similar files" is to be broadly interpreted. Once the threshold requirement is met, Exemption (b)(6) requires a balancing of the public's right to know against an individual's right to privacy

to determine whether disclosure of the records at issue would constitute a clearly unwarranted invasion of a person's privacy.

17. For this particular FOIA request, information withheld under (b)(6) consists of third party names, titles, signatures, relationships, and telephone numbers in the one (1) page investigative report and the one (page) call record.

18. Section 552(b)(7)(C) of Title 5 of the U.S. Code exempts from mandatory disclosure "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of any individual's privacy interest. In withholding the information, the individual's privacy interest is balanced against the public's interest in disclosure. In each instance, it was determined that whatever public interest there might be, if any, in knowing the names of the individuals identified in the relevant records, that public interest did not outweigh the privacy interests of said individuals. This exemption protects the identity of law enforcement personnel and third parties referenced in files compiled for law enforcement purposes. The exemption is intended to protect law enforcement personnel from harassment and annoyance in their private lives due to the conduct of their official duties, which could conceivably result

from public disclosure of their identity. The exemption is also intended to protect third parties, whose identities are revealed in law enforcement files, from comment, speculation, and stigmatizing connotation associated with being identified in a law enforcement record.

19. In this FOIA request, information withheld in the one (1) page investigative report and the one (1) page call record pursuant to (b)(7)(C) consists of third party names, titles, signatures, relationships, and telephone numbers. The recipient's name of the email was also withheld pursuant to (b)(7)(C).

20. Section 552(b)(7)(E) of Title 5 of the U.S. Code exempts from mandatory disclosure "records or information compiled for law enforcement purposes" the disclosure of which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."

21. For this FOIA request, four (4) pages were withheld in their entirety under (b)(7)(E) and consisted of one (1) page each of an investigative report, banking information, an intra staff email and an investigative memo. The information withheld pertained to investigative techniques used during an investigation. These techniques, if disclosed would reveal

telephone and other monitoring methods, and would jeopardize prison security.

**FOIA Request No. 2006-07827**

22. Plaintiff alleges in paragraph seven (7) of the Amended Complaint (filed Nov. 26, 2007) that the BOP failed to identify the search method, the exemptions and privileges used were improper, and the response was inadequate, for the following request: 1) a copy of the telephone call placed to (804) 687-9302 on March 14, 2006; 2) the transcript of the call; 3) documents of training and certification of Counselor Alderman to be a Disciplinary Hearing Officer (DHO); and 4) information on why Counselor Alderman was the DHO on May 17, 2006.

23. Official records in this office reflect that on or about June 6, 2006, Plaintiff's FOIA request was received at Butner Legal Center. The request was assigned Request Number **2006-07827**. A true and correct copy of this request is attached hereto as **Exhibit V**.

24. The Butner Legal Center forwarded the request to Federal Correctional Complex, Petersburg, for staff to conduct a search for responsive records regarding Plaintiff's request. Institutional staff began their search by searching for the requested telephone records, training records, or any other available responsive records. Upon completion of the institutional staff's search, the following records were

identified as responsive: one (1) page that responded to the third part of Plaintiff's request; and a telephone record captured electronically that responded to the first part of Plaintiff's request. The responsive page and electronic telephone record were emailed to Butner Legal Center for processing. No documents were found to respond to the second and fourth parts of Plaintiff's FOIA requests. The institution's search method was reasonably calculated to uncover all relevant documents regarding Plaintiff's request because the individuals emailed were those most likely to possess the records.

25. By letter dated June 19, 2006, Butner Legal Center notified Plaintiff that the search located one (1) page relating to the training record of DHO Counselor Alderman which was released in redacted form pursuant to (b)(7)(C) and (b)(6). Additionally, a recording of the phone call of March 14 was withheld in its entirety pursuant to (b)(7)( C) and (b)(6). No other pages were located in the search regarding the telephone transcript or why Counselor Alderman was the DHO on May 17, 2006. A true and correct copy of this letter is attached hereto as **Exhibit VI.**

**<u>The Appeal and Explanation of FOIA Exemptions Asserted</u>**

26. Section 552(b)(6) of Title 5 of the U.S. Code exempts from disclosure personnel, medical, and similar files, the release of which would constitute a clearly unwarranted invasion

of personal privacy. This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains. The phrase "personnel and medical and similar files" is to be broadly interpreted. Once the threshold requirement is met, Exemption (b)(6) requires a balancing of the public's right to know against an individual's right to privacy to determine whether disclosure of the records at issue would constitute a clearly unwarranted invasion of a person's privacy.

27. Exemption (b)(7)( C) provides for the withholding of records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy. In asserting this exemption, each piece of information is scrutinized to determine the nature and strength of any individual's privacy interest. In withholding the information, the individual's privacy interest is balanced against the public's interest in disclosure. In each instance, it is determined that whatever public interest there might be, if any, in knowing the names of the individuals identified in the relevant records, that public interest did not outweigh the privacy interests of said individuals. This exemption protects the identity of law enforcement personnel and third parties referenced in files compiled for law enforcement purposes. The exemption is intended to protect law enforcement personnel from harassment and annoyance in their private lives due to the

conduct of their official duties, which could conceivably result from public disclosure of their identity. The exemption is also intended to protect third parties, whose identities are revealed in law enforcement files, from comment, speculation, and stigmatizing connotation associated with being identified in a law enforcement record.

28. Exemptions (b)(6) and (b)(7)( C) were used to exempt the portions of Counselor Alderman's training record that did not pertain to Disciplinary Hearing Officer training. This protected private personnel information such as training courses, hours, and personnel status of Counselor Alderman. Exemptions (b)(6) and (b)(7)( C) were used to exempt the electronic telephone record in its entirety in order to protect the personal privacy interests of the third party involved in the conversation. The portions of the telephone record that did not directly identify the third party, was not reasonably segregable because it was so intertwined with protected material that segregation was not possible and/or its release would have revealed the underlying protected material. The release of the above information would constitute an unwarranted invasion of personal privacy and could reasonably be expected to endanger the life or physical safety of another.

29. On or about July 29, 2006, the Plaintiff filed an appeal to the OIP. A true and correct copy of this letter is attached

to the OIP. A true and correct copy of this letter is attached hereto as **Exhibit VII.**

30. OIP received Plaintiff's appeal on August 24, 2006. In a letter dated August 31, 2006, OIP informed Plaintiff that his appeal was assigned number 06-2876 and placed in line in a backlog. A true and correct copy of this request is attached hereto as **Exhibit VIII.**

31. In a letter dates May 12, 2008, OIP informed Plaintiff that it closed appeal number 06-2876 as it was now a matter before the Court. A true and correct copy of this request is attached hereto as **Exhibit IX.**

32. Based on my research, the documents released are the only BOP documents responsive to Plaintiff's FOIA requests.

I declare under the penalty of perjury, pursuant to Title 28 U.S.C. § 1746, the foregoing is true and correct to the best of my information, knowledge and belief.

Executed this 29th day of May 2008.

Lynnell Cox
Paralegal Specialist
Federal Bureau of Prisons
Butner, North Carolina

# Exhibit I

WILLIAM HENRY HARRISON (07725-078)
PETERSBURG FCC (LOW)
P.O. BOX 1000
PETERSBURG, VA 23804

May 18, 2006

General Counsel's Office
Federal Bureau of Prisons
FOIA/PA Section
320 First St., N.W.
Washington, D.C. 20534

RECEIVED
MAY
FOIA/PA SECTION
FEDERAL BUREAU OF PRISONS

Re: FOIA/PA Request Appeal
Incident Report No. 1450349

To Whom It May Concern:

On April 7, 2006, I made a request for information and documents pursuant to the FOIA/PA for the above-referenced Incident Report (I.R.). To date, I have not even received acknowledgement of receipt of my request. As the time period within which to respond has more than expired, this missive is to serve as my appeal of a deemed denied request for the information and documentation sought. If I do not hear from your office on this appeal in a timely manner, I will deem my appeal denied and will initiate an action in the U.S. District Court for relief.

Attached please find a copy of the previous request. I await your response.

Truly,

WILLIAM HENRY HARRISON

cc: Butner Legal Center
P.O. Box 1500
Butner, NC 27509

WILLIAM HENRY HARRISON (07725-078)
PETERSBURG FCS (LOW)
P.O. BOX 1000
PETERSBURG, VA 23804

April 7, 2006

General Counsel's Office
Federal Bureau of Prisons
FOIA/PA Section
320 First St., N.W.
Washington, D.C. 20534

Re: FOIA/PA Request
Incident Report No. 1450349

To Whom It May Concern:

This is an FOIA/PA request for the entire record with respect to Incident Report number 1450349, to include, but is not limited to, the following:

1. Any and all documents relating to the above-referenced Incident report;

2. The computer/telephone records indicating any and all calls made to SIS Tech. H. Simmons from Counselor Wheeler or his telephone extension, and vice versa, for the dates of March 29, 2006, through March 30, 2006;

3. Any and all e-mails, and/or any other form of communication between SIS Tech. H. Simmons and Counselor Wheeler for the dates March 29, 2006, through March 30, 2006;

4. The BOP records that would indicate when and why SIS Tech. H. Simmons chose to investigate and listen to Harrison's telephone conversation for March, 14, 2006, and why he chose March 30, 2006, to check and screen Harrison's telephone calls;

5. Any and all records that would indicate why SIS Tech. H. Simmons would check Harrison's financial account on March 30, 2006, including memos, etc.

Yours truly,

WILLIAM HENRY HARRISON

Exhibit H

# Exhibit II



U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons
Mid - Atlantic Region

Butner Legal Center
P.O. Box 1600
Butner, North Carolina 27509

June 6, 2006

William Henry Harrison
Reg. No. 07725-078
Federal Correctional Institution
P.O. Box 1000
Petersburg, Virginia 23804

Re: FOIA Request No. 2006-05485

Dear Mr. Harrison:

This is in response to your letters received on April 14, 2006, and May 25, 2006. You seek documents relating to incident report number 1450349, telephone conversations and e-mails between H. Simmons and Counselor Wheeler for the dates March 29, 2006, through March 30, 2006, and records indicating why H. Simmons investigated your telephone calls for March 14, 2006, and March 30, 2006, and checked your financial account on March 30, 2006.

We did not locate any records of phone calls between H. Simmons and Counselor Wheeler on the above dates or documents regarding the alleged investigation of your telephone calls and financial account. However, we have located nine pages responsive to your request for information regarding the incident report and e-mails. We have determined that one page is releasable in its entirety, and eight pages are being withheld in their entirety. The above determination is pursuant to:

> Title 5, United States Code, Section 552(b)(5), allows exemption of information intended for Staff use only, the disclosure of which would tend to inhibit frank communication between prison officials, or correspondence that is speculative or deliberative in nature
>
> Title 5, United States Code, Section 552(b)(6), which exempts from disclosure personnel, medical and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.
>
> Title 5, United States Code, Section 552(b)(7)(C), which exempts from disclosure records or information compiled for law enforcement purposes which could reasonably be expected to constitute an unwarranted invasion of personal privacy.
>
> Title 5, United States Code, Section 552(b)(7)(E), which provides for the withholding of records or information compiled for law enforcement purposes which would disclose certain investigative techniques and procedures.

Pursuant to Title 28, Code of Federal Regulations, Section 16.9, this determination may be appealed to the Attorney General by filing a written appeal within sixty days of the receipt of this letter. The appeal should be addressed to: the Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, DC 20530-0001. Both the envelope and the letter of appeal itself must be clearly marked: "Freedom of Information Act Appeal."

Sincerely

Richard W. Schott
Regional Counsel

Exhibit H

# Exhibit III

rec'd 6-28-06

062402

PA
(A)
BOP

WILLIAM HENRY HARRISON (07725-078)
PETERSBURG FCC (LOW)
P.O. BOX 1000
PETERSBURG, VA 23804

OFFICE OF INFORMATION AND PRIVACY

JUN 28 2006

RECEIVED

June 13, 2006

Office of Information and Privacy
U.S. Department of Justice
1425 New York Ave., Suite 11050
Washington, D.C. 20530-0001

Re: Freedom of Information Act Appeal
Request No. 2006-05485
Incident Report No. 1458345; Adm. Rem. No. 410520
B.O.P.

Dear Sir/Madam:

This is to serve as an appeal of the response received for my request for information in the above-referenced matter, dated June 6, 2006, from Butner Legal Center. For the following reasons, the response is either insufficient, improper, or in violation of 5 USC §§ 552 and 552a:

1) The claim that they did not locate any records of phone calls between H. Simmons and Counselor Wheeler does not mean that they made a thorough search in every place where this information can be located. Furthermore, they did not address whether or not they located any e-mails or other communication between Simmons and Wheeler, as requested by me;

2) Likewise, the claim that they did not locate any documents regarding the investigation, which they called "alleged", of my telephone calls and financial account. This is unbelievable, because some type of investigation had to take place in order for discipplinary charges to be brought, and there **must** be complete records maintained concerning every aspect of the alleged incident;

3) The determination to release only one (1) of the so-called nine (9) pages located, violates my due process rights and the decision to do so violates the FOIA/PA and the Constitution, where the only reason for claiming these alleged exemptions is to protect the BOP and its staff from exposure of the misuse and abuse of the administrative remedy process and the disciplinary process engaged in by the BOP as a matter of regular course. The documents I seek are no more protected under the claimed exemptions than would be the incident report itself. I was not

even provided the second part of the incident report regarding the investigation by the lieuterant who served the incident report on me, much less other communications between staff members that would reveal the unlawful activities and the sometimes criminal lengths they will go to in order to unlawfully penalize and punish me for exercising my First Amendment rights;

4) None of the claimed exemptions is valid, for I cannot properly defend myself during the course of the disciplinary process and appeals when I am not in possession of the very evidence needed to prove my allegations, and the only source of that information to prove my allegations is the BOP. Due Process demands discovery in criminal proceedings, and BOP disciplinary proceedings are quasi-judicial in nature. I am entitled to exculpatory as well as impeachment evidence. I am also entitled to any and all information/evidence that is useful to prove that the BOP is violating its own Policy, Rules, Regulations, Program Statement, and the Code of Federal Regulations that empowers them to promulgate the rules. An agency is required to give detailed reasons as to why a particular document should be entitled to a claimed exemption. Furthermore, 5 USC § 552(a)(6)(C), (...Any notification of denial of any request for records under this subsection shall set forth the names and titles or positions of each person responsible for the denial of such request;

5) 552(b)(5) does not apply. It is cited to protect the unawful conduct of BOP staff members involved, not to protect lawful frank discussion. 552(b)(6) does not apply because I never asked for personnel, medical or similar files that would invade any staff member's privacy. I only want records that pertain to me and the decision to falsely charge and discipline me. 552(b)(7)(C) does not apply because, once again, there is no invasion of anyone's personal privacy; these records have to do with ME, and it occurred during business hours in a government agency. 552(b)(7)(E) does not apply because this has nothing to do with law enforcement. It is simply another way to hide the misbehaviors of BOP staff.

6) The response did not answer my request as to **WHY?** H. Simmons investigated my telephone calls and why my account was looked into. The connection to Counselor Wheeler will be found therein, especially where Counselor Wheeler used to work in the S.I.S. section of the BOP. He still uses his contacts therein to usurp the lawful provisions of the BOP regulations, and to circumvent the law to violate mine and other prisoners' rights in the administrative remedy process. The BOP does not want to address this serious issue, so they attempt to hide behind deviously-crafted FOIA exemptions, which in reality do not apply, in order to frustrate me and other prisoners and prevent exposure for their unlawful acts. THE NEXT STOP IS THE OFFICE OF THE INSPECTOR GENERAL AND THE ATTORNEY GENERAL FOR SERIOUS INVESTIGATION AND BOP HOUSE-CLEANING!!! If my telephone monitoring or later screening was random, which it must be, then there would necessarily be a record kept by H. Simmons, and all other operators and S.I.S. personnel, just as random urine tests and breathalyzers test records are made and kept as business records in government agencies. If no records are kept, that is a violation of the law itself.

7) Once again, the BOP did not do an adequate nor thorough search, and therefore, under the law, it was not a reasonable search.

I appeal.

WILLIAM HENRY HARRISON

# Exhibit IV



**U.S. Department of Justice**

Office of Information and Privacy

*Telephone: (202) 514-3642*

*Washington, D.C. 20530*

NOV 1 0 2006

Mr. William H. Harrison
Register No. 07725-078
United States Penitentiary
Post Office Box 300
Waymart, PA 18472

Re: Appeal No. 06-2402
Request No. 06-05485
ALB:SRO

Dear Mr. Harrison:

You appealed from the action of the Mid-Atlantic Regional Office of the Federal Bureau of Prisons (BOP) on your request for access to various records pertaining to Incident Report Number 1450349.

After carefully considering your appeal, and as a result of discussions between BOP personnel and a member of my staff, I am releasing to you portions of four additional pages previously withheld from you in full, copies of which are enclosed. I am otherwise affirming, on partly modified grounds, BOP's action on your request.

BOP properly withheld certain information that is protected from disclosure under the Freedom of Information Act pursuant to:

> 5 U.S.C. § 552(b)(6), which concerns material the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties;
>
> 5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties; and
>
> 5 U.S.C. § 552(b)(7)(E), which concerns records or information compiled for law enforcement purposes the release of which would disclose techniques and procedures for law enforcement investigations or prosecutions.

If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Daniel J. Metcalfe
Director

Enclosure (4)

# Exhibit V

mxh

PBT

WILLIAM HENRY HARRISON (07725-078)
PETERSBURG FCC (LOW)
P.O. BOX 1000
PETERSBURG, VA 23804

May 27, 2006

General Counsel
Federal Bureau of Prisons
FOIA/PA Section
320 First St., N.W.
Washington, DC 20534

RECEIVED
JUN - 6 2006
FOIA/PA SECTION
FEDERAL BUREAU OF PRISON

Re: Incident Report No. 1450349
DHO Qualifications
Freedom of Information/Privacy Act Request

To Whom It May Concern:

This is Freedom of Information/Privacy Act Request for the following information and documentation:

✓1) A copy of the tape recording of the telephone conversation between myself and my wife, at (904) 687-9302, on March 14, 2006, which was the basis for the incident report referenced above;

2) The opportunity to hear the complete recording, and to have a copy of the transcript of the complete recorded conversation, certified;

✓3) Copies of the documents proving the training and certification of Counselor Ms. Alderman, counselor in Richmond Hall, Petersburg FCC (Low), to be either a Disciplinary Hearing Officer or a validly designated, trained, and certified alternate DHO;

4) Copies of the reasons why, and the authorization for, Ms. Alderman to sit as alternate DHO for the above-referenced disciplinary hearing of May 17, 2006, when to do so offends and violates P.S. 5270.07, Chapter 7, page 1, [1.a; and Title 28 of the Code of Federal Regulations, Section 541.17

Please respond as soon as possible. Thank you.

Yours,

WILLIAM HENRY HARRISON

06-07837

Exhibit H

# Exhibit VI



U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons
Mid - Atlantic Region

Butner Legal Center
P.O. Box 1600
Butner, North Carolina 27509

July 19, 2006

William Henry Harrison
Reg. No. 07725-078
Federal Correctional Institution
P.O. Box 1000
Petersburg, Virginia 23804

Re: FOIA Request No. 2006-07827

Dear Mr. Harrison:

This is in response to your letter, received by the Bureau of Prisons on June 6, 2006, in which you request Bureau of Prisons records. We have interpreted your letter to include four requests. Specifically, you request: 1) A copy of the telephone call placed to (804) 687-9302 on March 14, 2006; 2) the transcript of the telephone call to (804)687-9302; 3) documents of training and certification of Counselor Alderman to be a Disciplinary Hearing Officer (DHO); and 4) to know why was Counselor Alderman was the DHO on May 17, 2006.

We have located one phone call pertaining to your first request and one page pertaining to your third request. We have determined that the recording of the call is not releasable to you, and that the training record should have information withheld. This information is withheld pursuant to:

> Title 5, United States Code, Section 552(b)(7)(C), which exempts from disclosure records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.
>
> Title 5, United States Code, Section 552(b)(6), which exempts from disclosure personnel, medical and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy.

With respect to your second request, we have not located a transcript of the telephone call to (804) 687-9302. Finally, we did not locate any documents responsive to your fourth request.

Pursuant to Title 28, Code of Federal Regulations, Section 16.9, this determination may be appealed to the Attorney General by filing a written appeal within sixty days of the receipt of this letter. The appeal should be addressed to: Office of Information and Privacy United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, DC 20530-0001. Both the envelope and the letter of appeal itself must be clearly marked: "Freedom of Information Act Appeal."

Sincerely,

Richard W. Schott
Regional Counsel

# Exhibit VII

rec'd 8-24-06

06-2876 PA/FOIA (A) BOP + change of address

WILLIAM HENRY HARRISON (07725-078)
USP CANAAN
P.O. BOX 300
WAYMART, PA 18472

July 29, 2006

OFFICE OF INFORMATION AND PRIVACY
AUG 24 2006
RECEIVED

Office of Information & Privacy
U.S. Dept. of Justice
1425 New York Ave., Suite 11050
Washington, DC 20530-0001

Re: FOIA Appweal
Req. No. 2006-07827
Notice of Change of Address

Dear Sir/Madam:

This is an appeal from the response to my FOIA request in the above-referenced matter. I appeal on the following grounds:

a. My requests have been mischaracterized, particularly with respect to request number two. I not only sought a copy of the complete transcript of the 3/14/06, phone conversation, I also requested to "**hear**" that telephone conversation for myself. This aspect was never addressed.

Also with respect to request number four, where I sought not only a copy of the reason why Ms. Alderman was permitted to preside at my DHO hearing when the DHO himself was available (which is in contravention of 28 CFR § 541.17 and Programs Statement 5270.07, Chap. 7, page 1, [1.a), but I also sought a copy of the written authorization for her to preside. This was not addressed, and the response only means that there was not written authorization as is required, an adequate search was not performed, or the documents have been destroyed.

b. Ms. Alderman stated at the May 17, 2006, hearing that she was consulting and reviewing a transcript of the phone conversation. Since all records respecting disciplinary proceedings are required to be maintained, they must exist as a matter of law, and I am entitled to them as a matter of Due Process under the First and Fifth Amendments to the Constitution; especially where good time credits have been taken from me which will require me to spend more time in jail than I would have to in the absence of the illegal hearing, findings, and sanctions.

c. I am also entitled to copies of any lawful authorization that certified Ms. Alderman as a trained and qualified DHO, and the authority for her to specifically sit as an alternate DHO for my hearing in particular, since her credentials and authority impact my constitutional rights and have a direct relationship to whether my good time credits will be restored. Therefore, these claimed exemptions do not apply.

d. If the telephone conversation will prove my innocence, but it is the BOP that is intentionally and purposely withholding this vital evidence, then a fraud in being perpetrated and my rights violated as a result. The BOP may not hide behind claimed exemptions or policy consierations (neither of which was given as the reason for not releasing the tape, in any form, to me), when my liberty interests and due process rights are at stake. Consequentlyy neither 5 USC § 552(b)(7)(C) nor § 552(b)(6), is applicable. Some form of disclosure, in full, is required to satisfy due process. The fact of the matter is that none of the information sought about Ms. Alderman's crdentials was provided; it was all redacted. And with respect to the telephone recording, it was not compiled for law enforcement purposes, neither can disclosure of it constitute an unwarranted invasion of personal privacy, as the only parties to the telephone conversation were me wife and I as consenting adults. She does not object to its release and neither do I.

The BOP decision must be rescinded and all the information and documentation requested by me disclosed and furnished, by whatever the most appropriate means is under the given circumstances.

I respectfully appeal.

WILLIAM HENRY HARRISON

# Exhibit VIII



**U.S. Department of Justice**

Office of Information and Privacy

*Telephone: (202) 514-3642* *Washington, D.C. 20530*

Mr. William Henry Harrison
Register No. 07725-078
United States Penitentiary
P.O. Box 300
Waymart, PA 18472

AUG 31 2006

Re: Request No. 2006-07827

Dear Mr. Harrison:

This is to advise you that your administrative appeal from the action of the Federal Bureau of Prisons was received by this Office on August 24, 2006.

The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **06-2876**. Please mention this number in any future correspondence to this Office regarding this matter.

We will notify you of the decision on your appeal as soon as we can. We regret the necessity of this delay and appreciate your continued patience.

Sincerely,

Priscilla Jones
Chief, Administrative Staff

BOP

Exhibit H

# Exhibit IX



**U.S. Department of Justice**

Office of Information and Privacy

Telephone: (202) 514-3642

Washington, D.C. 20530

MAY 1 2 2008

Mr. William H. Harrison
Register No. 07725-078
United States Penitentiary
Post Office Box 300
Waymart, PA 18472

Re: Appeal No. 06-2876
Request No. 2006-07827
BVE:CF

Dear Mr. Harrison:

You appealed from the action of the Mid-Atlantic Regional Office of the Federal Bureau of Prisons (BOP) on your request for access to records pertaining to a telephone conversation between you and a third party and records pertaining to a BOP Disciplinary Hearing Officer. I regret the substantial delay in responding to your appeal.

I have been informed that you filed a lawsuit pertaining to the action of BOP in the United States District Court for the District of Columbia. Inasmuch as this matter is now before the Court, I am closing your appeal file in this Office in accordance with 28 C.F.R. § 16.9(a)(3) (2007).

Sincerely,

Janice Galli McLeod
Associate Director

Exhibit H

CF

# EXHIBIT I

Exhibit I

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| WILLIAM HENRY HARRISON,<br><br>Plaintiff,<br>v.<br><br>FEDERAL BUREAU OF PRISONS,<br><br>Defendant. | : | Civil No.: 07-1543 (PLF) |

**DECLARATION OF VANESSA HERBIN-SMITH**

I, Vanessa Herbin-Smith, under penalty of perjury do hereby declare, certify and state:

1. I am the Supervisory Paralegal Specialist for the Federal Bureau of Prisons (hereinafter BOP), Northeast Regional Office, Philadelphia, Pennsylvania. I have held this position since August 2007. As part of my official duties, I assist in coordinating responses to Freedom of Information Act (FOIA) requests made to the BOP for records maintained in the Northeast Region. I have access to the Freedom of Information Act and Privacy Act (hereinafter FOIA/PA) files of the requests processed in this office. I am familiar with, and received training on, the policies and procedures regarding the processing and release of information under the FOIA/PA.

2. I have reviewed the Amended Complaints and understand the Plaintiff, William Henry Harrison, Register Number 07725-078,

who is currently incarcerated at the Federal Correctional Institution Fort Dix (FCI Fort Dix), Fort Dix, New Jersey, alleges the BOP has failed to comply with or respond to his requests for information under FOIA.

3. Records maintained in this office reflect Plaintiff Harrison submitted the five named requests discussed below to the BOP, Central Office, FOIA/PA Section. These were forwarded to the BOP's Northeast Regional Office for processing. The requests were assigned FOIA Request Nos. **2007-10206, 2007-08547, 2007-07829, 2007-07346, and 2008-02180.**

4. The BOP is a law enforcement agency. The definition of "law enforcement officer" includes "an employee of the [BOP] or Federal Prisons Industries, Incorporated." 5 U.S.C. § 8401 (17)(D)(I). Furthermore, BOP is tasked with the law enforcement mission of protecting inmates, staff, and the community. See 18 U.S.C. §§ 3050, 4042.

5. The BOP processes all requests for records by individuals (or entities) pertaining to themselves (as in this case) under FOIA in order to provide the requester the maximum disclosure authorized by law. The Attorney General has promulgated rules exempting these records from the Privacy Act's (PA) access provision as authorized by 5 U.S.C. § 552a(j)(2), which appears at 28 C.F.R. § 16.81. Subsection (j)(2) exempts from mandatory disclosure records maintained by an agency or component thereof, which involve as its

principal function any activity pertaining to the enforcement of criminal laws.

**FOIA REQUEST NO. 2007-10206**

6. Plaintiff Harrison alleges in paragraph nine (9) of the Amended Complaint (filed November 26, 2007) that he has not received a response to his FOIA request for investigation documents with respect to Tort Claim TRT-MXR-2007-01871.

7. Official records maintained in this office reflect Plaintiff Harrison's request was received by the BOP Central Office, FOIA/PA Section, on or about August 28, 2007. This request was forwarded to the BOP's Northeast Regional Office shortly thereafter. The request was assigned Request Number **2007-10206.** A true and correct copy of this request is attached hereto as **Exhibit 1**.

8. By letter dated February 11, 2008, the BOP notified Plaintiff that seven (7) pages of responsive records were received for review and that three (3) of those pages would be released in full. The BOP also notified Plaintiff that four (4) pages were being withheld in their entirety pursuant to FOIA Exemption (b)(5) because the release of the information would tend to inhibit open and frank communication between Bureau of Prisons employees. A true and correct copy of this letter is attached hereto as **Exhibit 2**.

**FOIA REQUEST NO. 2007-08547**

9. Plaintiff Harrison alleges in paragraph ten (10) of the Amended Complaint (filed November 26, 2007) that he has not received a response to his FOIA request for the following information: 1) statistics showing the number of inmates transferred from United States Penitentiary (USP) Canaan to Low facilities from May 2007 through July 2007; 2) the number of inmates that have been approved for transfer to Low facilities including inmates that have not actually been transferred yet during the months of June and July 2007; 3) the number of inmates that would be approved for August and September 2007.

10. Official records maintained in this office reflect Plaintiff Harrison's request was received by the BOP Central Office, FOIA/PA Section, on or about July 30, 2007. This request was forwarded to the BOP's Northeast Regional Office shortly thereafter. The request was assigned Request Number **2007-08547.** A true and correct copy of this request is attached hereto as **Exhibit 3**.

11. By letter dated February 14, 2008, BOP provided Plaintiff all the information responsive to his request. A true and correct copy of this letter is attached hereto as **Exhibit 4**.

**FOIA REQUEST NO. 2007-07829**

12. Plaintiff Harrison alleges in paragraph two (2) (a-e) of the second Amended Complaint (filed January 9, 2008) that the

processing of his FOIA request concerning any and all information regarding his Veterans Administration disability checks "are contrary to the law, inadequate, and/or completely erroneous".

13. Official records maintained in this office reflect Plaintiff Harrison's request was received by the BOP Central Office, FOIA/PA Section, on or about May 29, 2007. This request was forwarded to the BOP's Northeast Regional Office shortly thereafter. The request was assigned Request No. **2007-07829**. A true and correct copy of this request is attached hereto as **Exhibit 5**.

14. The Northeast Regional Office forwarded a request to USP Canaan for staff to conduct a search for any responsive records regarding Plaintiff's request. Institutional staff began their search by utilizing the Trust Fund Accounting and Commissary System ("TRUFACS") to retrieve a statement of Plaintiff's account. TRUFACS is a system that tracks financial data during the inmate's incarceration. Then, institutional staff contacted the institution's mail room to verify if any checks were logged in that were mailed directly to the institution and forwarded to the Lock Box in Iowa with regard to the Plaintiff. BOP's procedure is for all funds forwarded to inmates from family members, friends, and others to be mailed directly to the Lock Box in Iowa. Upon completion of the institutional staff's search, thirteen (13) pages of records were found and forwarded to the Northeast Regional

Office for processing. The institution's search method was reasonably calculated to uncover all relevant documents regarding Plaintiff's request because TRUFACS and the institution's mail room were the two (2) locations where responsive records were most likely to be located.

15. By letter dated August 7, 2007, BOP notified Plaintiff that thirteen (13) pages of records were received for review and that four (4) of those pages would be released with excisions and nine (9) pages would be released in their entirety. He was advised that release of the information being withheld would or could constitute an unwarranted invasion of personal privacy, and could reasonably be expected to endanger the life or physical safety of any person. He was also advised of the statutory basis for the excisions, 5 U.S.C. Section §§ 552(b)(6), (b)(7)( C), and (b)(7)(F). The information redacted contain personal information to which no consent to release this information to the Plaintiff was given, and if released, it could endanger the life or physical safety of another. A true and correct copy of this letter is attached hereto as **Exhibit 6**.

16. On or about August 14, 2007, the Plaintiff filed an appeal to the Department of Justice Office of Information and Privacy (OIP), assigned OIP No. 07-2318. In his appeal, the Plaintiff alleges that the BOP failed to locate all documents responsive to his request, including documents relative to his administrative

remedy. A true and correct copy of this letter is attached hereto as **Exhibit 7**.

17. On December 21, 2007, the Office of Information and Privacy ("OIP") responded to the Plaintiff and affirmed BOP's action on his request. In the letter, OIP indicated that the BOP properly withheld certain information under the following FOIA exemptions: 5 U.S.C. §§ 552(b)(6), (b)(7)( C), (b)(7)(F). In addition, OIP determined that the BOP conducted an adequate, reasonable search for responsive records. Further, OIP informed Plaintiff that he may not expand the scope of his initial request on appeal and Plaintiff must submit a new request directly to BOP for information pertaining to the administrative remedy process. A true and correct copy of this letter is attached hereto as **Exhibit 8**.

**Explanation of FOIA Exemptions Asserted**

18. Section 552(b)(6) of Title 5 of the U.S. Code exempts from disclosure personnel, medical, and similar files, the release of which would constitute a clearly unwarranted invasion of personal privacy. This protection is afforded to information that would infringe on the personal privacy of individuals about whom it pertains. The phrase "personnel and medical and similar files" is to be broadly interpreted. Once the threshold requirement is met, Exemption (b)(6) requires a balancing of the public's right to know against an individual's right to privacy

to determine whether disclosure of the records at issue would constitute a clearly unwarranted invasion of a person's privacy.

19. Section 552(b)(7)( C) of Title 5 of the U.S. Code exempts from mandatory disclosure "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." In asserting this exemption, each piece of information was scrutinized to determine the nature and strength of any individual's privacy interest. In withholding the information, the individual's privacy interest is balanced against the public's interest in disclosure. In each instance, it was determined that whatever public interest there might be, if any, in knowing the names of the individuals identified in the relevant records, that public interest did not outweigh the privacy interests of said individuals. This exemption protects the identity of law enforcement personnel and third parties referenced in files compiled for law enforcement purposes. The exemption is intended to protect law enforcement personnel from harassment and annoyance in their private lives due to the conduct of their official duties, which could conceivably result from public disclosure of their identity. The exemption is also intended to protect third parties, whose identities are revealed in law enforcement files, from comment, speculation, and stigmatizing connotation associated with being identified in a

law enforcement record.

20. Section 552(b)(7)(F) of Title 5 of the U.S. Code exempts from mandatory disclosure "records or information compiled for law enforcement purposes" the disclosure of which "could reasonably be expected to endanger the life or physical safety of any individual. This exemption protects the physical safety of a wide range of individuals. The exemption is intended to provide broad protection to "any individual" when disclosure of information about "any individual" could reasonably be expected to endanger the life or physical safety of that individual. The exemption also affords protection of the "names and identifying information of federal employees, and third persons" who may be unknown to the requester in connection with particular law enforcement matters.

21. In this case, the four (4) pages released with excisions consisted of a one (1) page intra staff e-mail and three (3) pages of a copied check and envelope, all four (4) excised pursuant to (b)(6), (b)(7)( C), and (b)(7)(F). The excisions in the four (4) pages were limited to the personal information of another individual to which no consent to release the information to the plaintiff was given. This information includes name, address, account numbers and other personally identifiable information. Release of this information would constitute a clearly unwarranted invasion of personal privacy of records

contained in BOP law enforcement records that if released could reasonably be expected to cause the other individual harm. Release of the third party names on the documents would threaten the safety of the individuals.

**FOIA REQUEST NO. 2007-07346**

22. Plaintiff Harrison alleges in paragraph three (a-c) of the second Amended Complaint (filed January 9, 2008) that the BOP's response to his FOIA request about his placement in the Special Housing Unit (SHU) for a twenty-four (24) day period was inadequate and unlawful.

23. Official records maintained in this office reflect Plaintiff Harrison submitted this request that was received by the BOP Central Office, FOIA/PA Section, on or about May 29, 2007. This request was forwarded to the BOP's Northeast Regional Office shortly thereafter. The request was assigned Request No. **2007-07346**. A true and correct copy of this request is attached hereto as **Exhibit 9**.

24. The Northeast Regional Office forwarded a request to the USP Canaan for staff to conduct a search for any responsive records regarding Plaintiff's request. Institutional staff began their search with the Special Investigative Agent (SIA). The SIA searched his investigative files and Plaintiff's central file for responsive records. Upon completion the SIA's search, ten (10) pages of responsive records were found and forwarded to the

Northeast Regional Office for processing. The institution's search method was reasonably calculated to uncover all relevant documents regarding Plaintiff's request because the SIA's investigative files and Plaintiff's central file were places most likely to contain responsive records.

25. On or about July 3, 2007, the Plaintiff filed an appeal to the Department of Justice Office of Information and Privacy (OIP), assigned OIP No. 07-1940. In his appeal, the Plaintiff alleges that the BOP failed to respond to his request for all documents with regard to his placement in the Special Housing Unit (Unit). A true and correct copy of this letter is attached hereto as **Exhibit 10**.

26. By letter dated July 24, 2007, BOP notified Plaintiff that ten (10) pages of responsive records were received for review and that eight (8) of those pages would be released with excisions and two (2) pages would be released in full. He was advised that release of the information would reflect internal matters of no interest to the public and that the information was withheld under 5 U.S.C. § 552(b)(2). The information redacted applies to matters that are related solely to internal agency practices, if released, could circumvent BOP policies and practices when investigating allegations of illegal activity by dangerous or manipulative inmates. A true and correct copy of this letter is attached hereto as **Exhibit 11**.

27. On August 24, 2007, the Office of Information and Privacy ("OIP") responded to the Plaintiff. In the letter, OIP indicated that "Department of Justice regulations provide for an administrative appeal only after there has been an adverse determination by a component". Since the BOP had not made an adverse determination yet, there was no action for the OIP to consider on appeal. A true and correct copy of this letter is attached hereto as **Exhibit 12**.

**Explanation of FOIA Exemptions Asserted**

28. Section 552(b)(2) of Title 5 of the U.S. Code exempts from mandatory disclosure matters that are "…related solely to the internal personnel rules and practices of an agency." Exemption (b)(2) encompasses two distinct categories of information: (a) internal matters of a relatively trivial nature, sometimes referred to as "low 2" information, and (b) more substantial internal matters the disclosure of which would risk circumvention of agency regulations or statutes, sometimes referred to as "high 2" information. With respect to "high 2" information, the intent of exemption (b)(2) is that disclosure should not benefit those attempting to violate the law and avoid detection.

29. The "low 2" information withheld pursuant to Exemption (b)(2) consists of administrative markings such as codes, tracking numbers, document routing information, and internal

telephone and facsimile numbers, and other similar administrative codes and markings.

30. In this case, the eight (8) pages released with excisions consisted of Special Housing Unit ("SHU") review records. The excisions were limited to an internal fax number, information related solely to the internal matters of a relatively trivial nature.

**FOIA REQUEST NO. 2008-02180**

31. Plaintiff Harrison alleges in paragraph four (a-b) of the second Amended Complaint (filed January 9, 2008) that the BOP has not responded to his FOIA request seeking specific information pertaining to the price of copy cards and the profits being made at USP Canaan as well as any law, either C.F.R. and/or Program Statement, where it authorizes a Federal prison to make a profit from legal material purchases.

32. Official records maintained in this office reflect Plaintiff Harrison's request was received by the BOP Central Office, FOIA/PA Section, on or about November 14, 2007. This request was forwarded to the BOP's Northeast Regional Office shortly thereafter. The request was assigned Request Number **2008-02180**. A true and correct copy of this letter is attached hereto as **Exhibit 13**.

33. By letter dated March 12, 2008, BOP notified the Plaintiff that seven (7) pages of responsive records were

received from the BOP's Northeast Regional Office for review and that six (6) of those pages would be released with excisions and one (1) would be released in full. He was advised that release of the withheld information would circumvent Federal Bureau of Prisons's policy and is withheld pursuant to FOIA Exemption (b)(2) A true and correct copy of this letter is attached hereto as **Exhibit 14**.

34. As noted above, Exemption (b)(2) also encompasses a distinct category of information referred to as "high 2" information that generally consists of predominantly internal documents that if disclosed would significantly increase the risk of circumvention of agency regulations or statutes.

35. In this case, the six (6) pages released with excisions consisted of internal Federal Bureau of Prisons "TRUFACS" documents used to purchase and track "copy card" purchases. The excisions are limited to computer user identification numbers. The release of this information significantly increases the risk of circumventing agency regulation by placing sensitive numerical date in the hands of individuals not authorized to possess it.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 22nd day of May, 2008.

Vanessa Herbin-Smith
Vanessa Herbin-Smith
Supervisory Paralegal Specialist
Federal Bureau of Prisons
Philadelphia, Pennsylvania

# EXHIBIT 1

Exhibit I



Nero

William Henry Harrison (07725-078)
USP Canaan : P.O. Box 300
Waymart, PA 18472

August 22, 2007

Federal Bureau of Prisons
FOIA/PA Section
320 First St., N.W.
Washington, D.C. 20534

Re: FOIA Request
Tort Claim TRT-MXR-2007-01871

Dear Sir/Madam:

This is a FOIA/PA request for any and all documents and information generated pursuant to the tort claim referenced above, including, but not limited to, any efforts to contact Petersburg FCC (Low) to determine who the R&D officer was that obtained and withheld my I.D. card during my packing for transfer in July, 2006. I want any and all documents referencing the investigation and its results.

Yours,

William Henry Harrison

AUG 2 9 2007

# EXHIBIT 2

Exhibit I



U.S. Department of Justice

Federal Bureau of Prisons

Northeast Regional Office

U.S. Custom House - 7th Floor
2nd & Chestnut Streets
*Philadelphia, PA. 19106*

February 11, 2008

William Henry Harrison, Reg. No. 07725-078
United states Penitentiary - Canaan, P.O. Box 300
Waymart, PA 18427

RE: Freedom of Information Request No. 2007-10206

Dear Mr. Harrison:

This is in response to your request for information that was received by this office on August 28, 2007. You request a copy of all documents regarding your Tort Claim No. TRT-MXR-07-01871.

Seven (7) pages of records were received in this office for release determination. Upon review, it has been determined three (3) pages are releasable to you in their entirety and they are enclosed herein. The remaining four (4) pages are being withheld in their entirety.

Four (4) pages are being withheld in their entirety because they contain third-party information and information intended for staff use only. Release of this information would tend to inhibit open and frank communication between Federal Bureau of Prisons' employees. The statutory basis for this withholding is 5 U.S.C. § 552 (b)(5).

I trust this has been responsive to your request. However, if you are dissatisfied with this response, you may appeal to the Attorney General by filing a written appeal within 60 days of your receipt of this response to: Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001. Both the envelope and the letter of appeal itself should be clearly marked: "Freedom of Information Act Appeal".

Sincerely,

Henry J. Sadowski
Regional Counsel

Enclosures: 3 pages

Exhibit I

# EXHIBIT 3

Exhibit I

William Henry Harrison (07725-078)
USP Canaan : P.O. Box 300
Waymart, PA 18472

July 19, 2007

General Counsel's Office
Federal Bureau of Prisons
FOIA/PA Section
320 First St., N.W.
Washington, D.C. 20534

Re: Freedom of Information/Privacy Act Request
Transfers from USP Canaan to Low Facilities

Dear Sir/Madam:

This is a Freedom of Information Act request for your agency to provide me with the statistics showing the number of inmates that have been transferred to FCC (Low) facilities during the months of May through July of 2007, and how many inmates have been approved for transfer to FCC (low) facilities, even if they have not actually been transferred yet, during the months of June and July, 2007, and how many are to be approved for August and September, 2007, from USP Canaan

Yours truly,

William Henry Harrison

# EXHIBIT 4

Exhibit I



U.S. Department of Justice

Federal Bureau of Prisons

Northeast Regional Office

U.S. Custom House - 7th Floor
2nd & Chestnut Streets
*Philadelphia, PA. 19106*

February 14, 2008

William Henry Harrison, Reg. No. 07725-078
United States Penitentiary - Canaan
P.O. Box 300
Waymart, PA 18472

RE:  Freedom of Information Request No. 2007-08547

Dear Mr. Harrison:

This is in response to your request for information that was
received by the agency on July 30, 2007.  You request information
regarding statistics showing the number of inmates transferred to
"FCC (Low) facilities from May 2007 through July 2007."  You
request the number of "inmates that have been approved for
transfer to FCC (low) facilities including inmates that have not
actually been transferred yet during the months of June -July
2007."  You also request information regarding how many inmates
would be "approved for August and September 2007," from the
United States Penitentiary (USP), Canaan, Waymart, Pennsylvania.

I have been provided the following information regarding the
information you seek: May 2007 - six inmates; June 2007 - two
inmates; July 2007- eight inmates, August 2007 - two inmates;
September 2007 - seventeen inmates for a total of thirty-five
inmates.

I trust that we have been responsive to your request.

Sincerely,

Henry J. Sadowski
Regional Counsel

Enclosure:

Exhibit I

# EXHIBIT 5

Exhibit I

WILLIAM HENRY HARRISON (07725-078)
USP Canaan : P.O. BOx 300
Waymart, PA 18472

May 22, 2007

NCRO

Federal Bureau of Prisons
Freedom of Information/Privacy Act Section
320 First St., N.W.
Washington, D.C. 20534

Re: Freedom of Informatio/Privacy Act Request

To WHom It May Concern:

This is a FOIA/PA request for any and all documents, whether memoranda, letters, forms, memoralization of telephone conversations, etc., generated with respect to Disability payments checks,. issued by the Department of Veterans Affairs through the Treasury Department, reflecting check/document numbers 221972881189, 221495756873, and 221973564618.

I want copies of the so-called actual forms claimed to have beewn forwarded to the BOP Lock-Box in Iowa in late March and early April of 2007. I also want, but is not limited to, a throrough explanation of where these funds were located until they were finally placed in my prison account on or about April 30, 2007, and how they came to be dep osited in my account on that particular date.

William Henry Harrison

RECEIVED
MAY 2 3 2007
FOIA/PA SECTION
FEDERAL BUREAU OF PRISON

# EXHIBIT 6

Exhibit I



U.S. Department of Justice

Federal Bureau of Prisons

Northeast Regional Office

U.S. Custom House - 7th Floor
2nd & Chestnut Streets
*Philadelphia, PA. 19106*

August 7, 2007

William Henry Harrison, Reg. No. 07725-078
United States Penitentiary - Canaan
P.O. Box 300
Waymart, Pennsylvania 18472

RE: Freedom of Information Request No. 2007-07829

Dear Mr. Harrison:

This is in response to your request for information that was received by this office on June 8, 2007. You request a copy of all documents regarding the location and deposit of three disability payment checks.

Thirteen (13) pages of records were received by this office for release determination. Upon review, it has been determined nine (9) pages are being released to you in their entirety and four (4) pages are being released to you with excisions. These 13 pages are enclosed herein.

Four pages are being released to you with excisions because they contain third-party information. Release of this information would or could constitute an unwarranted invasion of personal privacy, and could reasonably be expected to endanger the life or physical safety of any person. The statutory bases for these excisions are 5 U.S.C. § 552 (b)(6), (b)(7)(C) and (b)(7)(F).

William Henry Harrison, Reg. No. 07725-078
RE: FOIA Request 2007-07829
Page 2

I trust this has been responsive to your request. However, if you are dissatisfied with this response, you may appeal to the Attorney General by filing a written appeal within 60 days of your receipt of this response to: Attorney General, Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Suite 11050, Washington, D.C. 20530-0001. Both the envelope and the letter of appeal itself should be clearly marked: "Freedom of Information Act Appeal".

Sincerely,

Henry J. Sadowski
Regional Counsel

Enclosures: 13 pages

# EXHIBIT 7

Exhibit I

William Henry Harrison (07725-078)
USP Canaan : P.O. Box 300
Waymart, PA 18472

FOIA
(A)
BOP/NERO

Office of Information and Privacy
U.S. Department of Justice
1425 New York Ave., Suite 11050
Washington, D.C. 20530-0001

Re: FOIA Appeal of Request No. 2007-07829

Dear Sir/Madam:

This is my FOIA/PA appeals of the response dated August 7, 2007, and received by me on AUgust 13, 2007, for the following reasons:

1) Every document associated with my request was not forwarded to me; in particular, but not limited to, the Form P 4500.04 documents that Mr. Farley claimed to have sent to Iowa along with my V.A. checks on March 26, 2007, and April 2, 2007. The copies sent to me in response to my request are the same fraudulent forms that I presented in the administrative remedy process. I want the forms that were allegedly sent to Iowa along with the checks;

2) There are other documents that were a part of the administrative remedy process that were not forwarded to me with the response. Furthermore, I requested **any and all documents**, in whatever form, that related to this matter. I did not receive any memorandums, letters, forms, memorializations of telephone conversations, etc. (See request attached hereto.);

3) Although §§ (b)(6), (b)(7)(C), and (b)(7)(F), are cited as permitting redactions in the documents supplied, I have been given no explanation as to how it would invade privacy, how it relates in any way to law enforcement compiled records, or how it can endanger someone's life. I am entitled to know where my money went, and why it was sent whereever it was sent. If my money was placed in another inmate's account, I am entitled to know that, even if I don't get the name of that inmate;

4) I am entitled to know what this so-called adminstrative error was that cause my money to be lost or misplaced, and whose fault, specifically it was for such an error. That information cannot be privileged.

RECEIVED
AUG 3 0 2007
Office of Information and Privacy

Exhibit I

5) The claim that someone would be personally endangered if certain information were supplied to me is just a pretext for the BOP's desire to protect one of their staff members who made critical errors and then filed false information of government agency forms in order to attempt to cover the mistakes. The alleged exemptions and privileges do not apply herein, because if the money was mistakenly placed in another inmate's account, then that inmate is not at fault and there is no danger to that inmate. If the money was placed in some other or someone else's account who is not a federal inmate, then there is no danger to that person either.

I do not believe that all documents, in whatever form, were forwarded to the Northeast Regional Director's office of the BOP; thus the "Thirteen pages of records were received by this office for release determination." This does not reveal whether there were more records, nor does it reveal what type of search was performed, and by whom and where, in order to gather pertinent records. I have not even been informed as to where the 13 pages came from, much less were there any more pages that said location decided not to forward to the North-east Regional office. Someone is withholding a large number of documents with respect to this request, and it smells foul.

William Henry Harrison

# EXHIBIT 8

Exhibit I

U.S. Department of Justice

Office of Information and Privacy

Telephone: (202) 514-3642

Washington, D.C. 20530

DEC 21 2007

Mr. William Henry Harrison
Register No. 07725-078
United States Penitentiary
Post Office Box 300
Waymart, PA 18472

Re: Appeal No. 07-2318
Request No. 2007-07829
ALB:REG

Dear Mr. Harrison:

You appealed from the action of the Northeast Regional Office of the Federal Bureau of Prisons (BOP) on your request for access to records pertaining to certain disability payment checks. I regret the delay in responding to your appeal.

After carefully considering your appeal, I am affirming BOP's action on your request. BOP properly withheld this information because it is protected from disclosure under the Freedom of Information Act pursuant to:

5 U.S.C. § 552(b)(6), which concerns material the release of which would constitute a clearly unwarranted invasion of the personal privacy of third parties;

5 U.S.C. § 552(b)(7)(C), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to constitute an unwarranted invasion of the personal privacy of third parties; and

5 U.S.C. § 552(b)(7)(F), which concerns records or information compiled for law enforcement purposes the release of which could reasonably be expected to endanger the life or personal safety of an individual.

On appeal, you contend that BOP failed to locate all records responsive to your request. Following discussions on this matter between BOP personnel and a member of my staff, I have determined that BOP has conducted an adequate, reasonable search for responsive records.

Furthermore, on appeal, you have requested access to records pertaining to the administrative remedy process. You may not on appeal expand the scope of your initial request, which was expressly limited to records pertaining to your disability payment checks. Accordingly, I suggest that you submit a new request directly to BOP for the information that you now seek.

DEC 28 2007
BOP RECA...

Exhibit I

BOP/NERO

If you are dissatisfied with my action on your appeal, you may file a lawsuit in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Janice Galli McLeod
Associate Director

By: [signature]

Anne D. Work
Attorney-Advisor

# EXHIBIT 9

Exhibit I

NERO/CAA

William Henry Harrison (07725-078)
USP Canaan : P.O. Box 300
Waymart, PA 18472

May 22, 2007

Federal Bureau of Prisons
FOIA/PA Section
320 Fiorst; St., N.W.
Washington, D.C. 20534

RECEIVED

MAY 2 2007

FEDERAL BUREAU OF PRISONS

Re: Freedom of Information Act Request
Adm. Remedy Number 450695-F1

To WHom It May Concern:

This is a FOIA/PA request for any and all documents, of any kind, generated with respect to the placement of William Henry Harrison (07725-078) in the Special Housing Unit of USP Canaan, in so-called Administrative Detention for investigation into purported violations of BOP rules and regulations.) The information sought is to include, but is not limited to, any and all communications among whatever parties, and the decisions made as to why Harrison was made to remain in SHU, with no access whatsoever to his personal property and legal documents, for a 24-day period.

William Henry Harrison

Placed in SHU on 4-27-07

# EXHIBIT 10

Exhibit I

07-1940

William Henry Harrison (07725-078)
USP Canaan : P.O. Box 300
Waymart, PA 18472

July 3, 2007

Office of Information and Privacy
U.S. Justice Department
1425 New York Ave., Suite 11050
Washington, D.C. 20530

Re: Freedom of Information/Privacy Act Appeal
Adm. Rem. # 450695-F1

To Whom It May Concern:

This is a Freedom Of Inforemation/Privacy Act Appeal of the BOP's failure to respond to my FOIA request referenced above as indicated in the attached copy of the actual request made. The BOP, once again, has failed to respond to a valid FOIA request. They will probably say, as always, that they never received the request. That reply, however, is becoming very stale.

Yours,

William Henry Harrison

RECEIVED
JUL 12 2007
Office of Information and Privacy

Exhibit I

William Henry Harrison (07725-078)
USP Canaan : P.O. Box 300
Waymart, PA 18472

May 22, 2007

Federal Bureau of Prisons
FOIA/PA Section
320 First; St., N.W.
Washington, D.C. 20534

Re: Freedom of Information Act Request
Adm. Remedy Number 450695-F1

To WHom It May Concern:

This is a FOIA/PA request for any and all documents, of any kind, generated with respect to the placement of William Henry Harrison (07725-078) in the Special Housing Unit of USP Canaan, in so-called Administrative Detention for investigation into purported violations of BOP rules and regulations. The information sought is to include, but is not limited to, any and all communications among whatever parties, and the decisions made as to why Harrison was made to remain in SHU, with no access whatsoever to his personal property and legal documents, for a 24-day period.

William Henry Harrison

Placed in SHU on 4-27-07

# EXHIBIT 11

Exhibit I



U.S. Department of Justice

Federal Bureau of Prisons

Northeast Regional Office

U.S. Custom House - 7th Floor
2nd & Chestnut Streets
*Philadelphia, PA. 19106*

July 24, 2007

William Henry Harrison, Reg. No. 07725-078
United States Penitentiary (USP) - Canaan
P.O. Box 300
Waymart, Pennsylvania 18472

RE: Freedom of Information Request No. 2007-07346

Dear Mr. Harrison:

This is in response to your request for information that was received by this office on May 29, 2007. You request a copy of all documents regarding your placement in the Special Housing Unit at USP Canaan on April 27, 2007.

Ten (10) pages of records were received in this office for release determination. Upon review, it has been determined two (2) pages are being released to you in their entirety and eight (8) pages are being released to you with excisions. These ten pages are enclosed herein.

Eight pages are being released to you with excisions because they contain information intended for staff use only. Release of this information would reflect internal matters of no interest to the public. The statutory basis for these excisions is 5 U.S.C. § 552 (b)(2).

William Henry Harrison, Reg. No. 07725-078
RE:  FOIA Request 2007-07346
Page 2

I trust this has been responsive to your request.  However, if
you are dissatisfied with this response, you may appeal to the
Attorney General by filing a written appeal within 60 days of
your receipt of this response to:  Office of Information and
Privacy, United States Department of Justice, 1425 New York
Avenue, Suite 11050, Washington, D.C.  20530-0001.  Both the
envelope and the letter of appeal itself should be clearly
marked: "Freedom of Information Act Appeal".

Sincerely,

Henry J. Sadowski
Regional Counsel

Enclosures:  10 pages

Exhibit I

# EXHIBIT 12

Exhibit I



**U.S. Department of Justice**

Office of Information and Privacy

*Telephone: (202) 514-3642*

*Washington, D.C. 20530*

AUG 24 2007

Mr. William H. Harrison
Register No. 07725-078
United States Penitentiary
Post Office Box 300
Waymart, PA 18472

Re: Appeal No. 07-1940
Request No. 2007-07346
ADW:CIH

Dear Mr. Harrison:

You attempted to appeal from the failure of the Northeast Regional Office of the Federal Bureau of Prisons (BOP) to respond to your request for access to records pertaining to your placement in the Special Housing Unit of the United States Penitentiary - Canaan.

Department of Justice regulations provide for an administrative appeal only after there has been an adverse determination by a component. See 28 C.F.R. § 16.9 (2007). As no adverse determination has yet been made, there is no action for this Office to consider on appeal. In particular, the Freedom of Information Act itself contemplates judicial review rather than an administrative appeal when an agency has failed to respond to a request within the statutory time limits. See 5 U.S.C. § 552(a)(6)(C)(i).

I have forwarded your letter to BOP. I suggest that you contact it directly and inquire about the status of your request. You may appeal any future adverse determination made by BOP.

Sincerely,

Janice Galli McLeod
Associate Director

# EXHIBIT 13

Exhibit I

NERO

William Henry Harrison (07725-078)
USP Canaan : P.O. Box 300
Waymart, PA 18472

November 7, 2007

FOIA/PA Section
Federal Bureau of Prisons
320 First St., N.W.
Washington, D.C. 20534

Re: Specific Information Concerning Profits Made at USP Canaan
Adm. Rem. # 465485-R1 FOIA Request

Dear Sir/Madam:

I am requesting, pursuant to a BP-10 response in Adm. Rem. # 465485-R1, any and all information on the following:

1) How many copy cards does USP Canaan purchase at any given time?;

2) How much does USP Canaan pay for a particular bulk-purchase of law library copy cards?;

3) What percentage of profit is/has USP Canaan made on, or making on, each card by selling them to inmates for $6.50 per card?;

4) Give me copies of the invoices for the last three bulk-purchases of law library copy cards made by USP Canaan;

5) Where in the law, CFR; and/or Program Statement does it authorize a federal prison to make a profit from legal material purchases or law work purchases?

Please give me specific answers, not generalities and quotes from legal sources, but actual occurrences and data. Thank you kindly.

Yours truly,

William Henry Harrison

Received

NOV 14 2007

FOIA/PA Section
Federal Bureau of Prison

# EXHIBIT 14

Exhibit I



U.S. Department of Justice

Federal Bureau of Prisons

Northeast Regional Office

U.S. Custom House - 7th Floor
2nd & Chestnut Streets
*Philadelphia, PA. 19106*

March 12, 2008

William Henry Harrison, Register No. 07725-078
United States Penitentiary - Canaan
P.O. Box 300
Waymart, PA 18472

RE:  Freedom of Information Request No. 2008-02180

Dear Mr. Harrison:

This is in response to your request for information that was
received by the agency on November 16, 2007.  You request a
copy of information regarding copy cards.  Specifically, you
request how many cards are purchased at a time; the bulk purchase
price of a copy card; percentage of the markup; copy of invoices
and policy regarding copy card purchases.

Seven (7) pages of records were received in this office for
release determination.  Upon review, it has been determined one
(1) page is releasable to you in its entirety and six (6) pages
are  releasable to you with excisions.  These pages are enclosed
herein.

Six (6) pages are being released with excisions because they
contain third-party information and information intended for
staff use only.  Release of this information would circumvent
Federal Bureau of Prisons' policy.  The statutory basis for this
withholding and excision is 5 U.S.C. § 552 (b)(2).

I trust this has been responsive to your request.  However, if
you are dissatisfied with this response, you may appeal to the
Attorney General by filing a written appeal within 60 days of
your receipt of this response to: Attorney General, Office of
Information and Privacy, United States Department of Justice,
1425 New York Avenue, Suite 11050, Washington, D.C.  20530-0001.
Both the envelope and the letter of appeal itself should be
clearly marked: "Freedom of Information Act Appeal".

Sincerely,

Henry J. Sadowski
Regional Counsel

Exhibit I
Enclosures: 7 pages

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

WILLIAM HENRY HARRISON, )
)
Plaintiff, )
)
v. ) Civil Action No. 07-1543 (PLF)
)
FEDERAL BUREAU OF PRISONS, )
)
Defendant. )
)

**ORDER**

Upon consideration of Defendant's Motion for Summary Judgment, it is hereby

ORDERED, that Defendant's Motion for Summary Judgment is hereby GRANTED; it is further

ORDERED, that Plaintiff's claims against the Bureau of Prisons are hereby DISMISSED with prejudice.

______________________________
UNITED STATES DISTRICT JUDGE