UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                         )
WILLIAM HENRY HARRISON,                  )
                                         )
        Plaintiff,                       )
                                         )
        v.                               )       Civil Action No. 07-1543 (PLF)
                                         )
FEDERAL BUREAU OF PRISONS,               )
                                         )
        Defendant.                       )
_____)


OPINION

        This matter is before the Court on the defendant's motion to dismiss claims

pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure or for summary

judgment pursuant to Rule 56.  On March 31, 2009, the Court issued an Order granting

defendant's motion in part and denying it in part without prejudice.  This Opinion explains the

reasoning behind that Order.


I.  BACKGROUND

        Plaintiff William Henry Harrison was in prison serving a federal sentence when

he filed this *pro se* complaint against the defendant, the Federal Bureau of Prisons ("BOP").[1]

The complaint alleges that the BOP's conduct in adopting telephone rates and commissary prices

violated Harrison's constitutional due process and equal protections rights, as well as the notice

and comment and judicial review provisions of the Administrative Procedure Act ("APA").

Compl. at 1-2 (citing 5 U.S.C. §§ 553 and 706 [sic]).  By two subsequent amendments to his

_____

        [1]  Harrison has since been released from prison.

complaint, Harrison also asserted violations of the Freedom of Information Act ("FOIA"), 5

U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, with respect to seven different FOIA

requests.

The defendant has raised the affirmative defense of *res judicata* with respect to

the telephone rate claims, identifying a decision by a sister court that addressed those claims on

the merits and dismissed them with prejudice. *See* Memorandum in Support of Defendant's

Motion to Dismiss or for Summary Judgment ("Def.'s Mot.") at 12-13. It seeks dismissal of the

complaint or summary judgment with respect to the due process, equal protection, and APA

claims arising from the BOP's commissary pricing. *Id.* at 13-20. It has moved for summary

judgment with respect to all seven FOIA requests. *Id.* at 24-43.

The plaintiff maintains that *res judicata* does not bar his telephone rate claims.

*See* Plaintiff's Response in Opposition to Defendant's Motion ("Opp'n") at 4. He also argues

that because the defendant has not proved that it complied with its own regulation regarding

commissary pricing, the Court should order the BOP to produce information regarding

commissary pricing in response to a FOIA request that is not part of this action. This

information, he asserts, will help him to substantiate his allegations. *Id.* at 6, 8. As to his FOIA

claims, the plaintiff finds fault with most of the searches and categorically asserts that "no . . .

exemption was lawfully invoked" by the defendant. *Id.* at 9. He also states that he did not

receive any substantive responses to three of his seven FOIA requests at issue in this action. *Id.*

at 15. The defendant has confirmed that several months ago it re-sent to the plaintiff its prior

responses with respect to those three FOIA requests.  *See* Defendant's Reply to Plaintiff's

Opposition ("Def.'s Reply") at 10.[2]

## II.  DISCUSSION

### A.  Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a

complaint if a plaintiff fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  In *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), the Supreme Court clarified

the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under

Rule 12(b)(6).  The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a

short and plain statement of the claim showing that the pleader is entitled to relief,' in order to

'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'"

*Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Aktieselskabet AF 21 v.*

*Fame Jeans Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008).  Although "detailed factual allegations" are

not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of

"entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a

formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp. v. Twombly,* 550

U.S. at 555; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).  The Court stated that there

was no "probability requirement at the pleading stage," *Bell Atlantic Corp. v. Twombly,* 550 U.S.

---

[2]  In addition, the plaintiff notes that the defendant never produced any information with respect to his request regarding "the ITF [inmate trust fund] and its expenditures for the years [2001-2004]."  Opp'n at 9.  Because the plaintiff did not allege a failure to respond to this FOIA request in his complaint or amended complaints, it is not part of this action and is not considered here.

at 556, but "something beyond . . . mere possibility . . . must be alleged[.]" *Id.* at 557-58.  The

facts alleged in the complaint "must be enough to raise a right to relief above the speculative

level," *id.* at 555, or must be sufficient "to state a claim for relief that is plausible on its face." *Id.*

at 570.  The Court referred to this newly clarified standard as "the plausibility standard." *Id.* at

560 (abandoning the "no set of facts" language from *Conley v. Gibson*).  *Twombly* "leaves the

long-standing fundamentals of notice pleading intact." *Aktieselskabet AF 21 v. Fame Jeans Inc.*,

525 F.3d at 15.

On a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all of

the factual allegations contained in the complaint." *Erickson v. Pardus,* 127 S. Ct. 2197, 2200

(2007); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555.  The complaint "is construed

liberally in the plaintiffs' favor, and [the Court should] grant plaintiffs the benefit of all

inferences that can be derived from the facts alleged." *Kowal v. MCI Communications Corp.*, 16

F.3d 1271, 1276 (D.C. Cir. 1994).  Nevertheless, the Court need not accept inferences drawn by

the plaintiff if those inferences are unsupported by facts alleged in the complaint; nor must the

Court accept plaintiff's legal conclusions.  *See Kowal v. MCI Communications Corp.*, 16 F.3d at

1276; *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

On a motion for summary judgment under Rule 56 of the Federal Rules, "[t]he

inquiry performed is the threshold inquiry of determining whether there is a need for a trial —

whether, in other words, there are any genuine factual issues that properly can be resolved only

by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v.

Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  Summary judgment "should be rendered if the

pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); *see Burke v. Gould,* 286 F.3d 513, 517 (D.C. Cir. 2002).  A material fact is

one that is capable of affecting the outcome of the litigation.  *Anderson v. Liberty Lobby,* 477

U.S. at 248.  A genuine issue is one where the "evidence is such that a reasonable jury could

return a verdict for the nonmoving party," *id.*, as opposed to evidence that "is so one-sided that

one party must prevail as a matter of law."  *Id.* at 252.  A court considering a motion for

summary judgment must draw all "justifiable inferences" from the evidence in favor of the

nonmovant.  *Id.* at 255.  The nonmoving party, however, must do more than simply "show that

there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 586 (1986).  Rather, the nonmovant must "come forward with

'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 587 (citing Fed. R. Civ. P.

56(e)) (emphasis in original).  In the end, "the plain language of Rule 56(c) mandates the entry of

summary judgment . . . against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden

of proof at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

       In a FOIA suit, an agency is entitled to summary judgment once it bears its burden

of demonstrating that no material facts are in dispute and that all information responsive to the

request either has been produced, is unidentifiable, or is exempt from disclosure.  *Students*

*Against Genocide v. Dep't of State,* 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. Dep't of*

*Justice,* 627 F.2d 365, 368 (D.C. Cir. 1980).  To establish that its search for responsive records

was adequate, an agency must show that it made a "good faith effort to conduct a search for the

requested records, using methods which can be reasonably expected to produce the information

requested." *Oglesby v. Dep't of the Army,* 920 F.2d 57, 68 (D.C. Cir. 1990).  A search need not

be exhaustive, *Miller v United States Dep't of State,* 779 F.2d 1378, 1383 (8th Cir. 1985), and an

agency's failure to find a particular document does not undermine the determination that the

search was adequate, *Wilber v. CIA,* 355 F.3d 675, 678 (D.C. Cir. 2004); *Nation Magazine,*

*Washington Bureau v. United States Customs Serv.,* 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  The

adequacy of a search is not determined by its results, but by the method of the search itself,

*Weisberg v. Dep't of Justice,* 745 F.2d at 1485, and a court is guided in this determination by

principles of reasonableness, *Oglesby v. Dep't of the Army,* 920 F.2d at 68.

   A court may award summary judgment to a FOIA defendant solely on the basis of

information provided by an agency in sworn statements with reasonably specific detail that

justify the nondisclosures, demonstrate that the information withheld logically falls within the

claimed exemption, and are not controverted by either contrary evidence in the record nor by

evidence of agency bad faith.  *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C.

Cir.1981).  An agency's sworn statement is entitled to a presumption of good faith.  *SafeCard*

*Servs., Inc. v. Sec. and Exchange Comm'n,* 926 F.2d 1197, 1200 (D.C. Cir. 1991).  To

successfully challenge such a showing by the defendant agency, the plaintiff must do more than

merely establish some "metaphysical doubt;" rather, the plaintiff must come forward with

"specific facts" demonstrating a genuine issue.  *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.,* 475 U.S. at 586-87.

*B.  The Telephone Rate Claims*

Harrison alleges that the increase in telephone rates for domestic calls adopted by the BOP in July 2006 violates his constitutional due process and equal protection rights and also violates the APA.  Compl. at 1-2.  Harrison filed a similar action in the United States District Court for the Eastern District of Virginia in 2006.  *See Harrison v. Fed. Bur. of Prisons,* 464 F. Supp. 2d 552 (E.D. Va. 2006).  His constitutional and APA claims in that case were dismissed with prejudice.  *Id.* at 559.[3]

The jurisprudential doctrine of *res judicata,* or claim preclusion, does not permit a party to relitigate claims that he has already had the opportunity to litigate in a prior action. Under the doctrine of claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving identical parties . . . based on the same cause of action."  *Apotex Inc. v. Food and Drug Admin.,* 393 F.3d 210, 217 (D.C. Cir. 2004); *see also Stanton v. District of Columbia Court of Appeals,* 127 F.3d 72, 78 (D.C. Cir. 1997) ("The general principle of claim preclusion is that a final, valid judgment on the merits precludes any further litigation between the same parties on the same cause of action.").  A "cause of action, for purposes of claim preclusion, comprises all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."  *Stanton v. District of Columbia Court of Appeals,* 127 F.3d at 78 (internal quotation marks and citations omitted).  "[I]t is the facts surrounding the transaction or occurrence which operate to constitute

---

[3]  Harrison is plainly wrong when he states that his APA claim was not decided in the 2006 decision.  *See* Opp'n at 4.  That court's discussion of the claim under the APA concludes by stating that the claim, identified there by the court as Claim 4, "must be dismissed," 464 F. Supp.2d at 558, and ordering it "dismissed with prejudice," *id.* at 559.

the cause of action, not the legal theory upon which a litigant relies." *Page v. United States,* 729 F.2d 818, 820 (D.C. Cir.1984). Thus, an action based on the same nucleus of facts as that of a prior action is said to share the same cause of action, and therefore is barred by claim preclusion, even if the latter action is predicated on a different legal theory. In other words, claim preclusion bars a claim that could have been brought in a prior suit based on the same nucleus of facts, but was not. A defendant may raise *res judicata* as an affirmative defense, which is then analyzed as a motion for summary judgment under Rule 56.

Because Harrison has already litigated claims arising from the increase in telephone rates, he now is barred by *res judicata* from bringing additional claims based on that same cause of action. Harrison is mistaken that his claim in this action is not barred because he invokes "an altogether different provision of the APA" in this action. Opp'n at 5. To the contrary, parties "may not relitigate any ground for relief which they already have had an opportunity to litigate — even if they chose not to exploit that opportunity" in the prior suit. *Page v. United States,* 729 F.2d at 820. Accordingly, because there is no genuine issue of material fact to be resolved, and the defendant has established as a matter of law that Harrison's claims arising from the telephone rate increase are barred by *res judicata,* summary judgment is granted for the defendant on these claims.

## C. The Commissary Pricing Claims

The complaint alleges that inflated commissary prices violates Harrison's constitutional rights to due process and equal protection. Compl. at 1. Subsequently, Harrison clarified that:

> [w]ith respect to the Due Process and Equal Protection claims concerning commissary mark-up prices, Harrison is not complaining about the BOP's authority to mark prices up by 25 or 30%, his claim is that the constant, habitual increase in prices are at a higher rate than the PS [program statement] formula permits, and that the BOP has yet to produce a listing of the prices actually paid for goods so that he can determine whether or not the BOP is in compliance with the CFR and the PS. This the Defendants[4] have failed to do. They have never produced a listing of the prices actually paid to vendors, and the amounts of items purchased, in order for Harrison to do his own calculations to prove that graft and corruption is taking place in the BOP, and that Defendants have continuously fleeced him and other federal prisoners in violation of the Due Process and Equal Protection clauses.

Opp'n at 7-8.

It is established that an inmate has no federal constitutional right to purchase items from a prison commissary. *Tokar v. Armontrout,* 97 F.3d 1078, 1083 (8th Cir. 1996) ("[W]e know of no constitutional right of access to a prison gift or snack shop."). Furthermore, an inmate has no "constitutionally protected interest in buying food as cheaply as possible." *French v. Butterworth,* 614 F.2d 23, 25 (1st Cir. 1980); *see also, Hopkins v. Keefe Commissary Network Sales,* 2007 WL 2080480, at *5 (W.D. Pa. July 12, 2007) (citing cases rejecting the proposition that price gouging with respect to goods for sale in prisons implicates the constitutional rights of prisoners). Because he has no constitutionally protected property or liberty interest in the commissary pricing, Harrison cannot state a claim for a violation of due process. Accordingly, this claim for a due process violation will be dismissed pursuant to Rule 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(ii).

As for plaintiff's equal protection claim, the complaint contains no allegation that Harrison is being treated differently from other prisoners with respect to commissary pricing. As

---

[4] Despite plaintiff's repeated use of the plural, the only defendant named in this action is the BOP.

such, on its face, the complaint fails to state a claim for an equal protection violation and is

subject to dismissal under Rule 12(b)(6).  In addition, the Court notes that the BOP submitted a

sworn statement attesting to the fact that the BOP uses the same mark-up guidelines in all its

institutions.  *See* Def.'s Mot., Ex. G, Decl. of Michael Atwood, May 29, 2008 ("Atwood Decl."),

¶ 8.  On a defendant's motion for summary judgment supported by a sworn statement, a plaintiff

"may not rely merely on allegations or denials in [his] own pleading; rather, [his] response

must—by affidavits or as otherwise provided in this rule—set out specific facts showing a

genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  Harrison has not set forth specific facts

showing that there is a genuine issue for trial.  Harrison merely argues that "[i]f the commissary

pricing scheme is applied to all BOP facilities as claimed by Defendants, why have they not

produced the documentary proof of such."  Opp'n at 8.  Argument, and unsubstantiated,

speculative argument in particular, is not an adequate substitute for "specific facts."  Because the

agency attests that the BOP's commissary mark-up is uniform throughout its institutions and the

plaintiff offers no specific facts showing a genuine issue for trial, the defendant is entitled to

summary judgment on the equal protection claim relating to commissary pricing.

       The plaintiff also attempts to bring a claim relating to commissary pricing under

the Administrative Procedure Act.  Congress established a federal prisoner trust fund out of

which the BOP operates its prison commissaries.  *See* 31 U.S.C. § 1321(a)(21).  The operation of

the federal prisoner trust fund is exempt from the APA's notice and comment provisions.

5 U.S.C. § 553(a)(2); *see Prows v. U.S. Dep't of Justice,* Civil Action No. 89-2929, 1991 WL

111459, *3 (D.D.C. June 13, 1991).  Therefore, the complaint fails to state a claim upon which

relief may be granted with respect to the notice and comment provisions of the APA.  In addition,

the operation of the federal prisoner trust fund, which includes both the prison commissaries and

the prison telephone system, constitutes agency action that is not subject to judicial review under

the APA because it is action committed to agency discretion by law.  *See Harrison v. Fed. Bur.*

*of Prisons,* 464 F. Supp. 2d at 557-58 (citing 5 U.S.C. § 701(a) and concluding that the action

falls within the parameters of the responsibilities outlined in 18 U.S.C. § 4042(1) and (2)).

Accordingly, this claim for judicial review under the APA will also be dismissed pursuant to

Rule 12(b)(6) for failure to state a claim upon which relief may be granted.[5]

### D.  The FOIA Claims

#### 1.  FOIA Requests  # 06-5485 and # 06-7827

The plaintiff filed two separate FOIA requests for information about a particular

matter that resulted in disciplinary proceedings against him.  In FOIA request # 06-5485, the

plaintiff requested the following:  all documents relating to disciplinary report # 1450349;

computer, telephone, and email records indicating communication between the investigator on

the matter to prison counsel Wheeler during the two-day period, March 29-30, 2006; records

"indicating when and why [the investigator] choose to investigate and listen to Harrison's

telephone conversations on March 14 and 30, 2006; and records indicating why the investigator

---

[5]  Even if the action at issue were subject to judicial review under the APA, Harrison could not prevail on this record.  The Atwood Declaration explains what the commissary mark-up is, and that it is implemented in accordance with the formula set out in the BOP's Program Statement 4500.05.  Atwood Decl. ¶ 6.  Harrison's position is that the BOP did not abide by its own formula for the commissary mark-up:  "Harrison is not complaining about the BOP's authority to mark prices up by 25 or 30%, his claim is that the constant, habitual increase in prices are at a higher rate than the PS [program statement] formula permits."  Opp'n at 7.  In the face of the sworn statement by Atwood, Harrison's unsubstantiated argument does not "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

checked Harrison's financial account on March 30, 2006. *See* Def.'s Mot., Ex. H, Declaration of

Lynell Cox, May 29, 2008 ("Cox Decl."), ¶ 6.

   The BOP searched for the requested records at the facility where the incident

occurred and was investigated, and where the disciplinary hearing was held, and contacted those

involved in the matter as a way of searching for additional records. Cox. Decl. ¶ 8. This search

located nine responsive pages. *Id.* ¶ 9. Two of the nine pages were released in full, *id.* ¶¶ 9, 12,

and another three of the nine pages were released in part, *id.* ¶ 12. For the three documents

released with redactions — a one-page investigative report, a one-page call record, and a one-

page intra-staff email — statutory exemptions (b)(6),[6] (b)(7)(C)[7] and "high" (b)(2)[8] were invoked

to withhold third party names, titles, signatures, relationships, telephone and fax numbers, and

email addresses. Cox. Decl. ¶¶ 12, 13, 17, 19. Four pages, consisting of banking information,

visitor information data, a copy of a postal money order and envelope, and an investigative

---

[6]  Section (b)(6) exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

[7]  Section (b)(7)(C) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

[8]  Section (b)(2) exempts from disclosure matters "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). "If the threshold test of predominant internality is met, an agency may withhold the material by proving that either (1) disclosure may risk circumvention of agency regulation [known as 'high' (b)(2)], or (2) the material relates to trivial administrative matters of no genuine public interest [known as 'low' (b)(2)]." *Long v. U.S. Dep't of Justice,* 450 F. Supp. 2d 42, 54 (D.D.C. 2006) (internal quotation marks and citations omitted).

memo, were withheld in their entirety under statutory exemption (b)(7)(E).[9]  According to the

defendant, no meaningful information in these four pages could be segregated from the protected

information and released.  Cox. Decl. ¶ 14.

In FOIA request # 06-7827, the plaintiff requested a copy of the telephone call he

placed to a particular telephone number on March 14, 2006; a transcript of the conversation of

that call; documents relating to the training and certification of Counselor Alderman who served

as the disciplinary hearing officer in the matter; and "information on why Counselor Alderman

was the DHO on that day."  Cox. Decl. ¶ 22.  A search of the files housed at the facility where

the incident occurred and was investigated and addressed located only two responsive

documents.  *Id.* ¶¶ 24, 25.  One of the records, relating to Counselor Alderman's training and

certification, was released in part with information redacted pursuant to exemptions (b)(6) and

(b)(7)(C).  Cox. Decl. ¶¶ 24, 25, 28.  The other record, an electronic record of the telephone call

on March 14, 2006, was withheld in full because, defendant asserts, there was no meaningful

information that could be segregated while still protecting the privacy of third parties under

exemptions (b)(6) and (b)(7)(C).  Cox. Decl. ¶¶ 24, 25, 28.

Harrison disputes that the searches were adequate because they do not identify, by

individual name, who was conducting the search.  Opp'n at 9, 12.  This is a frivolous argument.

Harrison is not entitled to the personal identifying information he seeks in this regard.  Indeed,  if

---

[9]  Section (b)(7)(E) exempts from disclosure "records or information compiled for law
enforcement purposes, but only to the extent that the production of such law enforcement records
or information . . . would disclose techniques and procedures for law enforcement investigations
or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions
if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C.
§ 552(b)(7)(E).

the information were recorded, it would itself be exempt from disclosure under exemption (b)(6)

of the FOIA.  *See* 5 U.S.C. § 552(b)(6).  The remainder of Harrison's objections to the adequacy

of the search are rebutted by the Cox Declaration itself.  *See* Cox Decl. ¶¶ 6, 24 (describing

searches).  Harrison also appears to complain that the BOP did not create a transcript to provide

to him.  Opp'n at 12 (noting that the BOP "never transcribed the phone call in order to provide a

transcript to Harrison.")  It is established, however, that an agency is not required to create

documents in response to a FOIA request.  *See Kissinger v. Reporters Committee for Freedom of*

*the Press,* 445 U.S. 136, 152 (1980) ("The Act does not obligate agencies to create or retain

documents; it only obligates them to provide access to those which it in fact has created and

retained."); *see also Anderson v. U.S. Dep't of Justice,* 518 F. Supp. 2d 1, 9-10 (D.D.C. 2007)

("An agency does not violate the FOIA for its failure to locate records destroyed in accordance

with an agency's normal retention policy").

        The plaintiff contends that the defendant's invocation of exemptions (b)(6)

and(b)(7)(C) are not legitimate.  Opp'n at 10-11.[10]  His arguments, however, reflect a

misunderstanding of the law, and his notion that the third person personal privacy exemptions

apply only to government employees is incorrect.  *See* Opp'n at 12 ("Again, (b)(6) pertains to

government employees and their files."); *id.* at 10 ("Nowhere has Defendants averred that the

individual whose privacy is supposedly protected is a BOP or other government agency employee

. . . ."); *id.* at 13 (noting that the other party to the telephone conversation at issue was his wife).

The personal privacy exemptions (b)(6) and (b)(7)(C) require the agency to protect the privacy of

---

[10]  The plaintiff does not address the (b)(2) exemption because he asserts that the
defendant did not invoke it.  Opp'n at 10.  *But see* Cox. Decl. ¶ 12 & n.1 (explaining that it
should have been noted in the letter appended as Ex. 4, but was not).

any third person identified in the records, and the statute does not except spouses.  *See* 5 U.S.C. §§ 552(b)(6) and (b)(7)(C); *see also, Dep't of State v. Washington Post Co.,* 546 U.S. 595, 600 (1982) (concluding that exemption (b)(6) is designed to protect all manner of personal information in public records, even if it is not embarrassing or of an intimate nature); *Bast v. U.S. Dep't of Justice*, 665 F.2d 1251, 1254 (D.C. Cir. 1981) (holding that, in light of the stigma potentially associated with law enforcement investigations, exemption 7(C) affords broad privacy rights to suspects, witnesses and investigators).

These personal privacy exemptions may be overcome by a waiver signed by the third person whose privacy interest would be affected by the disclosure.  *See Milton v. U.S. Dep't of Justice, - - F. Supp. 2d - - ,* 2009 WL 281673, *1 (D.D.C. Feb. 6, 2009) (records of telephone conversations could be released upon a signed waiver by the other party to the conversation). Alternatively, the personal privacy exemptions may be overcome by a showing of public interest in the disclosure that outweighs the privacy interest of the third person.  *See Martin v. Dep't of Justice,* 488 F.3d 446, 453 (D.C. Cir. 2007) (stating that sufficient public interest in disclosure may outweigh countervailing privacy interests in material exempt under (b)(7)(C)); *Nat'l Ass'n of Retired Fed. Employees v. Horner,* 879 F.2d 873, 879 (D.C. Cir. 1989) (stating that where no public interest is shown, even a modest privacy interest will prevail against disclosure of (b)(6) material).

Harrison's interest in the information he seeks is personal.  While he has attempted to put a public gloss on his personal interest, his attempts fail to meet the legal standard set by the Supreme Court:

> [W]here there is a privacy interest protected by Exemption 7(C)
> and the public interest being asserted is to show that responsible
> officials acted negligently or otherwise improperly in the
> performance of their duties, the requester must establish more than
> a bare suspicion in order to obtain disclosure.  Rather, the requester
> must produce evidence that would warrant a belief by a reasonable
> person that the alleged Government impropriety might have
> occurred.

*Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 174 (2004).  Plaintiff's vague

allegations of "fabricated" charges, Opp'n at 13, "illegal and conspiratorial conduct" between a

prison counselor and the BOP officer who screened Harrison's telephone call, *id.* at 10, his non-

specific reference to "corrupt acts and practices of federal employees" *id.*, and his implied

suspicions as to the qualifications of the disciplinary hearing officer, *id.* at 12, do not rise to the

level required by the rule articulated in *Favish*.  Harrison's essentially private interest in "[t]his

information/documentation" so that he may "prove his claims of conspiracy and violations of his

Civil and Constitutional rights by these Defendants and their subordinates," *id.* at 13, does not

constitute "evidence that would warrant a belief by a reasonable person that the alleged

Government impropriety might have occurred."  *Nat'l Archives & Records Admin. v. Favish,* 541

U.S. at 174.

　　　　Harrison also faults the defendant's reliance on exemption (b)(7)(E), and attacks it

as "self-serving legal speak," apparently disputing that the records at issue were compiled for law

enforcement purposes.  Opp'n at 11.  Exemption (b)(7)(E) protects law enforcement records if

disclosure would reveal techniques and procedures or risk circumvention of the law.  5 U.S.C.

§ 552(b)(7)(E).  The defendant invoked exemption (b)(7)(E) to withhold information contained

in an investigative report, an investigative memo, an intra-staff email, and banking information,

*see* Cox. Decl. ¶ 21, records that might easily qualify as ones compiled for law enforcement

purposes.  In the face of a sworn statement by an agency, which is entitled to a presumption of

good faith, *SafeCard Servs. v. Sec. and Exchange Comm'n,* 926 F.2d at 1200, the plaintiff's non-

specific challenge is insufficient to "set out specific facts showing a genuine issue for trial."

Fed. R. Civ. P. 56(e)(2).

### 2.  FOIA Request # 07-7829

The plaintiff filed a FOIA request, assigned # 07-7829, seeking "any and all

documents . . . generated with respect to Disability payment checks . . . reflecting [certain stated]

check/document [numbers]."  Def.'s Mot., Ex. I, Declaration of Vanessa Herbin-Smith, May 22,

2008 ("Herbin-Smith Decl."), Ex. 5.[11]  The BOP interpreted this to be a request for a "copy of all

documents regarding the location and deposit of three disability payment checks."  *Id.*, Ex. 6.  On

appeal, the plaintiff disputed this interpretation of his request for "any and all documents . . .

generated with respect to" the three identified disability checks, but to no avail.  *Id.*, Exs. 7, 8.

While the more narrow interpretation of the plaintiff's original request is understandable in

context, it is a mistaken interpretation.  The plaintiff expressly asked for "any and all," and then

— expressly not limiting his request — he emphasized his interest in the checks' location.  *See*

*id.,* Ex. 5.  Therefore, with respect to FOIA request # 07-7829, the BOP's search is incomplete

---

[11]  Plaintiff also asked for "a thorough explanation of where these funds were located
until they were finally placed in my prison account on or about April 30, 2007, and how they
came to be deposited on that particular day."  Herbin-Smith Decl., Ex. 5.  As noted above, the
FOIA "does not obligate agencies to create or retain documents; it only obligates them to provide
access to those which it in fact has created and retained."  *Kissinger v. Reporters Committee for
Freedom of the Press,* 445 U.S. at 152.  It also does not require an agency to provide an
explanation or to answer a requester's questions, except insofar as a release of documents
provides such an explanation or answer.

and summary judgment is not warranted on this record.  The BOP's motion for summary

judgment as to this claim will be denied without prejudice, and the BOP will be permitted to file

a renewed motion after it has completed a search for "any and all documents . . . generated with

respect to" the three identified disability checks, *id.*, and processed responsive documents for

release.

### 3.   FOIA Request # 07-7346

Another of plaintiff's FOIA requests, assigned  # 07-7346, requested "any and all

documents . . . generated with respect to [his] placement in the Special Housing Unit . . ." for a

24-day period.  Herbin-Smith Decl., Ex. 9.  The BOP searched both the investigative files of the

Special Investigative Agent at the facility where the placement occurred and the plaintiff's

central inmate record file for responsive documents.  *Id.* ¶ 24.  This search produced ten pages of

responsive documents, of which two were released in full and eight were released with a fax

number excised pursuant to exemption "low" (b)(2).  *Id.* ¶¶ 26, 30.  Again without providing

specifics, Harrison faults the search.  Opp'n at 14.  And, again, Harrison fails to set forth any

specific facts raising a genuine issue of material fact for trial.  As to the exemptions, Harrison

argues that because the agency's letter response to him did not cite exemption (b)(2) to justify the

redaction of the fax number, it cannot do so now.  Opp'n at 15.  As Harrison is wrong on the

facts, it is not necessary to address his legal argument.  *See* Herbin-Smith Decl., Ex. 11 (the

agency letter response citing exemption (b)(2) for the redactions on the eight pages).

4.   FOIA Requests # 07-8547, # 07-10206 and # 08-2180

Plaintiff asserts that he never received a substantive response to three of his FOIA requests.  *See* Am. Compl. ¶¶ 9 (referencing # 07-10206), 10 (referencing # 07-8547); Second Am. Compl. ¶ 4 (referencing # 08-2180).  The BOP, however, has attested that it did respond, and has described the responses in an agency declaration.  *See* Herbin-Smith Decl., ¶¶ 6-11, 31-35.  The plaintiff has not raised any specific issues with respect to these three FOIA responses, except to note that the BOP did not submit a "Vaughn index."  Opp'n at 15.  But a Vaughn index is not required; it is merely one method of communicating the information an agency is required to provide in a FOIA response.  An affidavit or declaration in lieu of a Vaughn index satisfies the legal requirement.  *See Anderson v. U.S. Dep't of Justice,* 518 F. Supp. 2d at 6 ("In a FOIA case, the Court may grant summary judgment based on the information provided in affidavits or declarations when the affidavits or declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'") (quoting *Military Audit Project v. Casey*, 656 F.2d at 738).  "Indeed, an agency may even submit other measures in combination with or in lieu of the index itself."  *Judicial Watch, Inc. v. Food & Drug. Admin.*, 449 F.3d 141, 146 (D.C. Cir. 2006).  "[I]t is the function, not the form, of the index that is important."  *Keys v. U.S. Dep't of Justice,* 830 F.2d 337, 349 (D.C. Cir. 1987).

Except for four pages that had been, and would again be, released to the plaintiff in full, the documents responsive to these three requests were forwarded to the plaintiff again on

September 25, 2008.  *See* Def.'s Reply, Decl. of Vanessa Herbin-Smith, Sept. 26, 2008, ¶¶ 3-6.

The plaintiff has not filed any challenge with respect to these searches.[12]

A review of the defendant's submission with respect to its responses to these three

FOIA requests establishes that the defendant has fully met its summary judgment burden with

respect to one of the three requests, # 07-8547.  In that request, plaintiff requested "statistics"

showing the number of inmates transferred from one facility to another for specified time periods

in the past, and the number approved for such transfers for certain time periods in the future.  *See*

Herbin-Smith Decl., Ex. 3.  The BOP sent a letter response to the plaintiff, providing the number

of transfers and approvals for transfers for the time periods he requested.  *Id.,* Ex. 4.

With respect to the other two FOIA requests, however, the agency has not

established that its search was reasonable; the declaration does not contain any description of the

searches undertaken.  *See* Herbin-Smith Decl. ¶¶ 6-8 (addressing # 07-10206), 31-35 (addressing

# 08-2180).  The declaration demonstrates that the computer user identification numbers redacted

from the documents released to plaintiff in connection with his request regarding copy card

purchases, # 08-2180, is properly withheld under exemption (b)(2).  *Id.* ¶ 35.  The declaration

does not, however, provide sufficient information with respect to the information withheld in

response to FOIA request # 07-10206 to enable the Court to conclude that the exemptions cited

justify the agency's determination.  On this record, then, the agency has not demonstrated that it

is entitled to summary judgment with respect to FOIA requests # 07-10206 and # 08-2180.

---

[12]   Plaintiff did attempt to file a sur-reply.  Sur-replies are not favored in this Court, and
because it did not address any matter that had been alleged in the complaints and not already
addressed in the defendant's dispositive motion — to which the plaintiff had already filed an
opposition — it was not allowed.  That sur-reply did not set forth any specific facts showing that
there was a genuine issue for trial with respect to these three FOIA requests.

Summary judgment will be denied without prejudice as to those two requests, and the agency

will be permitted to file a renewed motion for summary judgment and agency declaration with

respect to FOIA requests # 07-10206 and # 08-2180.

       The plaintiff has requested that the Court conduct an *in camera* inspection of the

information the BOP did not disclose in full in its responses to the plaintiff's several FOIA

requests.  The Court declines, as on this record it is clear that there is no need for an *in camera*

inspection of records that have been withheld in whole or in part from the plaintiff.

       For these reasons, the Court issued an Order on March 31, 2009 granting

defendant's motion in part and denying it in part without prejudice.  The defendant shall file a

proposed schedule upon which this case may proceed to resolution on or before June 1, 2009.


       /s/_____
       PAUL L. FRIEDMAN
DATE: May 1, 2009      United States District Judge